FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 2 7 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| WILL O. KING, | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | : | **TWT** |
| | : | **CIVIL ACTION** |
| **v.** | : | **FILE NO.:** |
| | : | |
| **KYLEMA JACKSON,** | : | **1:15 - CV - 0583** |
| **Individually and in his Official** | : | |
| **Capacity as a City of Atlanta** | : | |
| **Police Officer, and** | : | |
| **THE CITY OF ATLANTA** | : | **ORIGINAL** |
| **Defendants**. | : | |

## COMPLAINT FOR DAMAGES

**COMES NOW**, **Will O. King** ["Plaintiff" or "Mr. King"] and files this Complaint

against **Kylema Jackson, Individually and in his Official Capacity as a City of**

**Atlanta Police Officer,** and **The City of Atlanta** [hereinafter "Defendant

Jackson," "City of Atlanta," and collectively "Defendants"], as follows:

## INTRODUCTION

1.

Plaintiff brings this civil rights action for monetary damages, punitive damages,

attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of

Mr. King's rights under the Fourth and Fourteenth Amendments of the United

[1]

States Constitution. Plaintiff also brings pendent state law claims against the Defendants arising from the same case and controversy, transactions and occurrences as the federal civil rights claims alleged herein, as recognized by 28 U.S.C. § 1367.

## JURISDICTION AND VENUE

2.

This action arises under the U.S. Constitution, including Article II, Section 1, and the laws of the United States. This action is brought pursuant to 42 U.S.C. §§§ 1981, 1983 and 1988. This Court has original jurisdiction over Mr. King's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court may exercise supplemental jurisdiction over Plaintiff's pendent State law claims pursuant to 28 U.S.C. § 1367(a).

3.

All parties reside in the Northern District of Georgia. The civil rights violations and tortious acts alleged herein occurred in the Northern District of Georgia. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

### 4.

Mr. King is a citizen of the State of Georgia who resides in the Northern District of Georgia and has standing to bring claims of this kind and nature in this Court.

### 5.

Defendant Jackson is a citizen of the State of Georgia residing in the Northern District of Georgia. Defendant Jackson is subject to the personal jurisdiction of this Court and may be served with summons and process at the City of Atlanta Police Department, Atlanta, Georgia.

### 6.

Defendant City of Atlanta is a Georgia municipal corporation and is the legal entity responsible for itself and the City of Atlanta Police Department. This Defendant is also the employer of Defendant Jackson and is a proper entity to be sued under 42 U.S.C. § 1983.

### 7.

At all times relevant to this action, Defendant Jackson was a citizen of the United States and a resident of the State of Georgia. Further, Defendant Jackson was

[3]

employed as a Police Officer by the City of Atlanta Police Department, was acting

under color of state law, and was acting in his capacity as a law enforcement officer

employed by the City of Atlanta and/or the Atlanta Police Department. Defendant

Jackson is sued individually, and in his official capacity as a City of Atlanta Police

Officer.

8.

At all times relevant and material to this Complaint, Defendants acted under color

of statutes, customs, rules and usages of the City of Atlanta Police Department and

pursuant to customs, practices, and policies implemented and/or ratified by the City

of Atlanta.

9.

For state law claims, Plaintiff has complied with the notice requirements of

O.C.G.A. Section 36-33-5 by sending his notices of claims to the City of Atlanta.

Copies of the notices of claims are attached hereto as Exhibit "A" and incorporated

herein by reference.

## FACTUAL ALLEGATIONS

10.

Plaintiff incorporates by reference all of the preceding paragraphs, including the

[4]

allegations of the "Introduction", as if stated verbatim herein.

11.

On the afternoon of April 4, 2013, Mr. King was driving a vehicle on Jonesboro Road, in the City of Atlanta.

12.

In the vehicle with Mr. King were three passengers.

13.

One of the passengers asked Mr. King to stop at a CITGO gas station to make a purchase.

14.

Upon arriving at CITGO, the one passenger exited the vehicle and went inside, leaving Mr. King and two other passengers in the vehicle.

15.

Thereafter, Defendant Jackson drove his City of Atlanta Police patrol car into the CITGO parking lot and stopped beside Mr. King's car.

16.

Defendant Jackson then proceeded to back his patrol car behind Mr. King's car, and activate his blue lights.

[5]

17.

Defendant Jackson then exited his vehicle with his service weapon drawn and pointed the weapon at Mr. King.

18.

Defendant Jackson approached the driver's side of Mr. King's vehicle with his weapon continually pointed at Mr. King's head.

19.

Defendant Jackson yelled for all of the occupants to raise their hands, to which they all complied, including Mr. King.

20.

Despite complying with the demand, Defendant Jackson, used unjustified and excessive deadly force by shooting through the glass of the driver's side window, striking Mr. King in the side of the face.

21.

After suffering the massive head injury and bleeding profusely, Mr. King, fearing for his life, drove away from Defendant Jackson, to an address where he was taken to the hospital with life threatening injuries.

[6]

## COUNT I.

### 22.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 23.

Defendant Jackson did not know the identity of any of the occupants of the car driven by Mr. King at the time he pulled his patrol car behind Mr. King's vehicle, in the CITGO parking lot, and activated his blue lights.

### 24.

Defendant Jackson did not know the identity of any of the occupants of the car driven by Mr. King at the time he exited his patrol car with his service weapon drawn.

### 25.

Defendant Jackson did not know the identity of any of the occupants of the car driven by Mr. King at the time Defendant Jackson fired his service weapon though the window of the vehicle, shooting Mr. King in the face.

### 26.

The only potential reason Defendant Jackson would have had to pull over the

[7]

vehicle driven by Mr. King was that the car had a dealer drive out tag.

27.

Defendant Jackson was aware that driving with an improper tag is a misdemeanor, traffic violation.

28.

Neither Mr. King, nor anyone in the vehicle, committed any act that would have caused Defendant Jackson to reasonably believe that they posed an immediate threat of physical violence to Defendant Jackson or others.

29.

Defendant Jackson was aware that the use of deadly force, under these circumstances, was objectively unreasonable, illegal, and in violation of the U.S. Constitution, Federal law and State law.

30.

Because Defendant Jackson had no reason to believe that Mr. King, or anyone in the vehicle posed an immediate threat of danger or violence, or possessed a dangerous weapon, Defendant Jackson violated the United States Constitutional when he improperly used excessive deadly force by shooting Mr. King.

[8]

31.

Prior to Defendant Jackson exiting his vehicle with his gun drawn, he had no probable cause to believe that the occupants had committed any felonies.

32.

Prior to Defendant Jackson exiting his vehicle with his gun drawn, he had no articulable suspicion to believe that the occupants had committed any felonies.

33.

At no time prior to shooting Mr. King did Defendant Jackson witness Mr. King commit any felonies.

34.

At no time prior to shooting Mr. King did Defendant Jackson have any articulable suspicion to believe that Mr. King had committed any felonies.

35.

Mr. King was unarmed when Defendant Jackson shot through the glass of the driver's side window of Mr. King's vehicle, causing serious personal injuries to Mr. King.

36.

After going through the glass window, the bullet entered through Mr. King's left

cheek and shattered his left jawbone. The bullet then penetrated through the base of

his tongue, causing large lacerations on both the lateral and inferior aspect of his

tongue. The bullet then went through his right jawbone.

37.

The injuries suffered by Mr. King were life threatening and included multiple

displaced fractures of Mr. King's jaw, which required multiple surgeries and the

placement of an Erich Arch Bar, (an external fixator), on the outside of Mr. King's

face, which was attached with screws into his head. Mr. King was required to have

the fixator attached to his face and head for more than a year.

38.

During the medical process, Mr. King's mouth was wired closed to assist in the

healing process. As such, he was unable to eat. While he had been on a feeding

tube, after one of his surgeries, the feeding tube could not be passed. A surgical G-

tube was surgically put in place during a procedure called an Open Stamm

Gastrostomy. This surgical procedure was performed under general anesthesia, and

involved inserting a feeding tube through his side, directly into his stomach.

39.

As a result of Defendant Jackson's wrongful conduct, Mr. King suffered serious

[10]

and permanent personal injuries and disfigurement. Mr. King has endured and continues to endure immense pain and suffering. Mr. King has undergone and continues to undergo surgical procedures, and has incurred medical expenses in excess of $510,000.00.

## COUNT II.

### 40.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 41.

Defendant Jackson, in violation of the Constitution, including but not limited to the Fourth Amendment, unlawfully, intentionally and without justification used illegal and unnecessary deadly force when he shot an unarmed Mr. King in the face.

### 42.

Defendant Jackson's actions were committed under color of law and during the course and scope of his employment with the City of Atlanta Police Department.

### 43.

The illegal use of excessive force by Defendant Jackson, including but not limited to his shooting of unarmed Mr. King, violated Mr. King's rights under the Fourth

[11]

and Fourteenth Amendments to the United States Constitution, made applicable to state actors pursuant to 42 U.S.C. § 1983.

44.

Prior to shooting Mr. King, Defendant Jackson was aware that the use of excessive deadly force by a peace office is considered an unlawful seizure of a person under the U.S. Constitution and U.S. Supreme Court case law.

45.

Prior to shooting Mr. King, Defendant Jackson was aware that all people in the United States are protected from unreasonable governmental seizures through protections afforded by the U.S. Constitution, U.S. Supreme Court case law and Georgia law.

46.

The unlawful actions of Defendant Jackson, and the use of improper procedures and excessive deadly force against Mr. King, were conducted under the color of state law by Defendant Jackson acting within the scope of his employment as a Police Officer with the City of Atlanta Police Department.

## COUNT III

[12]

47.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

48.

Defendant Jackson has been a police officer for The City of Atlanta since July, 2002.

49.

During his employment with The City of Atlanta Police Department (hereinafter "APD"), Defendant Jackson has received no less than twelve citizen complaints alleging maltreatment, unnecessary use of force, or lack of courtesy.

50.

Prior to shooting Mr. King on April 4, 2013, Defendant Jackson had been investigated, and punished, by the City of Atlanta Police Department for unnecessary use of force.

51.

The City of Atlanta Police Department sustained an unnecessary use of force complaint against Defendant Jackson approximately fifteen (15) days before he shot Mr. King.

[13]

52.

Despite Defendant Jackson's history of unnecessary force complaints, the City of

Atlanta continued to employ him as a police officer. Through its actions, and

inactions, the City of Atlanta established a process or custom that allowed and

encouraged Defendant Jackson to continue to illegally use excessive force.

## COUNT IV

53.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

54.

Defendant City of Atlanta was aware as early as 2004 that Defendant Jackson was

willing to use unnecessary force by using his service weapon, as a citizen

complained that he threatened to use his weapon during a traffic stop.

55.

A citizen complained to APD that Defendant Jackson, during a routine traffic stop,

placed his hand on his gun and holster, in an aggressive and threatening manner.

56.

The citizen and two witnesses provided statements to the APD regarding Defendant

[14]

Jackson's actions.

### 57.

APD investigated and sustained a lack of courtesy complaint against Defendant Jackson and gave him an oral admonition.

## COUNT V

### 58.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 59.

In 2005, Defendant Jackson was instructed by a supervisor to walk a foot beat with another officer.

### 60.

According to APD records, Defendant Jackson responded that "[I] don't walk foot beats, it goes against [my] principles and [my] manhood."

### 61.

Defendant Jackson also advised the supervisor that he had been authorized not to work with a particular officer.

[15]

62.

During the investigative interview regarding the charge of job abandonment,

Defendant Jackson was interviewed by a Sergeant, who at the time had been a front

line supervisor since 1993. Another Sergeant was also present for the interview.

63.

The interviewing Sergeant opined in his report that Defendant Jackson was

mentally unstable.

64.

Also in his report, the interviewing Sergeant wondered, if Defendant Jackson was

as unstable as he appeared, if he should be worried about his personal safety and the

safety of other employees.

65.

The interviewing Sergeant stated in his report that he had never previously

encountered an employee who behaved like Defendant Jackson, and made him fear

for his life.

66.

The interviewing Sergeant observed that Defendant Jackson refused to look him in

the eye, but instead stared off into space as though he was talking with someone

above him.

67.

When asked if he was going to continue to refuse to work the assignment and disobey a direct order, Defendant Jackson said nothing, and continued to gaze into space.

68.

Defendant Jackson was told to clock out and go home.

69.

According to the report, after Defendant Jackson had left the building, both Sergeants discussed Defendant Jackson's "bizarre" behavior and their concern that he might reach for his weapon and use it.

70.

The report stated that one Sergeant was so concerned about Defendant Jackson's behavior, that he actually became aware that he was not wearing his bullet proof vest, and "subconsciously" placed his hand on his weapon.

71.

In his report, the interviewing Sergeant opined that Defendant Jackson "clearly exhibited behavior indicative of psychological and/or emotional impairment."

[17]

72.

The interviewing Sergeant then requested Defendant Jackson be relieved of duty and scheduled a psychiatric evaluation.

73.

Defendant Jackson was relieved from duty on 5/25/2005 and surrendered his weapon, magazines, ammo, ID and badge.

74.

He was reinstated by APD for full duty on 7/14/2005.

## COUNT VI

75.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

76.

In November 2005, Defendant Jackson, on his own volition, approached a group of motorcycle riders at a BP station on 448 Boulevard in Atlanta.

77.

The motorcyclists, members of a riding group, were gathering to take photos at a near-by park.

[18]

78.

One of the members of the group was an off duty police officer.

79.

Defendant Jackson pulled into the BP Station and according to members of the group, began cursing at them and demanding they exit the premises.

80.

Even though they were attempting to leave, Defendant Jackson pulled his service weapon in a hostile and intimidating manner.

81.

Seven of the participants, including the off duty officer, filed complaints against Defendant Jackson.

82.

In her statement to APD, the off duty officer opined that Defendant Jackson used unnecessary and excessive force and recommended counseling on use of force.

83.

Several of the other participants opined that more training or counseling was necessary for Defendant Jackson.

[19]

84.

Despite the complaints and statements provided by the victim/witnesses, the APD investigative disposition sustained a courtesy violation, which was later changed to exonerated.

## COUNT VII

85.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

86.

On August 28, 2007, Defendant Jackson was working at the area of Lakewood Amphitheater.

87.

Another APD officer was working off duty security at the Lakewood Amphitheater.

88.

Two uniformed Georgia State Patrol Troopers were also working at Lakewood Amphitheater.

89.

According to the complaining APD officer, Defendant Jackson became "irate" due

[20]

to the location of cars before the gates had opened.

90.

The off duty officer asked Defendant Jackson to calm down, as he was raising his voice to her and the crowd. The GSP Troopers observed Defendant Jackson's behavior.

91.

Once the gates to the Amphitheatre opened, Defendant Jackson entered in his patrol vehicle with blue lights flashing, and blocked the northbound traffic.

92.

One of the GSP Troopers approached Defendant Jackson's patrol car asking him when he was going to move his vehicle for the traffic.

93.

Defendant Jackson argued with the GSP Trooper and responded that he would move when he got ready to move.

94.

The GSP Trooper walked away from the vehicle to deescalate the confrontation.

95.

The off duty APD officer filed a complaint with APD against Defendant Jackson.

[21]

96.

In his statement to the investigator, Defendant Jackson stated that he saw the GSP

Trooper had a "Chevron on his sleeve."

97.

The GSP Troopers declined to make a statement or formal complaint.

98.

The APD Investigative Procedure, Policy or Training Recommendations stated as

follows:

"The attendance of a sensitivity course by Officer Jackson might assist him, when

dealing with citizens and other law enforcement. This has not been the first instance

in which a complaint has been received about Office Jackson's attitude and

courtesy toward others. ***Without some form of training, this type of situation will***

***continue, and cause unforeseen problems for the department and Officer***

***Jackson.***" (Emphasis Added)

## COUNT VIII

99.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

[22]

100.

On February 6, 2008, Defendant Jackson was charged with sending a "profane message" to a co-employee on more than one occasion.

101.

Defendant Jackson admitted to having sent the messages.

102.

In his suspension recommendation, the investigating Sergeant stated: **"the fact that Officer Jackson makes these blatant violations of [SOP] is a sign of Officer Jackson's obvious unconcern with the position he holds."** (Emphasis Added.)

### COUNT IX

103.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

104.

Later in 2008, Defendant Jackson arrested a man for drinking in public. The man filed a complaint against Defendant Jackson alleging that Defendant Jackson sprayed him with pepper spray and punched him.

[23]

105.

Defendant Jackson transported the man to a "road block" for transportation to jail.

106.

The investigation revealed that the "road block" was approximately .58 miles from the location of arrest and should have taken less than 2 minutes to transport.

107.

It took Defendant Jackson 40 minutes to get the suspect to the "road block" and additional 10 minutes before he informed the officer at the "road block" that he had sprayed the victim with pepper spray.

108.

According to the investigative record, Defendant Jackson told the officer at the "road block" that he did not call for medical assistance because he **"wanted to teach [the victim] a lesson."** (Emphasis Added)

109.

The APD investigative findings were that Defendant Jackson had done this same type of incident in the past, and recommended counseling.

## COUNT X

[24]

110.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

111.

In November of 2008, Defendant Jackson had taken an unauthorized job as a "courtesy officer" at an apartment complex.

112.

Defendant Jackson was accused of using unnecessary force when he grabbed a blind tenant's granddaughter to remove her from the property, when she was there to assist her grandmother.

113.

The investigative report included that Defendant Jackson bruised the granddaughter's arm when he forced her from the complex, on foot, in the rain.

114.

When the girl's mother arrived at the apartment complex, she found her daughter outside in the rain.

115.

The girl and her mother went to Defendant Jackson's apartment to discuss the

[25]

event.

116.

Defendant Jackson came to the door with a handgun in his hand, wearing only a T-shirt and boxer shorts.

117.

The girl's mother call 911 for assistance.

118.

The APD investigation sustained this complaint of unnecessary force and not reporting use of force.

119.

The investigative report stated that Defendant Jackson did not understand that grabbing a person was use of force.

120.

The APD sustained this unnecessary force claims against Defendant Jackson, just fifteen (15) days prior to him shooting Will King.

## COUNT XI

121.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

### 122.

The City of Atlanta is responsible for the formulation of departmental policies, to ensure that rules and regulations, and all general and special orders are understood and enforced.

### 123.

The City of Atlanta is responsible for the formulation, adoption, and implementation of such policies as are necessary to ensure that persons are not allowed to assume the authority of a City of Atlanta Police Officer, if such persons are predisposed to generalized violence, unnecessary force, and violence against unarmed persons.

### 124.

The City of Atlanta knowingly, recklessly, and with gross negligence failed to adopt and carry out adequate and responsible policies necessary to instruct, supervise, control and discipline Defendant Jackson in his duties to refrain from:

(1) Unlawfully and maliciously employing excessive and unnecessary force against citizens when there is no immediate threat to the lives or safety of officers or others;

[27]

(2) Unlawfully and maliciously employing excessive and unnecessary force against citizens when there is no articulable suspicion to believe such citizens have committed felonies;

(3) Unlawfully and maliciously employing excessive and unnecessary force against citizens before, during, or after the making of an arrest, whether the arrest was lawful or unlawful;

(4) Violating the rights, privileges, and immunities guaranteed to Mr. King by the Constitution and laws of the United States and the State of Georgia; and

(5) Otherwise depriving Will King of constitutional rights, privileges and immunities.

125.

If Defendant City of Atlanta had properly discharged said duties, Defendant Jackson would not have been hired, retained, or inadequately trained by the City of Atlanta Police Department, and Defendant Jackson would not have been able to use unnecessary excessive deadly force to shoot and seriously injury Mr. King, and cause his injuries and damages.

[28]

126.

As a direct and proximate result of the breach of said duties, Mr. King has and

continues to suffer from serious and permanent disfiguring personal injuries, has

and continues to endure immense pain and suffering, and has incurred and

continues to incur enormous medical expenses and other general damages alleged

and prayed for herein.

## COUNT XII

127.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

128.

The Defendant City of Atlanta's implementation of the customs, policies and

official acts caused the violation of Mr. King's constitutions rights, and reflects its

deliberate indifference to the constitutional rights afforded to Mr. King. Such

policy, custom, and official acts include, but are not limited to, the following:

(a) Defendant City of Atlanta, its agents and employees, deliberate choice of

a grossly inadequate training program, including but not limited to the use of

unnecessary deadly force, condones and facilitates officers' misconduct, which

[29]

continues to lead to the violation of the publics' constitutional rights;

(b) Officers, including Defendant Jackson, employed by the City of Atlanta, during the performance of official police duties, violate the constitutional rights of suspects such that the need for further training, control and supervision is and has been plainly obvious to the Atlanta Police Department, who nonetheless is and have been deliberately indifferent to such needs and whose lack of concern about the resulting constitutional violation tacitly authorize, encourage and foster unconstitutional conduct;

(c) Defendant City of Atlanta, through its agents and employees, were on notice of prior misbehavior by its officers, including Defendant Jackson, yet failed to take proper remedial steps, had no meaningful policies or procedures in place, and thereby manifested deliberate indifference to the offensive acts and to the constitutional rights of the public, including Mr. King's, by acts and omissions including but not limited to use of unnecessary deadly force;

(d) Defendant City of Atlanta through its agents and employees improperly retained Defendant Jackson despite his use of, and pre-disposition to, excessive, unnecessary, and/or unjustifiable use of deadly force;

(e) Ignoring and/or allowing the custom, practice and/or policy of using

[30]

unjustifiable force, including deadly force;

(f) Such other customs, policies, practices, or official acts which will be learned and proven during discovery.

129.

Defendant City of Atlanta manifested deliberate indifference to the rights of suspects such as Mr. King by failing to take actions to correct constitutionally violative conduct by City of Atlanta Police Officers, of which they were aware were being used by officers, including Defendant Jackson.

130.

As a direct and proximate result of the unconstitutional acts of the Defendants, Mr. King suffered serious, permanent, and disfiguring personal injuries, endured and is enduring immense pain and suffering, and incurred and continues to incur medical expenses in excess of $510,000.00 for which he makes claim, in addition to other damages alleged and prayed for herein.

## COUNT XII

## STATE TORT CLAIMS

131.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

132.

In addition to the Constitutional and Federal claims set forth above, and restated herein verbatim, Plaintiff asserts claims arising out of violation of Georgia law.

133.

Defendant Jackson unlawfully, intentionally battered and unjustifiably used excessive deadly force against Mr. King, who was unarmed, when Defendant Jackson shot him in the face, causing serious and permanent personal injuries, disfigurement, and immense pain and suffering of Mr. King, along with his medical expenses.

134.

Defendant Jackson's actions were committed during the course and scope of his employment with the City of Atlanta Police Department.

135.

Defendant Jackson's unreasonable and unjustifiable use of deadly force by shooting an unarmed Mr. King was a direct and proximate cause of the injuries and damages suffered by Mr. King.

136.

Defendant Jackson's unlawful actions include but is not limited to:

(1)    excessive use of force;

(2)    failure to adhere to use of force policies;

(3)    failure to adhere to policies and/or procedures regarding the use of deadly force;

(4)    failure to adhere to policies and/or procedures regarding the use of deadly force for potential misdemeanor offenses;

(5)    unlawful use of force;

(6)    unlawful discharge of a firearm;

(7)    assault and battery; and

(8)    violation of O.C.G.A. § 14-4-20 (b) which provides in part as follows:

[P]eace officers … may use deadly force to apprehend a suspected felon *only* when the officer *reasonably believes that the suspect possesses a deadly weapon* or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the officer *reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others*; or when *there is probable cause to believe that the suspect has committed a*

[33]

*crime involving the infliction or threatened infliction of serious physical harm.*
(Emphasis Added)

### 137.

The Defendant City of Atlanta improperly hired and trained Defendant Jackson, negligently retained him, which resulted in the illegal and unnecessary use of deadly force against Mr. King, which caused his serious personal injuries and damages.

### 138.

The Defendant City of Atlanta failed to implement and/or adhere to policies and procedures, including but not limited to the following:

(a) the use of deadly force;

(b) the use of deadly force against misdemeanor suspects;

(c) unreasonable searches and seizures, and;

(d) other customs, policies and procedures that will be discovered during the course of this case.

## COUNT XIV

## DAMAGES

[34]

139.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

140.

As a result of the Defendants' joint and several wrongful conduct under the U.S. Constitution, Federal and State law, Mr. King suffered serious permanent personal injuries, permanent disfigurement, has and continues to endure immense pain and suffering, incurred damages and medical expenses in excess of $510,000.00 in part as set forth as follows:

| Provider | Description | Dates of Service | Amount |
|---|---|---|---|
| S. Fulton Hospital | Initial ER Treatment | 4/04/13 | $ T.B.D. |
| S. Fulton ER Physicians | ER doctors | 4/04/13 | $1,702.00 $726.00 |
| Radisphere | Radiology | 4/04/13 | $82.00 |
| EMS Ventures | Transport AMC | 4/04/13 | $2,084.00 |
| Atlanta Medical Center | Surgeries | 4/4-5/01/13 5/22-5/24/13 | $373,411.98 $23,164.80 |
| Dr. Work | Surgeon | 7/02/13-5/02/14 | $79,625.00 |
| AMC ER Physicians | ER doctors | 4/04/13 | $1,491.00 |
| Atlanta Pathology | Pathology | 4/04-4/17/13 | $90.00 $895.00 |
| N. Lake Anesthesiology | Anesthesiology | 4/04/13 4/13/13 | $1,472.00 $6,164.00 |

| | | 4/18/13 | $1,012.00 |
|---|---|---|---|
| Diagnostic Imaging | Radiology | 4/04-5/23/13 | $1,747.00 |
| Dr. Stephenson | Surgeon | 4/5-4/14/13 | $13,177.00 |
| Grady Healthcare | Medical Care | 5/16/13 | $3,615.60 |
| | | 5/20/13 | $384.00 |
| **Past Medical Expenses from Shooting** | | | **$510,843.38** |

Mr. King will be required to undergo several more surgical procedures, and his special damages will increase.

## COUNT XV

## PUNITIVE DAMAGES

### 141.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 142.

Defendant Jackson's actions on, or about, April 4, 2013, including but not limited to using unnecessary deadly force by shooting an unarmed Mr. King in the face, for no reason, warrant the imposition of punitive damages to punish and deter said Defendant, for his willful misconduct, malice, wantonness, oppression, and conscious and deliberate indifference to the consequences of Defendant's actions.

143.

Plaintiff is entitled to recover punitive damages from Defendant Jackson, in his individual capacity, in an amount to be determined by the enlightened conscience of the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

(a) That process issue in this action;

(b) That Plaintiff be granted a trial by jury of twelve on issue so triable;

(c) That judgment be entered in favor of Plaintiff and against the Defendants jointly and severally, in an amount to be determined by the enlightened conscience of a jury as will fully and adequately compensate Plaintiff for the violation of his constitutional rights, and the personal injuries, pain and suffering;

c) That judgment be entered in favor of Plaintiff and against the Defendants jointly and severally, for the medical expenses of Plaintiff in an amount no less than $510,843.38, and all other medical expenses that Plaintiff will incur as a result of the injuries suffered due to the Defendants' actions;

(d) That judgment be entered in favor of Plaintiff and against Defendant Jackson in an amount to be determined by the enlightened conscience of the jury as

[37]

punitive damages;

(e) That Plaintiff have and recover the cost of litigation, expenses, and attorneys' fees as allowed pursuant to 42 U.S.C. §§ 1983 and 1988;

(f) An award of pre-judgment and post-judgment interest; and

(g) That Plaintiff have such other and further relief as the Court deems just and proper.

Respectfully submitted this 27 day of February, 2015.

James D. McGuire
Georgia Bar No. 493325
jmcguire@mcklaw.org

Richard B. Crohan
Georgia Bar No. 197120
rcrohan@mcklaw.org

McGuire, Crohan & Klinger
Not A Partnership
1800 Peachtree Street, Suite 514
Atlanta, Georgia 30309
404-351-8500 main line
404-351-8805 fax

[38]

## CERTIFICATION OF FONT

This certifies that pursuant to LR 5.1, ND., GA, the above Complaint for

Damages has been prepared using Times New Roman font, 14 point.

Respectfully submitted this _27_ day of February, 2015.

James D. McGuire
Georgia Bar No. 493325
jmcguire@mcklaw.org


Richard B. Crohan
Georgia Bar No. 197120
rcrohan@mcklaw.org

McGuire, Crohan & Klinger
Not A Partnership
1800 Peachtree Street, Suite 514
Atlanta, Georgia 30309
404-351-8500 main line
404-351-8805 fax

[39]