## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **WILL O. KING,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:15-CV-0583-TWT** |
| | : | |
| **KYLEMA JACKSON,** | : | |
| **Individually and in his Official** | : | |
| **Capacity as a City of Atlanta** | : | |
| **Police Officer, and** | : | |
| **THE CITY OF ATLANTA** | : | |
| **Defendants.** | : | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

**COMES NOW, Will O. King** ["Plaintiff" or "Mr. King"], within twenty-one (21)

days of the filing of responsive pleadings and motions as required by FRCP

15(a)(1)(B), and files this, his *First Amended Complaint for Damages* against

**Kylema Jackson, Individually and in his Official Capacity as a City of Atlanta**

**Police Officer** [also referred to as "Jackson" or "Defendant Jackson"] and **The**

**City of Atlanta** [also referred to as "the City"] and collectively referred to as

"Defendants"], pursuant to 42 U.S.C. §1983 and under Federal and Georgia law.

This action arises out of the illegal shooting of Plaintiff Will King, and the

unlawful use of deadly force by Kylema Jackson, as a City of Atlanta Police

[1]

Officer, as caused by the policies, customs and lack of training by the City of Atlanta. The unlawful shooting and use of unjustified excessive force used against Plaintiff Will King occurred on April 4, 2013, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, the Constitution of the State of Georgia and pursuant to a custom policy and/or practice of the City of Atlanta Police Department ("APD").

1.

Plaintiff brings this civil rights action for monetary damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Mr. King's rights under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff also brings pendent state law claims against the Defendants arising from the same case and controversy, transactions and occurrences as the Federal Civil Rights claims alleged herein, as recognized by 28 U.S.C. § 1367.

## JURISDICTION AND VENUE

2.

This action arises under the U.S. Constitution, including Article II, Section 1, and the laws of the United States. This action is brought pursuant to 42 U.S.C. §§§

1981, 1983 and 1988. This Court has original jurisdiction over Mr. King's Federal

Civil Rights claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court may

exercise supplemental jurisdiction over Plaintiff's pendent State law claims

pursuant to 28 U.S.C. § 1367(a).

3.

All parties reside in the Northern District of Georgia. The civil rights violations

and tortious acts alleged herein occurred in the Northern District of Georgia.

Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

4.

Mr. King is a citizen of the State of Georgia who resides in the Northern

District of Georgia and has standing to bring claims of this kind and nature in this

Court.

5.

Defendant Jackson is a citizen of the State of Georgia residing in the Northern

District of Georgia. Defendant Jackson is subject to the personal jurisdiction of this

Court and may, and has been, served with the initial summons and process at the

City of Atlanta Police Department, Atlanta, Georgia. Service of this Amended

Complaint by be made by mailing a copy of the same to the pro se Defendant, Kylema Jackson, at the address furnished to this Court, to wit: 1650 Anderson Mill Road, #7103, Austell, GA 30106.

6.

Defendant City of Atlanta is a Georgia municipal corporation, maintaining its office at 55 Trinity Ave., Atlanta, GA, and is the legal entity responsible for itself and the City of Atlanta Police Department, whose policies, practices and customs were a moving force in the constitutional and statutory violations set out herein. This Defendant is also the employer of Defendant Jackson and is a proper entity to be sued under 42 U.S.C. § 1983.

7.

At all times relevant to this action, Defendant Jackson was a citizen of the United States and a resident of the State of Georgia. Further, Defendant Jackson was employed as a Police Officer by the City of Atlanta Police Department, was acting under color of state law, and was acting in his capacity as a law enforcement officer employed by the City of Atlanta and/or the Atlanta Police Department. Defendant Jackson is sued individually, and in his official capacity as a City of Atlanta Police Officer.

8.

At all times relevant and material to this Complaint, Defendants acted under color of statutes, customs, rules and usages of the City of Atlanta Police Department and pursuant to customs, practices, and policies implemented and/or ratified by the City of Atlanta.

9.

For state law claims, Plaintiff has complied with the notice requirements of O.C.G.A. Section 36-33-5 by sending his notices of claims to the City of Atlanta. Copies of the notices of claims are attached hereto as Exhibit "A" and incorporated herein by reference.

## FACTUAL ALLEGATIONS

10.

Plaintiff incorporates by reference all of the preceding paragraphs, including the allegations of the "Introduction", as if stated verbatim herein.

11.

On the afternoon of April 4, 2013, Mr. King was driving a vehicle on Jonesboro Road, in the City of Atlanta.

## 12.

In the vehicle with Mr. King were three passengers.

## 13.

One of the passengers asked Mr. King to stop at a CITGO gas station to make a purchase.

## 14.

Upon arriving at CITGO, the one passenger exited the vehicle and went inside, leaving Mr. King and two other passengers waiting for him in the vehicle.

## 15.

Thereafter, Defendant Jackson drove his City of Atlanta Police patrol car into the CITGO parking lot and stopped beside Mr. King's car.

## 16.

Defendant Jackson then proceeded to back his patrol car behind Mr. King's car, and activate his blue lights.

## 17.

Defendant Jackson then exited his vehicle with his service weapon drawn and pointed the weapon at Mr. King.

18.

Defendant Jackson approached the driver's side of Mr. King's vehicle with his
weapon continually pointed at Mr. King's head.

19.

Defendant Jackson yelled for all of the occupants to raise their hands, to which
they all complied, including Mr. King.

20.

Despite the vehicle occupants, including Mr. King, complying with the demand,
Defendant Jackson, used unjustified and excessive deadly force by shooting
through the glass of the driver's side window, striking Mr. King in the side of the
face.

21.

After suffering the massive head injury and bleeding profusely, Mr. King, fearing
for his life, managed to drive away from Defendant Jackson, to an address where
he was taken to the hospital with life threatening injuries.

**COUNT I.**

22.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

23.

Defendant Jackson did not know the identity of any of the occupants of the car driven by Mr. King at the time he pulled his patrol car behind Mr. King's vehicle, in the CITGO parking lot, and activated his blue lights.

24.

Defendant Jackson did not know the identity of any of the occupants of the car driven by Mr. King at the time he exited his patrol car with his service weapon drawn.

25.

Defendant Jackson did not know the identity of any of the occupants of the car driven by Mr. King at the time Defendant Jackson fired his service weapon though the window of the vehicle, shooting Mr. King in the face.

26.

The only potential reason Defendant Jackson would have had to pull over the vehicle driven by Mr. King was that the car had a dealer drive out tag.

27.

Defendant Jackson was aware that driving with an improper tag is a misdemeanor,

traffic violation.

28.

Neither Mr. King, nor anyone in the vehicle, committed any act or acted in any manner that would have caused Defendant Jackson to reasonably believe that they posed an immediate threat of physical violence to Defendant Jackson or others.

29.

Defendant Jackson was aware that the use of deadly force, under these circumstances, was objectively unreasonable, illegal, excessive and in violation of the U.S. Constitution, Federal law and State law.

30.

Because Defendant Jackson had no reason to believe that Mr. King, or anyone in the vehicle posed an immediate threat of danger or violence, or possessed a dangerous weapon, Defendant Jackson violated the United States Constitutional when he improperly used excessive deadly force by shooting Mr. King.

31.

Prior to Defendant Jackson exiting his vehicle with his gun drawn, he had no probable cause to believe that the occupants had committed any felonies.

[9]

32.

Prior to Defendant Jackson exiting his vehicle with his gun drawn, he had no articulable suspicion to believe that the occupants had committed any felonies.

33.

At no time prior to shooting Mr. King did Defendant Jackson witness Mr. King commit any felonies.

34.

At no time prior to shooting Mr. King did Defendant Jackson have any articulable suspicion to believe that Mr. King had committed any felonies.

35.

Mr. King was unarmed when Defendant Jackson shot through the glass of the driver's side window of Mr. King's vehicle, causing serious personal injuries to Mr. King.

36.

After going through the glass window, the bullet entered through Mr. King's left cheek and shattered his left jawbone. The bullet then penetrated through the base of his tongue, causing large lacerations on both the lateral and inferior aspect of his tongue. The bullet then went through his right jawbone.

37.

The injuries suffered by Mr. King were life threatening and included multiple

displaced fractures of Mr. King's jaw, which required multiple surgeries and the

placement of an Erich Arch Bar, (an external fixator), on the outside of Mr. King's

face, which was attached with screws into his head. Mr. King was required to have

the fixator attached to his face and head for more than a year.

38.

During the medical process, Mr. King's mouth was wired closed to assist in the

healing process. As such, he was unable to eat. While he had been on a feeding

tube, after one of his surgeries, the feeding tube could not be passed. A surgical G-

tube was surgically put in place during a procedure called an Open Stamm

Gastrostomy. This surgical procedure was performed under general anesthesia, and

involved inserting a feeding tube through his side, directly into his stomach.

39.

As a result of Defendant Jackson's wrongful conduct, Mr. King suffered serious

and permanent personal injuries and disfigurement. Mr. King has endured and

continues to endure immense pain and suffering, has undergone and continues to

undergo surgical procedures and has incurred medical expenses in excess of Five

[11]

Hundred Ten Thousand Dollars ($510,000.00).

## COUNT II.

40.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

41.

Defendant Jackson, in violation of the Constitution, including but not limited to the Fourth Amendment, unlawfully, intentionally and without justification used illegal and unnecessary deadly force when he shot an unarmed Mr. King in the face.

42.

Defendant Jackson's actions were committed under color of law and during the course and scope of his employment with the City of Atlanta Police Department.

43.

The illegal use of excessive force by Defendant Jackson, including but not limited to his shooting of unarmed Mr. King, violated Mr. King's rights under the Fourth and Fourteenth Amendments to the United States Constitution, made applicable to state actors pursuant to 42 U.S.C. § 1983.

44.

Prior to shooting Mr. King, Defendant Jackson was aware, or should have been aware, that the use of excessive deadly force by a peace office is considered an unlawful seizure of a person under the U.S. Constitution and U.S. Supreme Court case law.

45.

Prior to shooting Mr. King, Defendant Jackson was aware, or should have been aware, that all people in the United States are protected from unreasonable governmental seizures through protections afforded by the U.S. Constitution, U.S. Supreme Court case law and Georgia law.

46.

The unlawful actions of Defendant Jackson, and the use of improper procedures and excessive deadly force against Mr. King, were conducted under the color of state law by Defendant Jackson acting within the scope of his employment as a Police Officer with the City of Atlanta Police Department.

## COUNT III

47.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

[13]

verbatim herein.

48.

Defendant Jackson's shooting of Will King was under criminal investigation by the Fulton County District Attorney's Office for almost two (2) years.

49.

An accusation was drawn on March 17, 2015, charging Defendant Jackson with aggravated battery and aggravated assault, in violation of O.C.G.A. §§ 16-5-24 and 16-5-21. (A certified copy of the Accusation is attached hereto as Exhibit "B")

50.

Count 1 of the allegations of the Accusation states in part: "…Kylema Jackson … on the 4th day of April 2013, did maliciously cause bodily harm to Will King by rendering his left mandible, right mandible and tongue useless by shooting the face of Will King with his service weapon." (Exhibit "B" P.2, Ct.1)

51.

Count 2 of the allegations of the Accusation states in part: "… Kylema Jackson … on the 4th day of April, 2013, did unlawfully commit an aggravated assault upon the person of Will King by pointing a handgun (an object which, when used offensively against a person is likely to result in serious bodily injury) at Will King

[14]

without legal authority, thereby placing Will King in reasonable apprehension on immediately receiving serious bodily injury." (Exhibit "B", P.2, Ct.2)

## COUNT IV

### 52.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 53.

Defendant Jackson entered a negotiated plea of guilty to the offenses of Simple Battery O.C.G.A. §16-5-23, and Reckless Conduct, O.C.G.A. §16-5-60. (See, Exhibit "B", P.1).

### 54.

The offense of Simple Battery under O.C.G.A. §16-5-23 (a), is committed when a person either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another.

### 55.

The offense of Reckless Conduct under O.C.G.A. §16-5-60 (b) is committed when a person who causes bodily harm to or endangers the bodily safety of another

person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

## COUNT V

### 56.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 57.

Defendant Jackson has been a police officer for The City of Atlanta since July, 2002.

### 58.

During his employment with The City of Atlanta Police Department (hereinafter "APD"), Defendant Jackson has received no less than twelve (12) formal citizen complaints, alleging maltreatment and unnecessary use of force.

### 59.

The complaints contained in Defendant Jackson's APD file, cited herein, dating

back to 2004 are supported by no less than twenty-five (25) witnesses including seven (7) APD Supervisors, one (1) APD officer, one (1) off duty police officer and one (1) other APD co-employee.

60.

Prior to shooting Mr. King on April 4, 2013, Defendant Jackson had been investigated, and minimally, if at all, "punished", by the City of Atlanta Police Department for unnecessary use of force. The APD had a routine practice of characterizing threats of violence, including those with a handgun, as "courtesy" issues, rather than instances of excessive use of force. The "discipline" or "punishment" which the APD decided to mete out was minimal and, on more than one occasion even the minimal punishment planned was reduced or withdrawn entirely, which had the effect of teaching APD officers including Defendant Jackson, that unconstitutional excessive force was permissible

61.

By way of further illustration of the City's policy of condoning excessive force, the City sustained an unnecessary use of force complaint against Defendant Jackson approximately fifteen (15) days before he shot Mr. King, but took no action to prevent the further use of excessive force by Jackson against the public.

[17]

62.

Despite Defendant Jackson's history of unnecessary force complaints, and the numerous complaints from law enforcement and citizens about Defendant Jackson's actions, the City continued to employ him as a police officer and did not suspend, discipline, relocate him to another department where the public would be less exposed to him or even ask him to surrender his firearm. Through its actions, and inactions, the City of Atlanta established a process or custom that allowed and encouraged Defendant Jackson to continue to illegally use excessive force, culminating in the unlawful shooting of Will King.

## COUNT VI

63.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

64.

Defendant City of Atlanta was aware as early as 2004 that Defendant Jackson was willing to use unnecessary force by using his service weapon, as a citizen complained that he threatened to use his weapon during a traffic stop.

65.

A female citizen/victim complained to APD about Defendant Jackson's conduct during and incident when Jackson alleged that he pulled her over for not wearing a seatbelt. But according to the APD file, the incident began when Jackson commanded the citizen to pull her car forward, past her own driveway when Jackson was not in the course of pulling her over for anything. (OPS investigation #04-C-0335-CTSY, See Exhibit "C")

66.

When the citizen tried to explain she was trying to turn into her own driveway and Jackson was forcing her past it, Jackson jumped out of his car and told her "You are not going to be out here showing out on me." Id.

67.

She presented her driver's license and insurance card to Defendant Jackson, who took it back to his patrol car. Jackson then wrote her tickets for not wearing her seat belt along with a ticket for a cracked windshield, which he only noticed when he was beside her car.

68.

According to the victim and two witnesses, whose statements are contained in the

APD investigative file, Defendant Jackson at one point told her "Get back in the car n\*\*ger before I lock your n\*\*ger ass up." Id. (See also corroborating witness statements Tillman, attached as Exhibit "D" and Slaughter attached as Exhibit "E")

69.

Defendant Jackson then slammed the woman's car door, breaking the window.

70.

According to the statements contained in the APD investigative file, during his encounter with the citizen, Defendant Jackson put his hand on his gun and unhooked his holster, threateningly, as if was going to pull it on the victim. (OPS investigation #04-C-0335-CTSY, See Exhibits "C", "D" and "E")

71.

APD was aware, as shown in its own investigative records, the Defendant Jackson, during a routine traffic stop and without cause, placed his hand on his gun and unfastened his holster, in an aggressive and threatening manner. Id.

72.

APD was, and is, aware that the use of excessive force during an encounter with a citizen, invokes the Fourth Amendment "objective reasonableness" standard and that Defendant Jackson violated that standard and the constitutional rights of the

[20]

citizen /victim.

73.

APD investigated, failed to discipline or instruct him on the use of force continuum and instead, characterized this incident as a "lack of courtesy" and gave Defendant Jackson only an oral admonition. (OPS investigation #04-C-0335-CTSY, See Exhibit "F")

## COUNT VII

74.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

75.

In 2005, Defendant Jackson was instructed by a supervisor to walk a foot beat with another officer.

76.

According to APD records, Defendant Jackson responded that "[I] don't walk foot beats, it goes against [my] principles and [my] manhood." (OPS investigation #05-1-0378-SOP, See, Memo from Sgt. Mills, attached hereto as Exhibit "G")

77.

Defendant Jackson also advised the supervisor that he had been authorized not to work with a particular officer. Id. at P.1.

78.

During the investigative interview regarding the charge of job abandonment, Defendant Jackson was interviewed by a Sergeant, who at the time had been a front line supervisor since 1993. Another Sergeant was also present for the interview. Id. at P.1, 2.

79.

The interviewing Sergeant opined in his report that Defendant Jackson was mentally unstable. Id. at P.1.

80.

Also in his report, the interviewing Sergeant wondered, if Defendant Jackson was as unstable as he appeared, if he should be worried about his personal safety and the safety of other employees. Id. at P.1, 2.

81.

The interviewing Sergeant stated in his report that he had *never* previously encountered an employee who behaved like Defendant Jackson, and made him fear

[22]

for his life. Id. at P. 2.

82.

The interviewing Sergeant observed that Defendant Jackson refused to look him in the eye, but instead stared off into space as though he was talking with someone above him. Id. at P. 2.

83.

When asked if he was going to continue to refuse to work the assignment and disobey a direct order, Defendant Jackson said nothing, and continued to gaze into space. Id. at P. 2.

84.

Defendant Jackson was told to clock out and go home.

85.

According to the report, after Defendant Jackson had left the building, both APD Sergeants discussed Defendant Jackson's "bizarre" behavior and their concern that he might reach for his weapon and use it. Id. at P. 2.

86.

The report stated that one Sergeant was so concerned about Defendant Jackson's behavior, that he actually became aware that he was not wearing his bullet proof

[23]

vest, and "subconsciously" placed his hand on his weapon. Id. at P. 2.

87.

In his report, the interviewing Sergeant opined that Defendant Jackson displayed a

"gross disregard for the authority of the rules of the Department." Id.

88.

The interviewing Sergeant opined that Defendant Jackson "clearly exhibited

behavior indicative of psychological and/or emotional impairment." Id.

89.

The interviewing Sergeant then requested Defendant Jackson be relieved of duty

and scheduled a psychiatric evaluation.

90.

Defendant Jackson was relieved of duty briefly on 5/25/2005 and surrendered his

weapon, magazines, ammo, ID and badge, but the APD would soon return him to

the force and return his weapon to him, despite the alarming concern expressed by

two APD Supervisors about his evident instability and potential to harm others

with his firearm.

91.

As part of the investigation, a supervising Sergeant Cotter testified that he "... did

not ever give Officer Jackson any information that would lead him to believe that he did not have to work a foot beat and/or work with [another officer]." (OPS investigation #05-1-0378-SOP, See, Memo from Sgt. Cotter, attached hereto as Exhibit "H")

92.

Despite the "bizarre" behavior and fear for their lives and safety of other employees, the APD sustained rule violations against Defendant Jackson of Failure to Obey Supervisory Personnel and Truthfulness. (OPS investigation #05-1-0378-SOP, See, Exhibit "I")

93.

Defendant Jackson was reinstated by APD for full duty on 7/14/2005, fully armed and without any instruction on use of force, probationary period to address the concerns about potential armed violence or reassignment to an unarmed position or one where Jackson would not come into contact with the public.

**COUNT VIII**

94.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

[25]

95.

In November 2005, Defendant Jackson, on his own volition, approached a group of motorcycle riders at a BP station at 448 Boulevard in Atlanta. The store manager had not complained about the riders' brief presence there, nor had any citizen or motorist.

96.

The motorcyclists, members of a social riding group, were gathering to take photos at a near-by park. They had committed no crime whatsoever, had not impeded traffic or caused any reason for concern.

97.

Unbeknownst to Defendant Jackson, one of the members of the riding group was an off duty police officer.

98.

Defendant Jackson pulled into the BP Station and according to members of the group, began cursing at them and demanding they exit the premises.

99.

Even though they were attempting to leave, Defendant Jackson pulled his service weapon in a hostile and intimidating manner.

[26]

100.

Eight (8) of the participants, including the off duty officer, filed complaints against Defendant Jackson. (OPS investigation #05-C-0870-MISC, See, Exhibit "J")

101.

According to the off duty officer, Autumn McCollum, in her written statement to APD, when Defendant Jackson demanded everyone leave the premises, they promptly began putting on their riding gear in order to leave. Id. at P. 1.

102.

In an effort to assuage Jackson, who was being unnecessarily and increasingly belligerent, one of the members began to explain to him that it takes a few minutes to put on the gear, she observed Defendant Jackson un-holster his weapon and put it down by his side, using it to intimidate everyone. Id.

103.

In her opinion, the situation never escalated so as to justify Jackson's show of deadly force. Id.

104.

It was her opinion that Jackson's use of his weapon was uncalled for and

disproportionate to the encounter. She opined, "...being a police officer [herself], that the officer on scene did not use the appropriate level of force." Id. at P. 2.

105.

She further opined that Defendant Jackson needed to receive "counseling on use of force. Id. at P. 1.

106.

Another complaining witness who provided a written statement to the APD stated in part that Defendant Jackson "... began yelling for everyone to get the f*ck out of [there], and put his hand on his gun. (OPS investigation #05-1-0378-SOP, Exhibit "K")

107.

She stated that Defendant Jackson then pulled his gun out as he continued to yell, "with his hand shaking." He also "looked very distraught." Id.

108.

She then called 911 and was told to wait for a supervisor.

109.

Defendant Jackson approached the witnessed and asked if she was waiting on something. She informed him that the 911 dispatcher told her to wait for his

supervisor.

110.

Defendant Jackson placed his hand back on his weapon and told her that the supervisor was going to tell her the same thing. Id.

111.

Another witness provided a written account that stated in part that Defendant Jackson jumped out of his car and aggressively approached the group, yelling profanities and pulled his weapon on them *without reason*. (OPS investigation #05-1-0378-SOP, See, Exhibit "L")

112.

Defendant Jackson continued to yell profanities at her in the parking lot and he was extremely threatening to the entire group without cause. Id.

113.

Another witness submitted a written account and stated that Defendant Jackson exited is vehicle and began using profanity towards them. (OPS investigation #05-1-0378-SOP, See, Memo from Sgt. Mills, attached hereto as Exhibit "M")

114.

Defendant Jackson "pulled out his gun and continue[d] to use profanity at [them]."

[29]

Id.

115.

Another witness submitted her written statement to the APD in the investigation of this matter. Like the other witnesses, she said Defendant Jackson told them to leave and then began cursing at them, "used the F word" and "pulled out his gun trying to scare [them]." (OPS investigation #05-1-0378-SOP, See, Exhibit "N")

116.

She opined that Defendant Jackson needed to take an anger management class. Id.

117.

Once again, a law enforcement officer and citizens filed formal complaints about Jackson's excessive use of force, lack of training in use of force and his unusual hostility and anger toward the public. Once again, the complaints involved his excessive and unlawful use of a handgun to threaten citizens. Despite the complaints and statements provided by the victim/witnesses, the APD again characterized the issue as one involving "courtesy" when it clearly involved an excessive use of force. The APD sustained a "courtesy" violation, but despite eight (8) witnesses, including an off duty police officer, it later changed the status to "exonerated". (OPS investigation #05-1-0378-SOP, See, Exhibit "O")

118.

APD was, and is, aware that Defendant Jackson's use of excessive force during the encounter with this group, violated the Fourth Amendment "objective reasonableness" standard and the constitutional rights of each member of the group.

119.

The APD and City's failure to meaningfully address Defendant Jackson's use of excessive unconstitutional force with the motorist at a routine traffic stop and with the group at the BP, show a custom and practice of the APD ratifiying and encouraging the use of illegal excessive force against citizens.

## COUNT IX

120.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

121.

On August 28, 2007, Defendant Jackson was working at the area of Lakewood Amphitheater and again acted in a hostile and aggressive manner toward a fellow

APD officer and two Georgia State Troopers, so as to cause yet another complaint to be made against Jackson with the APD.

122.

An APD officer was working off duty security at the Lakewood Amphitheater.

123.

Two uniformed Georgia State Patrol Troopers were also working at Lakewood Amphitheater.

124.

According to the complaining APD officer, Defendant Jackson aggressively injected himself into a situation in which his involvement was neither requested nor warranted and then became "irate" toward both citizens and law enforcement.

125.

The off duty officer stated that traffic was not obstructed or impeded in any way as cars waited for the Amphitheater gate to open. Yet Jackson began ranting at the crowd about tickets and towing and at the fellow officers about what they were doing wrong and how he didn't care who they were. His fellow APD Officer asked Defendant Jackson to calm down, as he was raising his voice to her and the crowd. The GSP Troopers present also observed Defendant Jackson's behavior.

[32]

126.

Once the gates to the Amphitheatre opened, Defendant Jackson entered in his patrol vehicle with blue lights flashing, and in a show of belligerence and unnecessary exertion of force, blocked the northbound traffic.

127.

One of the GSP Troopers approached Defendant Jackson's patrol car asking him when he was going to move his vehicle for the traffic.

128.

Defendant Jackson argued with the GSP Trooper and responded angrily that he would move "when he got ready to move."

129.

The GSP Trooper, recognizing Jackson unreasonably hostile and aggressive demeanor, walked away from the vehicle to deescalate the confrontation.

130.

The off duty APD officer filed a complaint with APD against Defendant Jackson. (OPS investigation #07-I-0535-MJSC, See, Exhibit "P")

131.

In his statement to the investigator, Defendant Jackson stated that he saw the GSP
Trooper had a "Chevron on his sleeve," meaning he was aware that the Trooper
had a high rank with the State Patrol when he acted irate, angry and disrespectfully
toward him.

### 132.

The APD investigation once again failed to result in meaningful discipline or
training of Defendant Jackson. He was not counseled on his aggressive behavior
or unnecessary exertion of force

### 133.

The APD Investigative Procedure, Policy or Training Recommendations stated as
follows:

"The attendance of a sensitivity course by Officer Jackson might assist him, when
dealing with citizens and other law enforcement. This has not been the first
instance in which a complaint has been received about Office Jackson's attitude
and courtesy toward others. *Without some form of training, this type of situation
will continue, and cause unforeseen problems for the department and Officer
Jackson.*" (Emphasis Added) (OPS investigation #07-I-0535-MISC, See, Exhibit
"Q")

134.

The APD and City were aware that there was credible evidence and professional

complaints from multiple individuals levied against Defendant Jackson regarding

his unconstitutional use of excessive force; their own supervising Sergeants opined

that Defendant Jackson's conduct caused them to be concerned whether he would

use his weapon against them or others; and with the Lakewood incident again

acknowledged that he needed (at least) training, or Jackson would continue to

cause unforeseen problems for the APD and himself, yet nothing meaningful was

done.

135.

Once again, Defendant Jackson's irate temper and aggressive behavior directed at

other law enforcement officers was characterized by APD as a "courtesy" issue.

(OPS investigation #07-I-0535-MISC, See, Exhibit "R") The City failed to

discipline him despite having previously pulled his weapon on an off-duty officer

and others and angrily arguing with and aggressively shouting at three (3) other

law enforcement officers. With his attitude and behavior towards them and a

failure to discipline or train, the City knew or should have known that his behavior

toward the non-law enforcement members of the public would be at least as bad, but more likely worse.

## COUNT X

### 136.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 137.

On February 6, 2008, Defendant Jackson was charged with sending an angry and profane message to a co-employee on more than one occasion. (OPS investigation #08-I-0067-CTSY, See, Exhibit "S") The event involved a female APD dispatcher who tried, unsuccessfully for a significant time to raise Jackson on his radio (99 minutes). When Jackson finally responded to her, he shouted at her. She sent him a message telling him that there was no reason to be so nasty to her; Jackson texted her to "GO TO H#@L B#@CH."

### 138.

When confronted with the indisputable evidence against him, Defendant Jackson was forced to admit to having sent the messages. (OPS investigation #08-I-0067-CTSY, See, Exhibit "T")

[36]

139.

The Procedure, Policy or Training Recommendations found that:

**It would be wise to place Officer Jackson on Early warning at this time and monitor any future incidents. In addition to this, possibly sending Officer Jackson for a psychiatric evaluation would be beneficial** to find out if there is anything that is troubling him and affecting his work performance. Lastly, **with the increased number of complaints that Officer Jackson has received since August 2007, a possible change in assignment to were (sic) Officer Jackson has minimum contact with the public would benefit the department and Officer Jackson** until it can be determined if there is an underlying problem. (Property Section of Central Records are some suggestions.) (Emphasis Added) (OPS investigation #08-I-0067-CTSY, See, Exhibit "U")

140

In his recommendation, the investigating Sergeant stated: **"the fact that Officer Jackson makes these blatant violations of Standard Operating Procedures is a sign of Officer Jackson's obvious unconcern with the position he holds."** (Emphasis Added.) (OPS investigation #08-I-0067-CTSY, See, Exhibit "V")

141.

No records in OPS investigation #08-I-0067-CTSY indicated that Defendant

Jackson ever received another psychiatric evaluation or was assigned, as APD

itself had recommended, to a department which would minimize his exposure to

the public or other officers.

142.

The APD and City of Atlanta was aware that there was credible evidence and

professional complaints from multiple individuals levied against Defendant

Jackson regarding his unconstitutional use of excessive force; their own

supervising Sergeants opined that Defendant Jackson caused them to be concerned

whether he would use his weapon against them or other employees; during the

Lakewood incident investigation the APD again acknowledged that he needed (at

least) training, or situations would continue and cause unforeseen problems for the

department and Officer Jackson. During the profane message investigation, another

psychiatric evaluation was urged. His inability to work peacefully with other

employees and officers as well as his inability to interact with the public was again

recognized. Yet, the APD did nothing meaningful to avert further unconstitutional

conduct and angry, violent interactions by Jackson

143.

APD's continued inaction had the effect of condoning Jackson's behavior and

through its inaction to correct his behavior, remove him from the department, or

place him in a department with minimal human contact, established the custom that

his unconstitutional, violent and unreasonably aggressive anti-social behavior

could continue.

## COUNT XI

144.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

145.

Later in 2008, Defendant Jackson arrested a man for drinking in public. The man

filed a complaint against Defendant Jackson alleging that Defendant Jackson

sprayed him with pepper spray and punched him without cause. (OPS investigation

#08-C-0359-UAF, See, Exhibit "W")

146.

Defendant Jackson transported the man to a "road block" for transportation to jail.

[39]

## 147.

The investigation revealed that the "road block" was approximately .58 miles from the location of arrest and that it should have taken less than 2 minutes to transport the man. (OPS investigation #08-C-0359-UAF, See, Exhibit "X")

## 148.

Defendant Jackson took 40 minutes to get the man to the "road block" and additional 10 minutes before he informed the officer at the "road block" that he had sprayed the victim with pepper spray. (See Statement of APD Officer Sergeant Hewitt, Exhibit "Y")

## 149.

According to the investigative statement provided by Sergeant Hewitt, Defendant Jackson told him at the "road block" that the reason he did not call for medical assistance for the man after beating and pepper spraying him was because he **"wanted to teach [the victim] a lesson."** (Emphasis Added) Id. at P. 3.

## 150.

The APD investigative findings were that Defendant Jackson had done this same type of incident in the past, and recommended counseling. (OPS investigation #08-

C-0359-UAF, See, Exhibit "Z")

151.

Despite the APD and City's knowledge of prior unnecessary use of force and excessive force complaints that were supported by ample credible witnesses and evidence; two (2) recommendations for psychiatric evaluation (one had been performed years earlier, the second recommended in the same year as this investigation was never performed), complaints from APD officers, other officers and co-employees, and the acknowledgement and recommendation that Defendant Jackson be moved to a department with little to no exposure to the public, he was still on patrol for the APD using excessive force, and intentionally delaying medical treatment for the victim of the force (pepper spray) and the APD and City, in violation of the rights of the victim and the constitution.

152.

Defendant Jackson violated the victim's constitutional rights by unreasonably intentionally delaying medical treatment to him after Jackson pepper sprayed him to "teach him a lesson." (See Statement of APD Officer Sergeant Hewitt, Exhibit "Y", at P. 3.) The APD policies recognized a person who had been pepper sprayed was has a serious medical need and should be transported for medical treatement

[41]

immediately.

153.

Defendant Jackson's intentional delay of medical treatment to "teach [the victim] a lesson" demonstrates Jackson's deliberate indifference to the medical needs of the victim and is a violation of the victim's constitutional rights.

154.

Defendant Jackson was charged with the knowledge that unreasonably delaying medical treatment to an arrestee is a violation of the arrestee's constitutional rights.

155.

The City of Atlanta and APD were aware that unreasonably delaying medical treatment to an arrestee is a violation of the arrestee's constitutional rights.

156.

Despite Defendant Jackson's admission to Sergeant Hewitt that he delayed medical treatment to "teach [the victim] a lesson", and with the knowledge that Defendant Jackson intentionally and with deliberate indifference delayed medical treatment to the arrestee, the City and the APD, did not sustain the Maltreatment or Unnecessary Force complaint, but sustained only a Reporting Required When Force Used complaint and recommended a mere one (1) day suspension. Again,

the APD did not train or discipline Jackson regarding his excessive use of force. Instead, that found that he had merely neglected to report a use of force when required. This necessarily taught Jackson that the excessive use of force and unconstitutional conduct to "teach a lesson" to citizens was acceptable.

157.

The APD ignored at least three (3) unnecessary force claims involving the use of weapons lodged against Defendant Jackson, with no reprimand, punishment, training or dismissal related to the excessive force. APD's continued inaction condoned Jackson's anti-social behavior and through its inaction to correct his behavior, remove him from the department, or place him in a department with minimal human contact, established the custom that his unreasonably aggressive behavior and dangerous unconstitutional activities could continue.

## COUNT XII

158.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

159.

In November of 2012, Defendant Jackson had taken an unauthorized job as a

"courtesy officer" at an apartment complex.

160.

Defendant Jackson was accused of using unnecessary force when he grabbed a blind tenant's granddaughter to remove her from the property, when she was lawfully there to assist her grandmother. (OPS investigation #12-C-00811-UAF, See, Exhibit "AA")

161.

The investigative report included that Defendant Jackson had bruised the granddaughter's arm when he forced her from the complex, on foot, in the rain. Id. P. 2.

162.

When the girl's mother arrived at the apartment complex, she found her daughter outside in the rain. Id.

163.

The girl and her mother went to Defendant Jackson's apartment to discuss the event. Id.

164.

Defendant Jackson came to the door with a handgun in his hand, wearing only a T-

shirt and boxer shorts. Id.

165.

The girl's mother call 911 for assistance. Id. at P. 5.

166.

Over five (5) months after the complaint was made, the APD investigation

sustained this complaint of Maltreatment or Unnecessary Force and Reporting

Required When Force Used. Id. at P.1.

167.

Significantly, the investigative report itself demonstrated that Jackson had

ineffective use of force training. It indicated that Defendant Jackson did not even

understand that grabbing a person was use of force. (OPS investigation #08-C-

0359-UAF, See, Exhibit "BB")

168.

The APD sustained this unnecessary force claim against Defendant Jackson some

fifteen (15) days prior to him shooting Will King. (OPS investigation #08-C-0359-

UAF, See, Exhibit "AA"). Yet, with Jackson's extensive history of the

unconstitutional use of excessive force; the concerns expressed by numerous police

officers, including supervisors, about his mental instability, potential for harm and

need for additional psychiatric intervention; the several recommendations that he

be trained and counseled on use of force; the recommendations that he be placed in

an APD department with minimal human contact; and the revelation in Jackson's

own words that he did not possess even a rudimentary understanding of the use of

force continuum, the APD and City did nothing. Jackson was still inadequately

trained in use of force, had not undergone an APD recommended psychiatric

evaluation, was armed with an APD handgun and was still in a position with

extensive human contact and exposure to the public when he unjustifiably shot

Will King.

## COUNT XIII

### 169.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated

verbatim herein.

### 170.

The City of Atlanta is responsible for the formulation of departmental policies, to

ensure that rules and regulations, and all general and special orders are understood

and enforced.

171.

The City of Atlanta is responsible for the formulation, adoption, and
implementation of such policies as are necessary to ensure that persons are not
allowed to assume the authority of a City of Atlanta Police Officer, if such persons
are predisposed to generalized violence, unnecessary force, and violence against
unarmed persons.

172.

The City of Atlanta knowingly, recklessly, and with gross negligence failed to
adopt and carry out adequate and responsible policies necessary to instruct,
supervise, control and discipline Defendant Jackson in his duties to refrain from:

(1) Unlawfully and maliciously employing excessive and unnecessary force
against citizens when there is no immediate threat to the lives or safety of
officers or others;

(2) Unlawfully and maliciously employing excessive and unnecessary force
against citizens when there is no articulable suspicion to believe such
citizens have committed felonies;

(3) Unlawfully and maliciously employing excessive and unnecessary force
against citizens before, during, or after the making of a stop or an arrest,

[47]

whether the stop or arrest was lawful or unlawful;

(4) Violating the rights, privileges, and immunities guaranteed to Mr. King
by the Constitution and laws of the United States and the State of Georgia;
and

(5) Otherwise depriving Will King of constitutional rights, privileges and
immunities.

## 173.

If Defendant City of Atlanta had properly discharged said duties, Defendant
Jackson would not have been hired, retained, or inadequately trained by the City of
Atlanta Police Department, and Defendant Jackson would not have been able to
use unnecessary excessive deadly force to shoot and seriously injury Mr. King, and
cause his injuries and damages.

## 174.

As a direct and proximate result of the breach of said duties, Mr. King has and
continues to suffer from serious and permanent disfiguring personal injuries, has
and continues to endure immense pain and suffering, and has incurred and
continues to incur enormous medical expenses and other general damages alleged
and prayed for herein.

## COUNT XII

### 175.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 176.

The Defendant City of Atlanta's implementation of the customs, policies and official acts caused the violation of Mr. King's constitutions rights, and reflects its deliberate indifference to the constitutional rights afforded to Mr. King. Such policy, custom, and official acts include, but are not limited to, the following:

(a) Defendant City of Atlanta, its agents and employees, deliberate choice of a grossly inadequate training program, including but not limited to the use of unnecessary deadly force, condones and facilitates officers' misconduct, which continues to lead to the violation of the publics' constitutional rights;

(b) Officers, including Defendant Jackson, employed by the City of Atlanta, during the performance of official police duties, violate the constitutional rights of suspects such that the need for further training, control and supervision is and has been plainly obvious to the Atlanta Police Department, who nonetheless is and

[49]

have been deliberately indifferent to such needs and whose lack of concern about the resulting constitutional violation tacitly authorize, encourage and foster unconstitutional conduct;

(c) Defendant City of Atlanta, through its agents and employees, were on notice of prior unconstitutional behavior by its officers, including Defendant Jackson, yet failed to take proper remedial steps, had no meaningful policies or procedures in place, and thereby manifested deliberate indifference to the offensive acts and to the constitutional rights of the public, including Mr. King's, by acts and omissions including but not limited to use of unnecessary deadly force;

(d) Defendant City of Atlanta through its agents and employees improperly retained Defendant Jackson despite his use of, and pre-disposition to, excessive, unnecessary, and/or unjustifiable use of deadly force;

(e) Ignoring and/or allowing the custom, practice and/or policy of using unjustifiable force, including deadly force;

(f) Such other customs, policies, practices, or official acts which will be learned and proven during discovery.

177.

Defendant City of Atlanta manifested deliberate indifference to the rights of

[50]

suspects such as Mr. King by failing to take actions to correct constitutionally violative conduct by City of Atlanta Police Officers, of which they were aware was being used by officers, including Defendant Jackson.

178.

As a direct and proximate result of the unconstitutional acts of the Defendants, Mr. King suffered serious, permanent, and disfiguring personal injuries, endured and is enduring immense pain and suffering, and incurred and continues to incur medical expenses in excess of $510,000.00 for which he makes claim, in addition to other damages alleged and prayed for herein.

## COUNT XII

## STATE TORT CLAIMS

179

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

180.

In addition to the Constitutional and Federal claims set forth above, and restated herein verbatim, Plaintiff asserts claims arising out of violation of Georgia law.

181.

Defendant Jackson unlawfully, intentionally battered and unjustifiably used excessive deadly force against Mr. King, who was unarmed, when Defendant Jackson shot him in the face, causing serious and permanent personal injuries, disfigurement, and immense pain and suffering of Mr. King, along with his medical expenses.

182.

Defendant Jackson's actions were committed during the course and scope of his employment with the City of Atlanta Police Department.

183.

Defendant Jackson's unreasonable and unjustifiable use of deadly force by shooting an unarmed Mr. King was a direct and proximate cause of the injuries and damages suffered by Mr. King.

184.

Defendant Jackson's unlawful actions include but is not limited to:

(1)    excessive use of force;

(2)    failure to adhere to use of force policies;

(3)    failure to adhere to policies and/or procedures regarding the use of

deadly force;

(4)     failure to adhere to policies and/or procedures regarding the use of deadly force for potential misdemeanor offenses;

(5)     unlawful use of force;

(6)     unlawful discharge of a firearm;

(7)     assault and battery; and

(8)     violation of O.C.G.A. § 14-4-20 (b) which provides in part as follows:

[P]eace officers ... may use deadly force to apprehend a suspected felon *only* when the officer *reasonably believes that the suspect possesses a deadly weapon* or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the officer *reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others*; or when *there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.* (Emphasis Added)

185.

The Defendant City of Atlanta improperly hired and trained Defendant Jackson, negligently retained him, which resulted in the illegal and unnecessary use of

[53]

deadly force against Mr. King, which caused his serious personal injuries and damages.

186.

The Defendant City of Atlanta failed to implement and/or adhere to policies and procedures, including but not limited to the following:

(a) the use of deadly force;

(b) the use of deadly force against misdemeanor suspects;

(c) unreasonable searches and seizures, and;

(d) other customs, policies and procedures that will be discovered during the course of this case.

## COUNT XIV

## DAMAGES

187.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

188.

As a result of the Defendants' joint and several wrongful conduct under the U.S. Constitution, Federal and State law, Mr. King suffered serious permanent personal

[54]

injuries, permanent disfigurement, has and continues to endure immense pain and suffering, including but not limited to past, present and future mental and physical pain and suffering, disruption of normal life and diminution in the enjoyment of life, and has incurred damages and medical expenses in excess of $510,000.00 in part as set forth as follows:

| Provider | Description | Dates of Service | Amount |
|---|---|---|---|
| S. Fulton Hospital | Initial ER Treatment | 4/04/13 | $ T.B.D. |
| S. Fulton ER Physicians | ER doctors | 4/04/13 | $1,702.00 $726.00 |
| Radisphere | Radiology | 4/04/13 | $82.00 |
| EMS Ventures | Transport AMC | 4/04/13 | $2,084.00 |
| Atlanta Medical Center | Surgeries | 4/4-5/01/13 5/22-5/24/13 | $373,411.98 $23,164.80 |
| Dr. Work | Surgeon | 7/02/13- 5/02/14 | $79,625.00 |
| AMC ER Physicians | ER doctors | 4/04/13 | $1,491.00 |
| Atlanta Pathology | Pathology | 4/04-4/17/13 | $90.00 $895.00 |
| N. Lake Anesthesiology | Anesthesiology | 4/04/13 4/13/13 4/18/13 | $1,472.00 $6,164.00 $1,012.00 |
| Diagnostic Imaging | Radiology | 4/04-5/23/13 | $1,747.00 |
| Dr. Stephenson | Surgeon | 4/5-4/14/13 | $13,177.00 |
| Grady Healthcare | Medical Care | 5/16/13 5/20/13 | $3,615.60 $384.00 |
| **Past Medical Expenses from Shooting** | | | **$510,843.38** |

Mr. King will be required to undergo several more surgical procedures, and his special damages will increase.

## COUNT XV

## PUNITIVE DAMAGES

### 189.

Plaintiff incorporates by reference all of the preceding paragraphs, as if stated verbatim herein.

### 190.

Defendant Jackson's actions on, or about, April 4, 2013, including but not limited to using unnecessary deadly force by shooting an unarmed Mr. King in the face, for no reason, warrant the imposition of punitive damages to punish and deter said Defendant, for his willful misconduct, malice, wantonness, oppression, and conscious and deliberate indifference to the consequences of Defendant's actions.

### 191.

As set out in the foregoing paragraphs which have been incorporated by reference, aggravating circumstances exist in this action which involves Defendant Jackson's unconstitutional and unlawful shooting of Will King, such that an award of punitive damages is necessary to punish, penalize or deter Defendant Jackson from

future like conduct.

192.

Pursuant to O.C.G.A. § 51-12-5.1., Plaintiff, Will King, specifically prays for and

seeks an award of punitive damages against Defendant Jackson for Jackson's

willful, wanton, oppressive and intentional conduct.

193.

Clear and convincing evidence exists that Defendant Jackson's actions amounted to

willful misconduct, malice, wantonness, oppression or that entire want of care

which would raise the presumption of conscious indifference to the consequences

of his actions.

194.

Defendant Jackson acted, or failed to act, with the specific intent to cause harm in

the unlawful and unconstitutional shooting of Will King, such that there is no

limitation regarding the amount which may be awarded as punitive damages

against Defendant Jackson.

195.

Plaintiff is entitled to recover punitive damages from Defendant Jackson, in his

individual capacity, in an amount to be determined by the enlightened conscience

[57]

of the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

(a) That process issue in this action;

(b) That Plaintiff be granted a trial by jury on issue so triable;

(c) That judgment be entered in favor of Plaintiff and against the Defendants jointly and severally, in an amount to be determined by the enlightened conscience of a jury as will fully and adequately compensate Plaintiff for the violation of his constitutional rights, and the personal injuries, pain and suffering including but not limited to his past, present and future mental and physical pain and suffering, shock, fright, worry, disfigurement, disruption of normal life and diminution in the enjoyment of life;

(d) That judgment be entered in favor of Plaintiff and against the Defendants jointly and severally, for the medical expenses of Plaintiff in an amount no less than $510,843.38, and all other medical expenses that Plaintiff will incur as a result of the injuries suffered due to the Defendants' actions;

(e) That judgment be entered in favor of Plaintiff and against Defendant Jackson in an amount to be determined by the enlightened conscience of the jury as

[58]

punitive damages, sufficient to punish, penalize or deter him from future like conduct;

(f) That Plaintiff have and recover the cost of litigation, expenses, and attorneys' fees as allowed pursuant to 42 U.S.C. §§ 1983 and 1988;

(g) An award of pre-judgment and post-judgment interest; and

(h) That Plaintiff have such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of April, 2015.

/s/ *James D. McGuire*
**James D. McGuire**
Georgia Bar No. 493325
jmcguire@mcklaw.org
**Richard B. Crohan**
Georgia Bar No. 197120
rcrohan@mcklaw.org
**Stanford N. Klinger**
Georgia Bar No. 425191
sklinger@mcklaw.org

McGuire, Crohan & Klinger
Not A Partnership
1800 Peachtree Street, Suite 514
Atlanta, Georgia 30309
404-351-8500 main line
404-351-8805 fax

## CERTIFICATION OF FONT

This certifies that pursuant to LR 5.1, ND., GA, the above Complaint for

Damages has been prepared using Times New Roman font, 14 point.

Respectfully submitted this 10th day of April, 2015.

/s/ *James D. McGuire*
James D. McGuire
Georgia Bar No. 493325
jmcguire@mcklaw.org

McGuire, Crohan & Klinger
Not A Partnership
1800 Peachtree Street, Suite 514
Atlanta, Georgia 30309
404-351-8500 main line
404-351-8805 fax



THE LAW OFFICES OF

## McGUIRE, CROHAN & KLINGER

*Not A Partnership*

1800 PEACHTREE STREET, SUITE 514
ATLANTA, GEORGIA 30309
Writer's direct Dial (404) 892-0033

TELEPHONE (404) 351-8500
FACSIMILE (404) 351-8805

MRS D. McGUIRE
CHARD B. CROHAN
'ANFORD N. KLINGER

August 30, 2013

VIA CERTIFIED MAIL NO.
7005 1160 0001 2758 7066

Mayor Kasim Reed
55 Trinity Ave.
Suite 2400
Atlanta, Georgia 30303

VIA CERTIFIED MAIL NO.
7005 1160 0001 2758 7073

The Members of the Atlanta City Council
President Ceasar Mitchell
Councilmember Carla Smith, Dist. 1
Councilmember Kwanza Hall, Dist. 2
Councilmember Ivory Lee Young, Dist. 3
Councilmember Cleta Winslow, Dist. 4
Councilmember Natalyn Archibong, Dist. 5
Councilmember Alex Wong, District 6
Councilmember Howard Shook, District 7
Councilmember Yolanda Adrean, District 8
Councilmember Felecia Moore, District 9
Councilmember C.T. Martin, District 10
Councilmember Keisha Lance Bottoms, District 11
Councilmember Joyce Sheperd, District 12
Councilmember Michael Bond, Post 1
Councilmember Aaron Watson, Post 2
Councilmember H. Lamar Willis, Post 3
55 Trinity Ave., Suite 2900
Atlanta, GA 30303

Ms. Rhonda Johnson
Clerk of Atlanta City Council
55 Trinity Ave, Suite 2700
Atlanta, Georgia 30303

VIA CERTIFIED MAIL NO.
7005 1160 0001 2758 7080

Cathy Hampton, Atlanta City Attorney
Department of Law
68 Mitchell Street
Suite 4100
Atlanta, GA 30303

[61]

VIA CERTIFIED MAIL NO.
7005 1820 0006 0458 2725

EXHIBIT

*A*

Re:    Notice of Claim Against the City of Atlanta, Georgia
       Claimant    : Will Otis King a/ka/ Will Otis King III
       Date of Injury : 04/06/13
       Location    : 3819 Jonesboro Road, Atlanta, GA

Dear Mayor Reed, Atlanta City Council Members,
City Clerk Johnson, and City Attorney Hampton:

Please be advised that this firm represents Mr. Will Otis King regarding the injuries he suffered and damages he incurred as a result of being unlawfully shot in the head and face by Officer K. Jackson (unit 2313). (Whose first name has been identified by APD as Kylema.) A copy of the incident report #13-094-1706-00 is enclosed and incorporated herein by reference as if stated verbatim.

The notice is presented to the governing authority of the City of Atlanta, pursuant to O.C.G.A. §36-33-5. In accordance with O.C.G.A.§36-33-5, a copy of the Notice of Claim is being presented to the City of Atlanta the city government entity which the above referenced claimant asserts is responsible for the acts or omissions that caused his injuries and damages.

Consistent with O.C.G.A. §36-33-5 the following information is provided to the extent of the claimant's knowledge and belief:

(A)   The name of the City entity or entities, the acts or omissions of which are asserted as the basis of the claim: the City of Atlanta, the City of Atlanta Police Department and City of Atlanta Police Officer K. Jackson (unit 2313) a/k/a Kylema Jackson.

(B)   The time of the transaction or occurrence out of which the loss arose: The incident occurred on April 4, 2013, at approximately 5:10 p.m.

(C)   The place of the transaction or occurrence: The incident occurred on 3819 Jonesboro Road, Atlanta, GA.

(D)   The nature of the loss suffered: The acts and/or omissions of Officer K. Jackson, the City of Atlanta and the City of Atlanta Police Department resulted in the serious personal injury and damages of Will O. King, who was unjustifiably shot in the face, while unarmed. He has suffered and continue to suffer extreme injuries, pain and disfigurement from this shooting. The nature of the losses in this claim therefore includes all claims which can be brought by Mr. King, including, but not limited to, personal injuries

62

from the gun shot to his face, multiple surgeries, permanent scarring and disfigurement, claims for mental pain and suffering. physical pain and suffering. shock, fright, anxiety, worry, medical expenses, the intangible value of his loss of enjoyment of living, lost wages and earnings, his loss of earning capacity, and other necessary expenses and damages resulting from the injuries to Will O. King.

(E) The amount of the loss claimed: At a minimum, the permanent injuries received by Mr. King, along with economic and non-economic losses total ($1,500,000.00) one million five hundred thousand dollars Therefore, the total amount of the loss currently claimed is ($1,500,000.00) one million five hundred thousand dollars.

(F) The acts omissions of the City of Atlanta, the City of Atlanta Police Department and/or Officer Jackson which caused the loss, include but are not limited to:

(1) excessive use of force;
(2) negligent hiring of Officer Jackson;
(3) negligent retention of Officer Jackson;
(4) failure to establish, implement and/or adhere to use of force polices;
(5) failure to adequately train and/or supervise Officer Jackson;
(6) failure to establish, implement and/or adhere to policies and/or procedures regarding the use of deadly force;
(7) failure to establish, implement and/or adhere to policies and/or procedures regarding the use of deadly force for potential misdemeanor offenses;
(8) ignoring and/or permitting the custom and/or policy of using excessive force;
(9) ignoring and/or permitting the custom and/or policy of unreasonable searches and/or seizures;
(10) ignoring and/or permitting the custom and/or policy of unlawful stops and/or harassment of motorists;
(11) unlawful use of force;
(12) unlawful discharge of a firearm;
(13) assault and battery.

In addition, Officer Jackson, the City of Atlanta, the City of Atlanta Police Department and other City Officials, under color of law, subjected Will O. King, a citizen of the United States, to the deprivation of rights, privileges, and immunities secured by the U.S. and Georgia Constitutions and laws of this state. As such, Officer Jackson, the City Officials, the City of Atlanta Police Department and the City of Atlanta are liable to Will O. King.

Will O. King specifically reserves the right to amend this notice, pursue other theories of liability, to allege other acts of negligence by Officer Jackson, the City of Atlanta, the City of Atlanta Police Department, other City of Atlanta entities, or other private persons or entities as more details become available through the investigation or through the litigation of this matter should it become necessary.

Pursuant to O.C.G.A. section 36-33-5, this notice of claim is being sent within six months of the happening of the event upon which the claim against the municipal corporation is predicated. Mr. King is hereby presenting the claim in writing to the governing authority of the municipal corporation for adjustment. The code mandates that the governing authority act upon the claim within 30 days from the presentation.

Your return receipt will inform us of the date you received this notice. Please direct all future correspondence to this office and contact me if you have any questions.

Sincerely yours,

Richard B. Crohan

SNK/haw

cc:    James D. McGuire, Esq.

[64]


Workflow Status: Report Approved by Central Records

## Incident Info

| Incident # | Report Date | Time | Disp Received | Zone | Rpts Date | Time | Area |
|---|---|---|---|---|---|---|---|
| 130941705-01 | 4/4/2013 | 1730 | 4/4/2013 | 1648 | 4/4/2013 | 1730 | 313 |

| Shift | Zone | Location | | Location Type | Rpt Officer | Rpt Officer | Inv Officer |
|---|---|---|---|---|---|---|---|
| E | 03 | 3819 JONESBORO RD SE | | 01 | 313 | 5343 | |

| Children Inv. | Family/Viol | Gang Related | Prev Complaint | Prior Com. Offns. | Disposition | Disp Date | Time |
|---|---|---|---|---|---|---|---|
| | | 2 | | | | | |

How Committed:

WARRANT ARREST

| | Relationship of Parties | Weather |
|---|---|---|
| Reason No Action | | 1 |

## Offenses

| | | | | | | # of Victims |
|---|---|---|---|---|---|---|
| Division | Crime | | | | | 1 |
| PM | Miscellaneous Non-Crime | | | | | |
| 1 | UCR Code | Attempt | UCR | UCR Arrest | UCR Status | Bias Incident | Method of Entry | Family Violence |
| | 9999 | C | 9999 | 0 | | | | N |

## Involved Parties

| Name Type | Name |
|---|---|
| VICTIM | CITY OF ATLANTA |

| Address | | Bldg | Apt # | Home Phone |
|---|---|---|---|---|
| 215 LAKEWOOD WAY, ATL, GA 30315 | | | | (404) 230-6104 |

| DOB | Age | DL Number | DL State | DL Expires | Sex | Race | Height | Weight | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|

| Hair Style | Hair Type | Facial Hair | Complexion |
|---|---|---|---|

| Apparel | Speech | Hands | Gloves | Item | Gloves # | Feet | Mask | Eye Defect | Scars Defc. Type | Clothing Type |
|---|---|---|---|---|---|---|---|---|---|---|

| Body Markings Type | Body Markings Description |
|---|---|

| Injury / Killed | Injury / Severity | Location on Body | Where Hospitalized | |
|---|---|---|---|---|
| NOT INJURED | | | | SCIC Code |

| SSN | Occupation | | | Work Phone | Wk. Ext. |
|---|---|---|---|---|---|
| Employer | Employer Address | | | | |

No Suspects to Display!



## Arrests

| Name Type | Name | | | | Location | | | | | | | County |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arrest | WILCOX, KENNETH | | | | | | | | | | | FULT |
| Address | | | | | | Bldg | Apt # | House Phone | | | | |
| | , GA 30315 | | | | | | | | | | | |
| DOB | Age | DL Number | DL State | DL Code | Sex | Race | Height | Weight | Hair | Eyes |
| 89 | | | | | M | B | | | | |
| SSN | | Occupation | | | | | | | | | | |
| Employer | | | | Employer Address | | | | | | Work Phone | | WK Ext |

| Charge Type | Charge Num | Section | Remarks |
|---|---|---|---|
| GC | 1 | 106-90 | |
| GF | 2 | 99-WAR-FUL | |

No Vehicles to Display!

No Property to Display!

## Narrative

On 4/1/2013 at approximately 1649 hours, I Officer J. Sebastian and my partner Officer M. Johns responded to the location of 925 Conley to assist unit 3313 Officer Jackson with his case. At the time we detained a suspect involved with Officer Jackson's case that was placed in our patrol vehicle. The male suspect was detained until a proper identification could be made on the male. Officer Johns asked the male his name as he replied that his name was Reginald Bussey with a date of birth 10-31-1989. We then ran his name as it did not come back on file. We used a fingerprint machine to identify the suspect. The male was identified as Kenneth Wilcox via the fingerprint machine. Mr. Wilcox had a Warrant out of Fulton County for simple assault, warrant number 12CR388272 the date of the Warrant was 2/27/2013. When asked why he gave the name of Mr. Bussey he stated he used his brothers name. When Mr. Wilcox was cleared from questioning from the Detectives on Officer Jackson's case, he was arrested for giving a false name to Police 106-90 and the Warrant out of Fulton Co. Mr. Wilcox was taken to the Atlanta city jail for processing

There is nothing further to report at this time.

THE UNDERSIGNED, BEING DULY SWORN, UPON HIS OR HER OATH, DEPOSES AND STATES THAT THE FOREGOING IS TRUE, CORRECT, COMPLETE, AND LEGIBLE TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF.

| Reporting Officer (Elec. Sig.) | ID # | Assignment | Gender | Signed Date |
|---|---|---|---|---|
| SEBASTIAN    (YES) | 5340 | 313 | | 4/7/2013 |
| Reporting Officer | ID # | Assignment | Gender | Signed Date |
| HENNINGER    (YES) | 2906 | 313 | | 4/7/2013 |
| Grant ID # | 5402 | | Prt Date | 4/7/2013 10:14:06 AM | |


Workflow Status: Report Approved by Central Records

## Incident Info

| Incident # | Report Date | Time | Date Occurred | Date | Rept Time | Time | Beat |
|---|---|---|---|---|---|---|---|
| 130941706-00 | 4/4/2013 | 1649 | 4/4/2013 | 1647 | 4/4/2013 | 1649 | 313 |
| Field Zone | Location | | | Location Type | Rpt District | Rpt Officer | Inv Officer |
| F 03 | 3819 JONESBORO RD SE | | | 13 | 313 | 0042 | |
| Children Inv. | Fam/ Adv. | Gang Related | Prev Complain x | Prt. Court Orders | Disposition | Dispo Date | Time |

### How Committed

PERSON SHOT BY POLICE OFFICER

### Reason No Arrest

| | Gun/Weapon of Suspect | Weapon |
|---|---|---|

## Offenses

| | # of Victims |
|---|---|
| | 1 |

| Offense | | Offense | | | | | |
|---|---|---|---|---|---|---|---|
| OPIWD | | Police Discharging Firearms | | | | | |
| IBR Code | Attempted | NCIC | UCR Status | UCR Statute | Hate Incident | Method of Entry | Family Violence |
| 9999 | | 9999 | 0 | | | | |



INCIDENT REPORT

Incident #: 13-094-1706-00

Prepared:

1/8/2013 11:04:16 AM

## Involved Parties

**1**

| Name Type | | | | | Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VICTIM | | | | | KING III, WILL OTIS | | | | | | | |
| Address | | | | | Bldg | | Apt # | | Home Phone | | | |
| | | GA 30354 | | | | | | | | | | |
| DOB | Age | DL Number | DL State | DL Type | Sex | Race | Height | Weight | Hair | Eyes | | |
| | | | | | M | B | | | | | | |
| | | | Hair Type | | | | Facial Hair | | | Complexion | | |
| Hair Style | | | | | | | | | | | | |
| Appear | Speech | Hand | Glasses | Teeth | Contacts | Hat | Mask | Eye Defect | Skin Tone Type | | | Clothing Type |
| Body Markings Type | | Body Markings Description | | | | | | | | | | |
| Injury Killed | | | Injury Severity | | Injury Sort on Body | | | Where Hospitalized | | | | |
| GUN SHOT | | | SERIOUS | | HEAD | | | | | | | |
| SSN | | | Occupation | | | | | | | | | BCIC Code |
| | | | | | | | | | Work Phone | | | Wrk Ext |
| Employer | | | Employer Address | | | | | | | | | |

**2**

| Name Type | | | | | Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REPORTING PARTY | | | | | OFFICER K JACKSON | | | | | | | |
| Address | | | | | Bldg | | Apt # | | Home Phone | | | |
| DOB | Age | DL Number | DL State | DL Type | Sex | Race | Height | Weight | Hair | Eyes | | |
| Hair Style | | | | Hair Type | | | | Facial Hair | | | Complexion | |
| Appear | Speech | Hand | Glasses | Teeth | Contacts | Hat | Mask | Eye Defect | Skin Tone Type | | | Clothing Type |
| Body Markings Type | | Body Markings Description | | | | | | | | | | |
| Injury Killed | | | Injury Severity | | Injury Sort on Body | | | Where Hospitalized | | | | |
| | | | | | | | | | | | | BCIC Code |
| SSN | | | Occupation | | | | | | | | | |
| | | | | | | | | | Work Phone | | | Wrk Ext |
| Employer | | | Employer Address | | | | | | | | | |



## Suspects

| Name-Type: | | | | | | Name: | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUSPECT | | | | | | KING III, WILL OTIS | | | | | | |
| Address: | | | | | | DOB: | | Apt. #: | | Home Phone | | |
| | | GA 30352 | | | | | | | | | | |
| DOB: | Age | D. Number | DL State | DL Exp. | | Sex | Race | Height | Weight | Hair | Eyes | |
| 1992 | | | | | | M | B | | | | | |
| | | Hair Style | | Hair Type | | Facial Hair | | | | Complexion | | |
| | Hair Color | | | | | | | | | | | |
| Appear | Speech | Build | Glasses | Teeth | Glasses | Hat | Mask | Eye Defect | Skin Tone Type | | Clothing Type | |
| SSN | | Occupation | | | | | | | | | | |
| Employer | | | Employer Address | | | | | | Work Phone | | Wk. Ext. | |
| Body Markings Type | | Body Markings Description | | | | | | | | | | |

No Arrests to Display!

## Vehicles

| Owner | | | | Involved Type | | | | | | | VIN | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | INVOLVED IN CRIME | | | | | | | 1G2HX52KX5U111007 | | |
| Year | Make | | Model | | Style | Color #1 | Color #2 | Tag Type | Tag State | | Tag # | | |
| 2005 | PONT | | BON | | 4D | SILVER | | A | GA | | 114046668 | | |
| Date Stolen | | Date Stolen | Gang Reported | | Time Rec. | Date Recov. | Time Recov. | | Value Stolen | | Value Recov. | | |

Total Vehicle Values

| | Total Value Stolen | Total Value Recovered |
|---|---|---|

No Property to Display!

## Narrative



On Thursday April 4, 2013 at approximately 1710 hours homicide investigators responded to a call for assistance from Zone Three officers regarding a person shot call. They were reporting to us that one of their officers shot the person. Homicide and HOIST investigators met with the Zone Three units at 925 Conley RD.

The initial investigation into the shooting has revealed that Officer K. Jackson (unit 2313) was on patrol in the area of Jonesboro Rd and Conley Rd when he saw a vehicle being driven on the city streets without any valid insurance and an expired tag. A vehicle matching that description was also suspected of being involved in some robberies. The vehicle pulled into the CITGO gas station at 3819 Jonesboro Rd. Officer Jackson activated his emergency equipment in the parking lot directly behind the vehicle. He exited his vehicle with his weapon in his hand, and gave the driver (Will King) and his passengers commands to put their hands in the air. Officer Jackson ordered the driver several times to turn the vehicle off and to open the door. The driver refused to comply and began to pull off while the officer was standing next to the driver's side of the vehicle. Officer Jackson fired his weapon one time striking the driver in the face.

Will King drove the vehicle to 925 Conley Rd, where he jumped out of the vehicle and fled the scene on foot. The officer was able to detain the passengers when he pulled up to the driverless vehicle. We learned that the driver ran to a home on Bonnie Lane where he sought the assistance from someone to take him to South Fulton Hospital. He was later transported to Atlanta Medical Center in critical but stable condition.

Mr. King had three outstanding warrants for his arrest from Fulton, Dekalb, and Clayton Counties. He was held at AMC in police custody for those warrants. CST S McMillan processed the crime scenes. Mr. Kings' vehicle was impounded and taken to the homicide cage so that it could be processed.

THE UNDERSIGNED, BEING DULY SWORN, UPON HIS OR HER OATH, DEPOSES AND STATES THAT THE FOREGOING IS TRUE, CORRECT, COMPLETE AND LEGIBLE TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF.

| Reporting Officer (Badge, Rank) | ID # | Assignment | Gender | Signed Date | |
|---|---|---|---|---|---|
| CALHOUN (YES) | 0042 | 313 | | 4/5/2013 | |
| Supervising Officer (Badge, Rank) | ID # | Assignment | Gender | Signed Date | |
| LACOSS (YES) | 0241 | 313 | | 4/5/2013 | |
| 8. Comp ID # 5554 | | Rec Date 4/6/2013 11:03:28 AM | | | |



THE LAW OFFICES OF
# McGUIRE, CROHAN & KLINGER

*Not A Partnership*

1800 PEACHTREE STREET, SUITE 514
ATLANTA, GEORGIA 30309
Writer's direct Dial (404) 892-0033

TELEPHONE (404) 351-8500
FACSIMILE (404) 351-8805

MES D. McGUIRE
CHARD B. CROHAN
ANFORD N. KLINGER

September 24, 2013

Mayor Kasim Reed
55 Trinity Ave.
Suite 2400
Atlanta, Georgia 30303

VIA CERTIFIED MAIL, NO.
7005 1160 0000 9827 9274

The Members of the Atlanta City Council
President Ceasar Mitchell
Councilmember Carla Smith, Dist. 1
Councilmember Kwanza Hall, Dist. 2
Councilmember Ivory Lee Young, Dist. 3
Councilmember Cleta Winslow, Dist. 4
Councilmember Natalyn Archibong, Dist. 5
Councilmember Alex Wong, District 6
Councilmember Howard Shook, District 7
Councilmember Yolanda Adrean, District 8
Councilmember Felecia Moore, District 9
Councilmember C.T. Martin, District 10
Councilmember Keisha Lance Bottoms, District 11
Councilmember Joyce Sheperd, District 12
Councilmember Michael Bond, Post 1
Councilmember Aaron Watson, Post 2
Councilmember H. Lamar Willis, Post 3
55 Trinity Ave., Suite 2900
Atlanta, GA 30303

VIA CERTIFIED MAIL NO.
7005 1160 0000 9827 9298

Ms. Rhonda Johnson
Clerk of Atlanta City Council
55 Trinity Ave, Suite 2700
Atlanta, Georgia 30303

VIA CERTIFIED MAIL NO.
7005 1160 0000 9827 9304

Cathy Hampton, Atlanta City Attorney
Department of Law
68 Mitchell Street
Suite 4100
Atlanta, GA 30303

VIA CERTIFIED MAIL NO.
7005 1160 0000 9827 9311

[71]

Re:  Second Revised Notice of Claim Against the City of Atlanta, Georgia
     Claimant        : Will Otis King a/k/a Will Otis King III
     Date of Injury  : 04/04/13
     Location        : 3819 Jonesboro Road, Atlanta, GA

Dear Mayor Reed; Atlanta City Council Members,
City Clerk Johnson, and City Attorney Hampton:

This is a second revision and amendment to the initial ante litem notice sent to each of you on August 30, 2019, and the first supplement sent on September 17, 2013, regarding the above referenced claims of Will Otis King. Copies of the August 30, 2013 notice and September 17, 2013 revised notice are attached hereto and, except as revised, are incorporated herein by reference. This is being sent within six months of the event that gives rise to this claim. Please consider this second revision, amendment and supplemental notice as a revision and amendment of the prior notices revising and correcting the Date of Injury to read: April 4, 2013.

In addition to the claims contained in the initial ante litem notice and revision, the City of Atlanta Officer K. Jackson (unit 2313), City of Atlanta Police Officers, City of Atlanta and the City of Atlanta Police Department and other City Officials, under color of law, subjected Will Otis King a citizen of the United States, to the deprivation of rights, privileges, and immunities secured by the Constitution and laws. As such, the involved City of Atlanta Police Officers (including but not limited to Officer K. Jackson (unit 2313), City of Atlanta and the City of Atlanta Police Department and other City Officials, are liable to Will Otis King under 42 USC §1983.

Will O. King specifically reserves the right to amend this and any other notice, pursue other theories of liability, to allege other acts of negligence by Officer Jackson, the City of Atlanta, the City of Atlanta Police Department, other City of Atlanta entities, or other private persons or entities as more details become available through the investigation or through the litigation of this matter should it become necessary.

Your return receipt will inform us of the date you received this notice. Please direct all future correspondence to this office and contact me if you have any questions.

Sincerely yours,

[72]

Richard B. Crohan

SNK/haw
cc:  James D. McGuire, Esq.



THE LAW OFFICES OF

## McGuire, Crohan & Klinger

*Not A Partnership*

1800 PEACHTREE STREET, SUITE 514
ATLANTA, GEORGIA 30309
Writer's direct Dial (404) 892-0033

TELEPHONE (404) 351-8500
FACSIMILE (404) 351-8805

JAMES D. McGUIRE
RICHARD B. CROHAN
SANFORD N. KLINGER

September 17, 2013

Mayor Kasim Reed
55 Trinity Ave.
Suite 2400
Atlanta, Georgia 30303

VIA CERTIFIED MAIL NO.
7005 1160 0000 9827 9229

The Members of the Atlanta City Council
President Ceasar Mitchell
Councilmember Carla Smith, Dist. 1
Councilmember Kwanza Hall, Dist. 2
Councilmember Ivory Lee Young, Dist. 3
Councilmember Cleta Winslow, Dist. 4
Councilmember Natalyn Archibong, Dist. 5
Councilmember Alex Wong, District 6
Councilmember Howard Shook, District 7
Councilmember Yolanda Adrean, District 8
Councilmember Felecia Moore, District 9
Councilmember C.T. Martin, District 10
Councilmember Keisha Lance Bottoms, District 11
Councilmember Joyce Sheperd, District 12
Councilmember Michael Bond, Post 1
Councilmember Aaron Watson, Post 2
Councilmember H. Lamar Willis, Post 3
55 Trinity Ave., Suite 2900
Atlanta, GA 30303

VIA CERTIFIED MAIL NO.
7005 1160 0000 9827 9236

Ms. Rhonda Johnson
Clerk of Atlanta City Council
55 Trinity Ave, Suite 2700
Atlanta, Georgia 30303

VIA CERTIFIED MAIL NO.
7005 1160 0000 9827 9243

Cathy Hampton, Atlanta City Attorney
Department of Law
68 Mitchell Street
Suite 4100
Atlanta, GA 30303

VIA CERTIFIED MAIL NO.
7005 1820 0000 9827 9250

[73]

Re: Revised Notice of Claim Against the City of Atlanta, Georgia
Claimant    : Will Otis King a/k/a Will Otis King III
Date of Injury : 04/06/13
Location    : 3819 Jonesboro Road, Atlanta, GA

Dear Mayor Reed, Atlanta City Council Members,
City Clerk Johnson, and City Attorney Hampton:

This is a revision and amendment to the ante litem notice sent to each of you on August 30, 2019, regarding the above referenced claims of Mr. King. A copy of the prior notice is attached hereto and, except as set forth herein, is incorporated herein by reference. This is being sent within six months of the event that gives rise to this claim. Please consider this supplemental notice as a revision and amendment of the August 30, 2013 notice to include all damages allowed under Georgia law for personal injuries, including but not limited to those which may lead to death, and those recognized and allowed under the wrongful death statute, as well as for punitive damages. In addition, after further review of the facts and injuries of this case, the amount claimed is hereby revised to five million dollars ($5,000,000.00).

Will O. King specifically reserves the right to amend this and any other notice, pursue other theories of liability, to allege other acts of negligence by Officer Jackson, the City of Atlanta, the City of Atlanta Police Department, other City of Atlanta entities, or other private persons or entities as more details become available through the investigation or through the litigation of this matter should it become necessary.

" Pursuant to O.C.G.A. section 36-33-5, this revised notice of claim is being sent within six months of the happening of the event upon which the claim against the municipal corporation is predicated. Mr. King is hereby presenting the claim in writing to the governing authority of the municipal corporation for adjustment. The code mandates that the governing authority act upon the claim within 30 days from the presentation.

Your return receipt will inform us of the date you received this notice. Please direct all future correspondence to this office and contact me if you have any questions.

Sincerely yours,

(74]

Richard B. Crohan

SNK/haw
cc:    James D. McGuire, Esq.



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mayor Kasim Reed
55 Trinity Ave.
Suite 2400
Atlanta, GA 30303

2. Article Number
*(Transfer from service label)*

7005 1160 0000 9827 9229

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

---

**SENDER: COMPLETE THIS SECTION**

**COMPLETE THIS SECTION ON DELIVERY**

(second partially visible duplicate form)

3. Service Type
   ☐ Certified Mail ☐ Express Mail
   ☐ Registered ☐ Return Receipt for Merchandise
   ☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

GA 30303

# ACCUSATION



Clerk No. 15SC133348

## FULTON SUPERIOR COURT

THE STATE OF GEORGIA

V.

**KYLEMA JACKSON**
**DA #: 13DA544644**

    **1**  **AGGRAVATED BATTERY O.C.G.A. §16-5-24**
    **2**  **AGGRAVATED ASSAULT O.C.G.A. §16-5-21**

**FILED IN OFFICE**

MAR 1 7 2015

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

PERSONID: 2648442

*Paul L. Howard*

**PAUL L. HOWARD, JR., District Attorney**

| The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. |
|---|---|---|
| _____ Defendant | _____ Defendant | _____ Defendant |
| _____ Attorney for Defendant | _____ Attorney for Defendant | _____ Attorney for Defendant |
| _____ Assistant District Attorney | _____ Assistant District Attorney | _____ Assistant District Attorney |
| This __ day of _____, ____ | This __ day of _____, ____ | This __ day of _____, ____ |

*Alford*
*V.*
*NC.*



Ct 1st Battery
Ct 2 Reckless Conduct

**FILED IN OFFICE**

MAR 1 7 2015

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

EXHIBIT
B
ALL-STATE LEGAL®

[77]

STATE OF GEORGIA, COUNTY OF FULTON

IN THE SUPERIOR COURT OF SAID COUNTY

On behalf of the People of the State of Georgia, the undersigned, **Paul L. Howard, Jr.,** District Attorney, as prosecuting attorney for the County and State aforesaid, does charge and accuse **KYLEMA JACKSON** with the offense of **AGGRAVATED BATTERY O.C.G.A. §16-5-24 (FELONY),** for the said accused, in the County of Fulton and State of Georgia, on the **4th day of April, 2013, did maliciously cause bodily harm to Will King by rendering his left mandible, right mandible and tongue useless by shooting the face of Will King with his service weapon;** -contrary to the laws of said State, the good order, peace and dignity thereof;

### COUNT 2 of 2

The undersigned, as prosecuting attorney, does further charge and accuse **KYLEMA JACKSON** with the offense of **AGGRAVATED ASSAULT O.C.G.A. §16-5-21,** for the said accused, in the County of Fulton and State of Georgia, on the **4th day of April, 2013, did unlawfully commit an aggravated assault upon the person of Will King by pointing a handgun (an object which, when used offensively against a person is likely to result in serious bodily injury) at Will King without legal authority, thereby placing Will King in reasonable apprehension of immediately receiving serious bodily injury;** -contrary to the laws of said State, the good order, peace and dignity thereof.

**PAUL L. HOWARD, JR., District Attorney**

[78]

**Related Clerk No:**

Complaint #:

| Defendant | DA # | Booking | Race | Sex | Birthdate | OTN | Agency |
|-----------|------|---------|------|-----|-----------|-----|--------|
| JACKSON, KYLEMA | 13DA544644 | | | | | | |

## WITNESS LIST

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

STATE OF GEORGIA       )     CASE NO.: 15SC133348

                        )

v.                       )

                        )

Kylema Jackson,        )

    Defendant.         )

FILED IN OFFICE

MAR 17 2015

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## DEFENDANT'S WAIVER OF INDICTMENT BY GRAND JURY

This case not involving a capital felony, I hereby waive indictment by a grand jury and instead allow the District Attorney to charge me by accusation pursuant to O.C.G.A. §17-7-70.

I understand that I may enter a plea and be tried on this accusation according to the same rules of substantive and procedural laws relating to defendants who have been indicted by a grand jury.

_____    3-17-15
Defendant               Date

_____    3/17/15
Attorney for Defendant     Date

_____    3/17/15
Assistant District Attorney   Date

[80]

CATHELENE ROBINSON, CLERK OF SUPERIOR COURT OF FULTON COUNTY, GEORGIA
I, DO CERTIFY THAT THE WITHIN AND FOREGOING IS A TRUE, COMPLETE
AND CORRECT COPY OF THE ORIGINAL IN SAID CASE, AS APPEARS ON FILE
AND RECORDED IN THE OFFICE OF THE CLERK OF SUPERIOR COURT
FULTON COUNTY, CRIMINAL DIVISION, ATLANTA, GA.

WITNESS MY HAND AND SEAL OF SAID COURT THIS

DAY OF March , 20 15

DEPUTY CLERK

[81]

# ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

EMPLOYEE: Ofc. K Jackson    CITIZEN: Tamekia Lindley    OPS #

| CITIZEN NAME (LAST,FIRST,MI) | RACE | SEX | DOB | DATE & TIME OF STATEMENT |
|---|---|---|---|---|
| Lindley, Temakia M. | B | F | | 06/21/04  1600 |

| ADDRESS | SSN | HOME PHONE | WORK PHONE |
|---|---|---|---|
| Atlanta 30310 | | | none |

I am **Investigator R. Turner** of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

On June 20, 2004, at approximately 8:36 Officer Jackson and I was at the stop sign at Allene and Brookline. Officer Jackson kept telling me to cross over and kept saying I live there were you are parked at5. Officer Jackson kept telling me to move and I wouldn't move. Officer Jackson began cursing and said if you don't move I'm gonna pull your ass over. So I began to move and he turned around and jumped out of his car on Allene and asked for my driver's license and insurance. Officer Jackson said you are not gonna be out here showing out on me. Officer Jackson said get back in the car nigger before I lock your ass up nigger. Officer Jackson put his hand on his gun and took his holster a loose like he was going to pull his gun out on me. Officer slammed my car door and broke my window. I called 911 and asked for a lieutenant to come out and they sent a short stocky white man out I don't know his name.

The supervisor began to talk to the people that were standing out there and began to take down their names and stuff. He asked them what had happened. I told the lieutenant I was going to sign the tickets but I didn't want Officer Jackson over there giving me anything because he disrespected me. The sergeant said that this was not the time to discipline the officer but he would discipline him back at the office.

Q:    What is your complaint?

A:    I want my window fixed. I don't have a problem with the windshield citation but I do have a problem with the seat belt citation. I want my window fixed.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
CITIZEN SIGNATURE

Sworn and subscribed to me this _____ day    June 21, 2004    2003

Tamekia M. Lindley
PRINT CITIZEN NAME

_____
NOTARY PUBLIC

P - 4 [82] 1 - 3

EXHIBIT
"C"
ALL-STATE LEGAL®

Notary Public, Paulding County, Georgia
My Commission Expires Jan. 14, 2008

EMPLOYEE: Ofc. K Jackson        CITIZEN: Tamekia Lindley        OPS #

Q:    Is there anything else you would like to add to your statement at this time?

A:    No.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
CITIZEN SIGNATURE

Sworn and subscribed to me this _____ day    June 21, 2004    2003

Tamekia M. Lindley
PRINT CITIZEN NAME

_____
NOTARY PUBLIC

P - 4 - 1833 - 3

Notary Public, Paulding County, Georgia
My Commission Expires Jan. 14, 200

EMPLOYEE: Ofc. K Jackson       CITIZEN: Tamekia Lindley     OPS # _____

Q:    Were you injured in this incident?

A:    No sir.

Q:    Did you resist the officer in any way?

A:    No.

Q:    Did you provoke the officer i8n any way?

A:    No

Q:    At any time were you blocking the roadway?

A:    No

Q:    Were there cars parked on both sides of the street where you encountered Officer
       Jackson?

A:    No it wasn't.

Q:    Did you follow the officer's instruction regarding the moving of your vehicle?

A:    Yes.

Q:    Identify any witnesses to this incident.

A:    Chauncey McWhorter address same, Marquita Slaton same address, and a lot of people,
       Frank Tillman same address, and Willie Johnson I don't know his address.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
CITIZEN SIGNATURE

Sworn and subscribed to me this _____ day    June 21, 2004    2003


Tamekia M. Lindley                                         _____
PRINT CITIZEN NAME                                          NOTARY PUBLIC

P - 4 [84] 2 - 3

# ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

EMPLOYEE: Ofc. K Jackson      CITIZEN: Frank Tillman      OPS # 04-C-0335-CTSY

| CITIZEN NAME (LAST,FIRST,MI) | RACE | SEX | DOB | DATE & TIME OF STATEMENT |
|---|---|---|---|---|
| Tillman Frank | B | M | | 07 03 04 2018hrs |

| ADDRESS | SSN | HOME PHONE | WORK PHONE |
|---|---|---|---|
| | | | N/A |

I am **SGT. J.V. Snowden** of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

I, Frank Tillman, witness that my neice Temekia was at the stop sign on Allene and Brookline traveling south. My mother, Ms. Gussie Fillmore, lives at 1028 Allene Ave. and the officer and Tamekia had words about coming through the stop sign. Then Tamekia pull through the sign the officer pulled behind her and blocked her in. The officer got out of his car then they exchanged words at Tamekia car so then Tamekia got out of the car. Tameika stood out in front of her car. The offiicer said to Tamekia "Nigger, if you don't get your ass back in that car, I will lock your ass up". Tomekia got back in the car and the officer slammed the door. That's when her window fell down.

Question asked by Sgt. Snowden:

Q. Did Tamekia provoke the officer?

R. No, not that I know of.

Q. How far were you from Tamekia and the officer?

R. Actually, I was maybe three or four feet away.

Q. Did you hear the police officer telling Tamekia to call down?

R. I didn't hear that. What I heard is what I said earlier.

Q. Did you hear anybody yelling on the scene? If so, who?

R. The officer was talking a little loud when I heard what I said on this statement.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

x _Frank Tillman_
**CITIZEN SIGNATURE**

Sworn and subscribed to me this **3** day of **JULY** in the year **04**

_FRANK TILLMAN_
**PRINT CITIZEN NAME**

_NOTARY PUBLIC_

P - [85] 5-1-2

Form APD-824 revised 1/1/2000

**EXHIBIT**
**D**

EMPLOYEE: Ofc. K Jackson          CITIZEN: Frank Tillman          OPS # 04-C-0335-CTSY

Q. Did anyone's vehicle ever block the street keeping other vehicles passing through?

R. When the officer was pulling her over, he was blocking the streets.

Q. Did the officer use his blue lights when he pulled her over?

R. Not at first but when he turned around, he put them on you know.

Q. Did Tamekia's window shatter or did it just fall down inside the door?

R. I just heard noise. She said it didn't shatter and it just fell down into the door.

Q. What kind of car does Tamekia own?

R. I think it's a Buick Skylark. I don't know what year. Around 1980 or something. I'm not sure.

Q. Did the officer ever pull or point his gun at Tamekia?

R. Ah, he sort of like undid the holster but he never drawed it or nothing like that.

Q. When Tamekia's car door was slammed, was Tamekia in the car?

R. Yea, she was in the car when it slammed.

Q. At the beginning of the incident, when did Tamekia get out of the car?

R. After he had stopped her and got her Id.

Q. When the officer asked for her identification, was she in the car at point?

R. Yea, she was in the car.

Q. Did Tomekia get out of the car while the officer was in the police car for the couple of minutes?

R. She got of the car after he got the Id and she stood beside the car.

Q. Is there anything else that you would like to add to your statement?

R. No

---

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Frank Tillman_
CITIZEN SIGNATURE

Sworn and subscribed to me this __3__ day of __JULY__ in the year __04__

_FRANK Tillman_
PRINT CITIZEN NAME                                              NOTARY PUBLIC

P - __[86]__ 5-2-2

Form APD-824 revised 1/1/2000

## ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

EMPLOYEE: Ofc. K Jackson    CITIZEN: Tamekia Lindley   OPS #

| CITIZEN NAME (LAST,FIRST,MI) | RACE | SEX | DOB | DATE & TIME OF STATEMENT | |
|---|---|---|---|---|---|
| Slaughter, Marquetta | B | F | ~~■■■■■~~ | 06/21/04  1635 | |
| **ADDRESS** | SSN | | HOME PHONE | | WORK PHONE |
| ~~■■■■■~~ve, Atlanta 30310 | ~~■■■■■~~ | | ~~■■■■■~~ | | none |

I am **Investigator R. Turner** of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

On June 20, 2004 at approximately 8:30 and 9:00 Temakia and were at the stop sign at Allene and Brookline. As we were pulling up the police was already at the stop sign. By the police having the right of way he just sat my cousin signaled for him to go ahead. The police motioned for her to go on and she motioned for him to go. So the police told her to go ahead and go and if she didn't he was going to pull her ass over. Temakia turned right and turned around to park in front of my aunts house and then the police pulled up on the side of us and jumped out and started yelling for her to give him her license and ID. The police officer was yelling and telling her to calm her ass down. The police officer got in the car and was in the car for a minute or two. We got out the car and was standing against the drivers door and I was standing against the passenger side door. The police told Temakia told her get her ass in the car before he locks her stupid ass up nigger. So then Temakia was upset and she called for a supervisor and the police officer had us to sit in the car for about 15 minutes until the supervisor came.

When the police told her to get her ass in the car he slammed the car door and the class fell down inside the door of the car. The window didn't break it just fell down in the door. After that the supervisor came out and spoke to her and took statements. The officer was sitting in the car laughing like it was joke, he wasn't professional at all.

Q:   Did Tamekia resist the officer in any way?

A:   No

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Marquetta Slaughter_
CITIZEN SIGNATURE

Sworn and subscribed to me this    21  day    June    2004

Marquetta Slaughter                  _Kaye Tree_
PRINT CITIZEN NAME                  NOTARY PUBLIC

P - i2 [87]1 - 2

**EXHIBIT**
*E*

Notary Public, Paulding County, Georgia
My Commission Expires Jan. 14, ~~■■~~

## ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

EMPLOYEE: Ofc. K Jackson          CITIZEN: Tamekia Lindley          OPS #

Q:    Did Tamekia provoke the officer in any way?

A:    No

Q:    Did Tamekia shout or yell anything at the officer?

A:    Basically she was upset she wasn't threatening, she was upset but she wasn't yelling.

Q:    At any time did Tamekia block the roadway?

A:    No, the police officer was blocking the roadway.

Q:    Were there cars parked on both sides of the street where you encountered Officer Jackson?

A:    No

Q:    Is there anything else you would like to add to your statement at this time?

A:    the officer flinched for his gun when he told her to get her ass back in the car.

Q:    Did the officer pull his gun out?

A:    No he flinched for it like he was going to pull it out.

---

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Marquetta Slaughter_
CITIZEN SIGNATURE

Sworn and subscribed to me this    21    day    June    2004

Marquetta Slaughter
PRINT CITIZEN NAME

_Kaye Lee_
NOTARY PUBLIC

P - 6 [88] 2 - 2

Notary Public, Paulding County, Geor
My Commission Expires Jan. 14, 20



# City of Atlanta Internal Correspondence

### Atlanta Police Department

## MEMORANDUM

**TO:**   Major E. Finley

**FROM:**   Major W. Harris, Jr.

**DATE:**   September 16, 2004

**RE:**   Command Investigation of
OPS Complaint File: 04-C-0335-CTSY
Officer Kylema Jackson / FOD – Zone 3

Please include the following items or information. The requested information or documents should be returned to the Office of Professional Standards as soon as possible.

1. The Employee Discipline Work Sheet (P-15-1-1) indicates Employee Work Rule 2.02 (Courtesy) was Sustained. The Supervisor Complaint Investigation Checklist (P-2-1-1) indicates the employee received an Oral Admonishment for Employee Work Rule 1.01 (Appropriate Action Required). Please make the necessary corrections, include it in the file and ensure the **employee signs** his name on the line above '(Employee Name)' to acknowledge he received a corrected copy of the form.

If you have any questions about this file, please contact me at (404) 658-7028.

### *Date Stamp the Appropriate Block*

| Delivered to Division | Delivered to Section | Returned to Division | Returned to OPS |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

CInvMemo1

[89]



EXHIBIT
ALL-STATE LEGAL
F



City Of Atlanta

Atlanta Police Department

## MEMORANDUM

TO:     Lt. G. Yabuku

FROM:   Sgt. C. J. Mills

DATE:   May 24, 2005

RE:     Off. K. Jackson -- Job Abandonment

On this date, at approximately 1630 hours, Sgt. Senzer informed me that Off. Jackson had refused his work assignment and refused to work with his scheduled partner, Off. Glass-Hess. Sgt. Senzer stated that he had spoken with Off. Jackson and Glass-Hess together and separately and that Off. Jackson absolutely refused to walk a footbeat with Off. Glass-Hess. Sgt. Senzer requested that I witness further conversation with Off. Jackson. Off. Jackson then came into our office and I told him that his assignment for the day would be to walk a footbeat with Off. Glass-Hess and he responded "I don't walk footbeats." I then informed Off. Jackson that I was issuing him a direct order to walk a footbeat with Off. Glass-Hess and he responded "I don't walk footbeats, it goes against my principles and my manhood." I then explained to Off. Jackson the ramifications of refusing his work assignments as well as the consequences of refusing a lawful and proper direct order from a supervisor. Off. Jackson continued to reiterate that he would not walk a foot beat and he refused to work with Off. Glass-Hess because he was eight years younger than he was and he couldn't teach him anything. At this point it became apparent to me that Off. Jackson was behaving in a manner consistent with psychological or emotional impairment. It was illogical to refuse to walk a foot beat with a fellow employee because he was eight years younger than he was and I conveyed this thought to him. I explained that there are employees of all ages and that he could not refuse to work with an employee because they were younger in age. Off. Jackson stated that Off. Glass-Hess was immature and refused to listen to him. I explained to Off. Jackson that Off. Glass-Hess was not a trainee and it was not his job to train Off. Glass-Hess but to interact with him in a professional manner during his tour of duty. It was apparent to me that Off. Jackson actually felt it was Off. Glass-Hess duty to do what he said to do, when he said do it. Off. Jackson then stated that if he was walking with Off. Glass-Hess and he walked down a street he would not walk with him and that somebody was going to get hurt. At this point it became more apparent to me

90

8 - 3 - 4

EXHIBIT

" G "

that Off. Jackson was mentally unbalanced and I became apprehensive that if he was this irrational, should we be worried for our personal safety or the safety of the employees at the precinct. I have been a front line supervisor since 1993 and have never encountered an employee who was behaving in this manner and made me fear for my safety. Off. Jackson refused to look me in the eye but instead stared off into space as though he was talking to someone above him.

In an effort to give Off. Jackson every opportunity to comply with a direct order, I then explained to him that he was employed by a paramilitary organization and was not afforded the luxury of choosing his assignments or his partners. Off. Jackson once again stated he does not walk footbeats, that it goes against his manhood. I told him that if he refused his work assignment he would be given the same assignment the next day that he returned to work and he stated he would not walk a foot beat on any date. He once again emphasized emphatically, "I don't walk footbeats."

At this point Sgt. Senzer asked Off. Jackson if he was going to continue to refuse his work assignment and disobey a direct order. Off. Jackson said nothing and continued to gaze off into space. Sgt. Senzer then told him that his refusal to complete his job assignment or to respond to his question would be considered as failure to obey a direct order. Off. Jackson continued to stare off into space and said nothing. I then told Off. Jackson to clock out and go home.

Once Off. Jackson had left the building Sgt. Senzer and I discussed the matter. We discussed the fact that we both felt very apprehensive during our discussions with Off. Jackson and that his behavior was so bizarre that we wondered would he reach for his weapon and use it. Sgt. Senzer told me that during our conversation he actually became aware that he was not wearing his bulletproof vest and he subconsciously placed his hand on his weapon. I then researched departmental policy because I had never encountered a situation like the one with Off. Jackson and was unsure of what course of action to take. I feel I erred by not relieving Off. Jackson from duty at that time. Not only did Off. Jackson display a gross disregard for the authority of the rules of the Department but he clearly exhibited behavior indicative of psychological and/or emotional impairment. I am requesting that Off. Jackson be relieved of duty until further notice and scheduled for a psychological evaluation at the earliest convenience.

[91]

8- 4- 4

## ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

| EMPLOYEE NAME (LAST, FIRST, MI) | | CLASSIFICATION | POSITION NUMBER | DATE & TIME OF STATEMENT |
|---|---|---|---|---|
| Cotter, Mark C. | | Sergeant | | 7/14/05 5:49 PM |

| RACE | SEX | DOB | DATE OF EMPLOYMENT | 4 DIGIT ID NO. | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|---|
| W | M | | 01-07-97 | 2373 | FOD | Z-3 | EVE |

I am INVESTIGATOR. R S BAILEY of the Atlanta Police Department. You are being questioned as a WITNESS in an official investigation by the Department. Also present is: Richard Straut - PBA

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in an internal investigation nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements <u>may not</u> be used against the employee in criminal proceedings involving the employee except in cases of perjury.

Q. Sergeant Cotter were you working your regular work assignment on May 24, 2005?

A. I was on vacation.

Q. Sergeant Cotter did you give an order and/or directions to anyone to contact you before giving Officer Kylema Jackson a work assignment for May 24, 2005?

A. No.

Q. Sergeant Cotter on May 24, 2005 Officer Kylem Jackson is alleged to have denied a direct order from supervisors to work a foot beat assignment with Officer Glass-Hess. Sergeant Cotter have you given an order and/or direction to Officer Jackson that would lead him to understand the information in anyway that he did not have to work a foot beat assignment and/or work with Officer Glass-Hess?

A. No, I did not ever give Officer Jackson any information that would lead him to believe that he did not have to work a foot beat and/or work with Officer Glass-Hess

---

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

Sgt _Mark C. Cotter_ (signature)
EMPLOYEE SIGNATURE

Sworn and subscribed to me this __14__ day of ____July____ in the year __2005__

Sergeant Mark C. Cotter
PRINT EMPLOYEE NAME

ROOSEVELT S. BAILEY
NOTARY PUBLIC, CLAYTON CO., GEORGIA
MY COMMISSION EXPIRES DECEMBER 7TH, 2008

EXHIBIT
"H"

# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

Q. Be advised that should it become necessary during this investigation, you may be directed to submit to a computer voice stress analysis exam and/or a polygraph exam per APD SOP 3120. Do you acknowledge this official notice?

A. Yes.

Q. Is there anything else you wish to add to your statement today?

A. No.

Q. If there is any further information that would assist this investigation would you forward it to this office?

A. Yes.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Sgt_ _Mark C Cotter_
EMPLOYEE SIGNATURE

Sworn and subscribed to me this   14   day of      July              in the year   2005

Sergeant Mark C. Cotter
PRINT EMPLOYEE NAME

ROOSEVELT S. BAILEY
NOTARY PUBLIC CLAYTON CO., GEORGIA
MY COMMISSION EXPIRES DECEMBER 7TH, 200[?]

P - 9 - [93] - 2

**OPS CONTROL #: 05-I-0378-SOP**

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|
| Jackson, Kylema | 3584 | 10209 | Officer | FOD | Z3 | Eve |

| EMPLOYEE STATUS | | | PERSONNEL ORDER # | DISTRIBUTION | EMERGENCY ACTION? | |
|---|---|---|---|---|---|---|
| PERMANENT X | PROBATION | OTHER | APD.PO.06.036 | 7 | YES | NO X |

## NOTICE OF PROPOSED ADVERSE ACTION (N.P.A.A.) ISSUED ON:

Did employee respond to NPAA? X YES   NO   If yes WRITTEN RESPONSE X PERSONAL RESPONSE   DATE RESPONDED 02/01/06

Summary of Employee Response: Employee denied disobeying the supervisor.

## FINAL ADVERSE ACTION: *If an emergency action state the nature of the emergency below in the Narrative.*

| | | Was the Notice of Proposed Adverse Action Modified? | Date NPAA Issued |
|---|---|---|---|
| X Suspension without pay for 5 working days. | | YES   X NO | 01/25/06 |
| Suspension without pay pending adjudication of criminal charges. | | | |
| Demotion from _____ to _____ | | | Effective Date of Action |
| Dismissal. | | | 02/08/06 |
| Other _____ | | | |

## NARRATIVE (Reasons for Adverse/Emergency Action)

The specific disciplinary decision for each Departmental work rule or other violation you were charged with follows below:

| RULE VIOLATION | DISCIPLINARY ACTION |
|---|---|
| **4.2.09 OBEYING SUPERVISORY PERSONNEL** | **5 DAYS OF SUSPENSION** |

*See attached page(s) for the specifics of the violation(s).*

**TO EMPLOYEE:** Pursuant to Labor Management Relations Ordinance Section 114-547, you may appeal any adverse action taken in this matter to the City of Atlanta Civil Service Board by completing the Civil Service Appeal form and submitting it to the Bureau of Labor Relations.

Deputy Chief H. R. Dunovant

TITLE AND NAME OF DISCIPLINARY AUTHORITY (PRINT OR TYPE NAME)

DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE   2/7/06

_Kylema Jackson_   2-3-06

EMPLOYEE SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)

WITNESS SIGNATURE AND DATE   2/7/06

P -   [94]

EXHIBIT
I
ALL-STATE LEGAL

## ATLANTA POLICE DEPARTMENT
## ADVERSE ACTION CONTINUATION

**NOTICE OF FINAL ADVERSE ACTION**          **OPS CONTROL #: 05-I-0378-SOP**

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| Jackson, Kylema | 3584 | 10209 | Officer |

### NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:**   You are charged with violating Rule **4.2.09** of the Employee Work Rules of this Department. Said Rule states:

## OBEYING SUPERVISORY PERSONNEL

Employees will promptly obey all proper and lawful orders of supervisors and other employees assigned to act in a supervisory capacity.

**SPECIFICALLY:**   On May 24, 2005, you failed to follow a direct order that was issued by Sergeant Senzer when you refused to walk a foot beat when you were directed to by your supervisor.

### YOUR ACTIONS AS DESCRIBED ABOVE ARE IN VIOLATION OF THE LISTED RULES

DEPUTY CHIEF H. R. Dunaway
TITLE AND NAME OF DISCIPLINARY AUTHORITY

DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE: 2/3/06

Kylema Jackson  2-3-06
EMPLOYEE'S SIGNATURE & DATE (indicates receipt ONLY not agreement with action)

WITNESS SIGNATURE AND DATE  2/3/06

Form APD-834 revised 1/1/2000

P- _____ - _____ - _____

# ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

EMPLOYEE: Jackson, Kylema L          CITIZEN: McCollum, Autumn OPS# 05-C-0870-MISC

CITIZEN NAME (LAST, FIRST, MI)

MCCOLLUM, AUTUMN R    RACE W    SEX F    DOB 1-15-05    DATE & TIME OF STATEMENT 2.000hrs

ADDRESS _____ Conyers Ga 3023   SSN _____   HOME PHONE _____   WORK PHONE _____

I am __Sgt. M. Harris__ of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

Q: M____ please explain to me in your own words about the incident that happened at 448 Boulevard at the BP Gas station, involving the Atlanta police officer on 11/06/05? While waiting for other members of my motorcycle club to arrive, I observed the officer drive south on Boulevard Ave, passing the BP at a very fast speed. Approx 5-10 minutes later the same officer returned to our location, exited his vehicle and demanded every one to leave the premises. There were approx. 30 of us trying to get our motorcycle gear on when the police officer demanded again to leave. At this point, the police officer became engaged in a verbal argument with a member of the #1 Stunnas who was trying to explain that it takes a few minutes to put all the gear on. The officer unholster his weapon and put it down to his side as if he was using it to intimidate everyone standing around. At no point was there a reason for the officer to unholster his weapon. This situation never escalated to the point of having to use deadly force. During the incident there were other ⟶

Q: Did you see the officer point his weapon at any one, and if so how was it pointed? No, it was unholstered and pointed downwards.

Q: What do you feel should happen to the officer?
Counseling on use of force.

Q: Are the statements that you gave true and correct to the best of your knowledge?
Yes

I have read or had read to me the above statement and I swear to affirm that it is true to the best of my knowledge and belief.

_Aut McColl_
CITIZEN SIGNATURE

Sworn and subscribed to me this __15__ day of __January__ in the year __2006__

__Autumn McCollum__
PRINT CITIZEN NAME          NOTARY PUBLIC

Form APD-824 revised 1/1/2000          P - 4 - 8 - 12

[96]

EXHIBIT
J
ALL-STATE LEGAL®

Melissa Rand   770-848-3193   p.2

**ATLANTA POLICE DEPARTMENT**
**CITIZEN STATEMENT**

EMPLOYEE: Jackson Kl_ems_ CITIZEN: McCollum, Autumn OPS#05-c-0470-MISC

Q: Is there anything else that you want to add to your statement?

people standing around to jim to get the officer & the person he was
arguing with to stop. The officer jam told someone who was helping him
descalate the situation to be quiet & move on. I believe, being
police officer myself, that the officer on scene did not use the
appropriate level of force.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Autumn McCollum_
CITIZEN SIGNATURE

Sworn and subscribed to me this __15__ day of __January__ in the year __2006__

Autumn McCollum
PRINT CITIZEN NAME

Sgt _____
NOTARY PUBLIC

Form APD-824 revised 1/1/2000

P - 4 - 9 - 12

[97]

## ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

OPS # 05-C-0870 MISC

EMPLOYEE: CITIZEN:

CITIZEN NAME (LAST,FIRST,MI)
Gee  Jacqueline  A

| RACE | SEX | DOB | DATE & TIME OF STATEMENT |
| African American | F | | 11/6/05  1900 |

ADDRESS
ATL GA

SSN | HOME PHONE | WORK PHONE

I am  Sgt  Michael Harris  of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

At about 415 this Afternoon a Police Officer pulled into the lot at 6/P Station on Blvd at I2D exit he sat in his car a few minutes then got out and began yelling. A couple people laughed as he walked towards the group and he began yelling for everyone to get the Fuck out of here and put his hand on his gun. he then pulled it out as he continued yelling with his hand shaking. He also looked very distraught. I yelled out for everyone to leave when he put his gun away and I said I'm calling 911. I Called at 4:25 and again at 4:29. I observed him yelling @ Ericka to move her truck but she couldn't because of all the bikes trying to leave. After the bikes left there were about 4 of us that were in our cars. I told them to leave because the 911 Dispatcher told me the Supervisor was coming and to wait for them. The officer approached me and asked if I was waiting for something. I told him the 911 dispatcher told me to wait for his Supervisor. He put his hand on his gun and told me the Supervisor was gonna tell me the same thing so I better

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Jacqueline Gee_
CITIZEN SIGNATURE

Sworn and subscribed to me this  6  day of  Nov  in the year  2005.

Jacqueline Ann Gee
PRINT CITIZEN NAME

_____
NOTARY PUBLIC

P - 4 [98]2 - 12

Form APD-824 revised 1/1/2000

EXHIBIT
K

5 of 8

## ATLANTA POLICE DEPARTMENT
### CITIZEN STATEMENT

EMPLOYEE: _____  CITIZEN: _____  OPS # 05-C-0870MISC

| CITIZEN NAME (LAST,FIRST,MI) | RACE | SEX | DOB | DATE & TIME OF STATEMENT |
|---|---|---|---|---|
| Blakely, Erica | Blk | F | | 11-6-05 (W) 19:00 |

| ADDRESS | SSN | HOME PHONE | WORK PHONE |
|---|---|---|---|
| _____ Dr | | | |

I am **Sgt. Michael Harris** of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

Approximately 16:30 an officer entered the BP Gas Station parking lot located at I20 & Boulevard. The officer sat in his car for 10+ minutes without saying anything. He then jump out of his car and agressively approached our group. He started yelling profanity and pulled his weapon on us without reason. There were a group of about 30-40 motorcyclists at the station. We all felt threatened upon the officer drawing his weapon. We began preparing to leave as the officer demanded. I entered my car and began to leave. I was being courteous and allowing the motorcycles out of the gas station. The officer approached me and began yelling profanity at me to leave. I explained I could not move without hitting anyone. He continued to yell profanity at me until I exited the parking lot. He was extremely threatening to the entire group without cause. The profanity was totally inappropriate.

Question: Was the weapon ever pointed directly at you? No it was not pointed at me directly. But raised at the crowd.

Question: When you say it was raised at the crowd please explain? He drew his weapon and began raising it toward the crowd, probably about lower chest level.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
CITIZEN SIGNATURE

Sworn and subscribed to me this __6__ day of __November__ in the year __2005__

Erica Blakely
PRINT CITIZEN NAME

_____
NOTARY PUBLIC

P - 7 f99? - 12

Form APD-824 revised 1/1/2000



EXHIBIT
"L"

1 of 8

## ATLANTA POLICE DEPARTMENT
### CITIZEN STATEMENT

EMPLOYEE: Jackson, Kylewis    CITIZEN: Cook Lerone    OPS # 05-C-0870-MISC

CITIZEN NAME (LAST, FIRST, MI)
Cook Lerone

| RACE | SEX | DOB | DATE & TIME OF STATEMENT |
|------|-----|-----|--------------------------|
| Blk  | M   |     | 01/16/06 |

ADDRESS    SSN    HOME PHONE    WORK PHONE
Fax #

I am **Sgt M. Harris** of the Atlanta Police Department. By your making this statement you are providing information in an investigation being conducted by the Atlanta Police Department. Please be advised that your statement and/or your testimony may be needed at a future time for use in a civil service hearing or court of law.

Q: Mr. 2.    please explain to me in your own words about the incident that happened at 448 Boulevard at the BP Gas station, involving the Atlanta police officer on 11/06 05?

SEE SEPERATE SHEET

Q: Did you see the officer point his weapon at any time, and if so how was it pointed?

SEE SEPERATE SHEET

Q: What do you feel should happen to the officer?

see seperate SHEET

Q: Are the statements that you gave true and correct to the best of your knowledge?

See seperate SHEET

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
CITIZEN SIGNATURE

Sworn and subscribed to me this 16th day of January in the year 2006

Lerone Cook
PRINT CITIZEN NAME

_____
NOTARY PUBLIC

P - 4 - 4 - 12

Form APD-824 revised 1/1/2000

[100]


EXHIBIT
M

Q: Mr. Lerone Cook please explain to me in your own words about the incident that happened at 448 Boulevard at the BP Gas station, involving the police officer on 11/06005?

A: On the date & place mention above, we (The #1 Stunnas) & other motorcycle groups met up at the location to take pictures at Grant Park. About 45 min to an hour an Atlanta police office drove past the location & saw us there. He turned around in a vacant parking lot across the street & came over to the parking lot where we were. He stopped his car & yelled with profanity for us to clear the parking lot ASAP. As we were all packing up everything to clear the lot, the office got out of us car proceed to use profanity at us to leave the lot I guess we wasn't moving fast enough for the officer, because he pulled out his gun & continue to use profanity to us. One of the members in our club must have said something to the officer that I guess he didn't like so walk towards our member. At this time everybody was in an up rage state, saying things back towards the officer. People started pulling out cameras & video cameras. While we continued to leave the lot the officer continues to yell with profanity to clear the lot.

Q: Did you see the officer point his weapon at anyone, and if so how was it pointed?

A: I didn't see him point it, but I did see when he pulled the weapon out.

Q: What do you feel should happen to the officer?

A: I think the office should be put on suspension without pay to demonstrate that this is not how you treat people. Also he should apologize to the motorcycle community in a whole for his behavior, because this affected us all.

Q: Are the statements that you gave true and correct to the best of your knowledge?

Yes they are correct to the best of my knowledge

P-4-5-12

## ATLANTA POLICE DEPARTMENT
### CITIZEN STATEMENT

EMPLOYEE: Jackson Kylema C  CITIZEN: Nicole Brown  OPS# 05-C-0870-MISC

| CITIZEN NAME (LAST, FIRST, MI) | | RACE | EX | DOB | DATE & TIME OF STATEMENT |
|---|---|---|---|---|---|
| Nicole Brown | | B | F | | 1-15-06  9:10 p n |

ADDRESS
GA 30213 s
y Fairburn
HOME PHONE    WORK PHONE

I am  Sgt M. Harris  o the Atlanta Police Department. By your making this statement
you are providing information in an investigation being conducted by the Atlanta Police Department. Please be
advised that your statement and/or your testimony may be needed at a future time for use in a civil service
hearing or court of law.

Q; M.       please explain to me in your own words about the incident that happened at 448 Boulevard at

the BP Gas station, involving the Atlanta police officer on 11 16/05? We was waiting at
the gas station for the rest of our Motorcycle club to
come. I just remember when the officer pulled
up and got out of his car he told us to leave. We
was trying to put our gea on but I guess we was
not fast enough for him. He started to curz at us
and told us to leave again. A member of the #15th mas
was trying to explain-fshivn that it takes a min
for us to put our gear on Out he didnt want to hear that
either he used the F word and pulled out his gun
trying to scare us. He did not point it at anyone
he just kind of hold it on the side of his nalsk. →

Q; Did you see the officer point his weapon at an one, and if s how was it pointed?

No.

Q; What do you feel should happen to the officer?

He need to take a cingee managment class.

Q; Are the statements that you gave true and correct to the best of your knowledge?

yes

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

Nicole B. Bro
CITIZEN SIGNATURE

Sworn and subscribed to me this   15   day of January   in the year 2006

Nicole Brown
PRINT CITIZEN NAME

Sgt M. _____
NOTARY PUBLIC

Form APD-I34 revised 1/1/2000

P - 4 - 6 - 12

[102]



EXHIBIT
N

# ATLANTA POLICE DEPARTMENT
## CITIZEN STATEMENT

EMPLOYEE: Jackson, Kulema CITIZEN: Nicole Brown  OPS#05-C-0870-MISC

Q; Is there anything else that you want to add to your statement?

After we all put on our gear we went down the street to the park. I know one of the members recorded some of the incident with his phone camcorder.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

Nicole
CITIZEN SIGNATURE

Sworn and subscribed to me this 15 day of January in the year 2006

Nicole Brown
PRINT CITIZEN NAME

Sgt.
NOTARY PUBLIC

P - H - 7 - 12

Form APD-524 revised 1/1/2000

[103]



# City of Atlanta

## Internal Correspondence

Atlanta Police Department

## MEMORANDUM

**TO:** Officer Kylema Jackson

**FROM:** Major W. Harris, Jr.

**DATE:** July 21, 2005

**RE:** **Disposition OPS Complaint File: 05-C-0870-MISC**

An investigation has been completed into the complaint filed against you alleging misconduct. The complaint has been closed as indicated below:

   ✓    Exonerated - your conduct was determined to be justified, lawful and proper with regards to employee work rule 4.2.02 (Courtsey).

          Not -Sustained - the investigation did not develop sufficient information to prove or disprove the allegation(s) stated in the complaint.

          Sustained - the investigation did develop sufficient information to prove the allegation(s) stated in the complaint.

          Unfounded - the allegation(s) were without factual basis.

WHJ/trb

cc: Major E. Finley
     File

[104]



EXHIBIT
" "
D

# ATLANTA POLICE DEPARTMENT
# EMPLOYEE STATEMENT

EMPLOYEE: Officer K. Jackson

OPS # _____

| EMPLOYEE NAME (LAST, FIRST, MI) Butler, Elizabeth | | CLASSIFICATION Officer | POSITION NUMBER 20644 | DATE & TIME OF STATEMENT August 30, 2007 0900 | |
|---|---|---|---|---|---|
| RACE B | SEX F | DOB | DATE OF EMPLOYMENT 07-08-97 | 4 DIGITS ID NO. 2523 | DIVISION FOD |

| | | | | | SECTION Zone 5 | WATCH |

I am Sergeant S. R. Purvis of the Atlanta Police Department. You are being questioned as a WITNESS in an official investigation by the Department. Also present is: N/A

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in an internal investigation nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements <u>may not</u> be used against the employee in criminal proceedings involving the employee except in cases of perjury.

### *The following statement was typed by Officer E. Butler*

Q.    What brings you into the Office of Professional Standards today?

A.    On August 28 2007 at approximately 1640 hours, I was working an approved

extra job at Lakewood Amphitheater. I was posted in a parking lot at a secured

gate. Outside the gate a crowd of people were waiting to enter for a concert.

Some of the people had their vehicles parked on the sidewalk as they waited. Two

vehicles were parked in front of the outside entrance gate. Traffic was flowing

without any obstruction of theses vehicles.    I heard the people at the gate calling

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this 30 day of August in the year 07

Elizabeth Butler
PRINT EMPLOYEE NAME

_____
NOTARY PUBLIC

Form APD826 revised 1/1/2000

P   -   1   -
[105]

Notary Public, Cobb County, Georgia
My Commission Expires Nov. 4, 2008

EXHIBIT
P
ALL-STATE LEGAL®

EMPLOYEE: Officer K. Jackson       OPS #

me and pointing toward the street, stating "Maam" when are they going to open

theses gates? this officer says he is going to give us a ticket and tow our cars if we

don't move. I approached the gate and within seconds Officer K. Jackson

appeared in front of the gate acting irate and asked me in a nasty tone " When are

they going to open the gates?" I remained calm and replied to him "I don't know,

I am working for Major Gordon, let me call him.  As I removed my cell phone

cell phone to call Major Gordon, Officer K. Jackson continued acting irate,

walking back and forth on the sidewalk and pointing his fingers toward the ground

and stated to the crowd " I don't care what she says, I want these cars moved now

or I will give yall a ticket and tow your vehicles." As I was speaking to Major

Gordon I observed Trooper Larry Schnall (Georgia State Patrol) approaching me

with an unknown male on a golf cart.  I turned to Officer K. Jackson and asked

him to calm down because I think they are getting ready to open the gates.  Officer

K. Jackson continued being irate and talking to me with a nasty tone  he replied "

You ought to know they can't parked" at that time, I request a supervisor to the

scene through dispatch.  Once Trooper Schnall was at the location, I asked him

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

EMPLOYEE SIGNATURE

Sworn and subscribed to me this _30_ day of _August_ in the year _07_

Elizabeth Butler
PRINT EMPLOYEE NAME

NOTARY PUBLIC
Notary Public, Cobb County, Georgia
My Commission Expires Nov. 4, 2008

P - [106] - 2 -

Form APD826 revised 1/1/2000

EMPLOYEE: Officer K. Jackson                    OPS #

what time were they going to open the gates and he replied 5:00. Trooper Schnall

observed Officer K . Jackson's behavior and asked me what was the problem. I

explained the situation regarding the crowd. At that time Trooper Calvert arrived

on the scene on golf cart and he observed Officer K. Jackson's behavior. Trooper

Calvert made a phone call to an unknown person and was given permission to

open the gates. At that time, Trooper Calvert and I exited the gate and began

directing traffic from the sidewalk in the parking lot. Officer K. Jackson entered

his vehicle, which was parked northbound blocking a lane of traffic with his blue

lights and just sat there blocking traffic. Trooper Calvert asked me was Officer

K. Jackson going block traffic preventing cars from turning in the parking lot. I

replied "I don't know I am not saying anything to him because he is out of

control." Trooper Calvert stated " I will go ask him". Trooper Calvert

approached Officer K Jackson's vehicle and as they were talking , it appeared to

me that they were in a confrontation, because I observed Trooper Calvert turn to

the side and point to his sleeve while pointing his finger. I approached the vehicle

and asked Trooper Calvert to leave the vehicle and not argue in public with officer

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

EMPLOYEE SIGNATURE

Sworn and subscribed to me this _80_ day of _August_ in the year _07_

_Elizabeth Butler_
PRINT EMPLOYEE NAME

NOTARY PUBLIC

P - [107] -

Form APD826 revised 1/1/2000

Notary Public, Cobb County, Georgia
My Commission Expires Nov. 4, 2008

EMPLOYEE: Officer K. Jackson                    OPS #

K. Jackson. I advised Trooper Calvert that Officer K. Jackson's supervisor was

enroute to the scene. Officer K. Jackson's behavior was an embarrassment to me

as well as the city of Atlanta Police Department for the way he acted towards

another law enforcement officer from another jurisdiction. Lieutenant Ostey

responded to the scene and said he would give Officer K. Jackson a counseling

form and I could come and make a statement.


**\*The following questions were prepared by Sergeant S. R. Purvis\***


Q.        You stated that Officer K. Jackson was acting irate and speaking to you in an irate

          manner. What specifically did Officer K. Jackson say to you?

A.        He yelled at me, "What time are they gonna open the gates?" He yelled at me out

          loud so the crowd could hear, "They cannot park over here. You ought to know

          that." He was raising his voice to me and the crowd walking backwards and

          forwards pointing his finger at the crowd and myself.


I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

EMPLOYEE SIGNATURE

Sworn and subscribed to me this _30_ day of _August_ in the year _07_

_____ _BUTLER_
PRINT EMPLOYEE NAME

S. R. ___
NOTARY PUBLIC
Notary Public, ___
My Commission Expires Nov. 4, ___

Form APD826 revised 1/1/2000

# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

Q.     Did Officer K. Jackson speak to the State Troopers the same way he spoke to

you?

A.     Yes.

Q.     What were the names of the State Troopers?

A.     Officer K. Jackson had the confrontation with Trooper Corporal R. M. Calvert.

Senior Trooper Larry Schnall listened and witnessed the confrontation.

Q.     Describe to me what happened when Lieutenant Ostey arrived on the scene?

A.     I spoke with Lieutenant Ostey and talked about Officer K. Jackson's

behavior. I advised him of the confrontation that I observed between Officer Jackson and

Trooper Calvert. Lieutenant Ostey spoke to Trooper Calvert about what happened.

Lieutenant Ostey advised both myself and Trooper Calvert to make written statements.

Lieutenant Ostey left only to return about two or three hours later to get our statements.

Trooper Calvert and myself did not have statements written. I said I would write it and give

it to him later. Lieutenant Ostey told me he was going to issue a written counseling for

Officer K. Jackson, but said I could also come to OPS and make a statement if I chose to. I

felt more comfortable coming to OPS.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this ___30___ day of ___August___ in the year ___07___

_____
PRINT EMPLOYEE NAME

_____
NOTARY PUBLIC

P   -   [109]   -  

Form APD826 revised 1/1/2000

Notary Public, Cobb County, Georgia
My Commission Expires Nov. 4, 2008

EMPLOYEE: Officer K. Jackson _____ OPS # _____

Q. Did Officer K. Jackson ever use profanity towards you or the

troopers?

A. No.

Q. Were there any civilian witnesses?

A. There probably were, but I do not have any of their information.

Q. Would you like to add anything else to your statement at this time?

A. No.

Q. Have you been honest to the best of your ability in making your statements to

me today?

A. Yes.

Q. I am advising you that this investigation may require you to submit to a

Computer Voice Stress Analysis Exam per APD.SOP.3120. Do you

acknowledge this notification?

A. Yes.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this __80__ day of __August__ in the year __07__

_____
PRINT EMPLOYEE NAME                    Notary Public, Cobb County, Georgia
                                       My Commission Expires Nov. 4, 2008

P - [110] -

Form APD826 revised 1/1/2000

EMPLOYEE: Jackson, Kylema

OPS CONTROL #: 07-I-0535-MISC

**I. FINDING OF FACT:** *(LIST FACTS IN SIMPLE SENTENCES; DO NOT INCLUDE DISCIPLINARY ACTION RECOMMENDATIONS.*

1) That Officer Jackson did observe illegally parked vehicles, while on patrol.
2) That Officer Jackson did discuss the situation with Officer Butler.
3) That Officer Jackson did contact a supervisor about the situation.
4) That Officer Jackson spoke to a Trooper on scene.
5) That the Trooper did point at his shoulder patch.
6) That Officer Jackson did state that he was not concerned about who the Trooper claimed to be.
7) That the statements made by Officer Jackson were insensitive to the Trooper, and caused an escalation of the situation.
8) That the initial situation was resolved when the gates were opened.

**II. PROCEDURE, POLICY OR TRAINING RECOMMENDATIONS:** *(DO NOT RECOMMEND DISCIPLINARY ACTION)*

The attendance of a sensitivity course by Officer Jackson might assist him, when dealing with citizens and other law enforcement. This has not been the first instance in which a complaint has been received about Officer Jackson's attitude and courtesy toward others. Without some form of training, this type of situation will continue, and cause unforeseen problems for the department and Officer Jackson.

**III. INVESTIGATIVE DISPOSITION** *(INDICATE RECOMMENDED DISPOSITION FOR EACH WORK RULE)*

| RULE 4.2.02 | SUSTAINED X | NOT SUSTAINED | EXONERATED | UNFOUNDED | EXCEPTIONALLY CLOSED |
|---|---|---|---|---|---|
| RULE ___ | SUSTAINED | NOT SUSTAINED | EXONERATED | UNFOUNDED | EXCEPTIONALLY CLOSED |
| RULE ___ | SUSTAINED | NOT SUSTAINED | EXONERATED | UNFOUNDED | EXCEPTIONALLY CLOSED |
| RULE ___ | SUSTAINED | NOT SUSTAINED | EXONERATED | UNFOUNDED | EXCEPTIONALLY CLOSED |

**IV. REVIEWING SIGNATURES** *(DOES NOT INDICATE AGREEMENT)*

_____ 10-17-07

INVESTIGATING SUPERVISOR          DATE

_____ 10-19-07

UNIT COMMANDER          DATE

_____

ASSISTANT SECTION COMMANDER          DATE

_____ 10-26-07

SECTION COMMANDER          DATE

[111]

Form APD-829 revised 1/1/2000

2-10-1-1





# MEMORANDUM

**TO:**     **MAJOR C. J. DAVIS**

**FROM:**     **LIEUTENANT J. CUMMINGS**

**DATE:**     **APRIL 30, 2008**

**RE:**     **INVESTIGATION AND DISPOSITION OF**
          **OPS FILE #07-I-0535-MISC**

An investigation of the allegations of this complaint and any other allegations, which arose
during the investigation, has been completed. **The following represents the findings of this
investigation:**

## I.    INVESTIGATIVE DISPOSITION

      a.     of the Complaint against             **Officer Kylema Jackson**

      [X]    **Sustained:**                  **4.2.02  (Courtesy)**

[112]


EXHIBIT
R
ALL-STATE LEGAL®

# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

EMPLOYEE: Jackson, Kylems                                    OPS # 08-2-0063-CTSY

| EMPLOYEE NAME (LAST, FIRST, MI) | | | | CLASSIFICATION | POSITION NUMBER | DATE & TIME OF STATEMENT |
| BALL, Kedria | | | | Dispatcher | 19201 | 2/7/08  0400 |

| RACE | SEX | DOB | DATE OF EMPLOYMENT | 1 DIGIT ID NO. | DIVISION | SECTION | WATCH |
| B | F | | 9-23-03 | 3888 | SSD | COMM | "C" Shift |

Investigator's Name

I am  R. L. Faina  of the Atlanta Police Department    You are being questioned as a    Witness

in an official investigation by the Department. Also present is:    REPRESENTATIVES NAME:  N/A    TYPE STATUS

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements may not be used against the employee in criminal proceedings involving the employee except in cases of perjury.

On 2-6-08 while dispatching on Zone 3 I attempted to raise unit 3306. (Officer K. Jackson) I was checking on him to see if he was still out on his call. (Cads #08371740) The officer went to the precinct with a female at 1934 hrs. he had been out on the call over 99 minutes. On my first attempt to raise him he did not answer. On my second attempt the unit finaly answered. When I asked him was he still at the precinct. he answered in a mean and nasty tone. Officer Jackson advised me that he was at Property. I sent him a message via MDT saying, "It makes no sense for you to be so nasty." The officer (Officer Jackson) then messaged me back saying "Go to Hell Bitch."

Q. Has Officer Jackson failed to respond when you have raised him in the past?

A. Yes, several times.

Q. Did Officer Jackson spell out Go to Hell Bitch exactly in his return message?

A. No, he used symbols. They were, "Go to H#@l B#@ch.

Q. What exactly did you send him on the MDT?

A. I sent, "It makes no sense for you to be so nasty."

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

EMPLOYEE SIGNATURE

Sworn and subscribed to me this  7th  day of  February  in the year  2008

Kedria Ball
PRINT EMPLOYEE NAME

K. Christopher
NOTARY PUBLIC

P - 7 - [113] - 2

Form APD826 revised 1/1/2000


EXHIBIT
S

EMPLOYEE: Jackson, Kylema                    OPS # 08-I-0067-CTsy

Q. Prior to sending the above message to him, had you sent him a message before?

A. No.

Q. Has Officer Jackson sent you inappropriate messages prior to this incident?

A. Yes, he sent the same thing last week but I didn't say anything.

Q. What were his exace words when he answered you on the radio on the second attempt?

A." No radio!" " I'm at property!"

Q. Do you wish to add anything to this statement?

A. No, it speaks for it's self.

---

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Kedsia Ball_
EMPLOYEE SIGNATURE

Sworn and subscribed to me this __1th__ day of __February__ in the year __2008__

_Kedsia Ball_
PRINT EMPLOYEE NAME

_K. Christopher_
NOTARY PUBLIC

P - 7 - [114] 2 - 2

Form APD826 revised 1/1/2000



## ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

EMPLOYEE: Officer Jackson, Kylema                    OPS # 08-I-0067-CTSY

| EMPLOYEE NAME (LAST, FIRST, MI) | | | CLASSIFICATION | POSITION NUMBER | DATE & TIME OF STATEMENT |
|---|---|---|---|---|---|
| Jackson,Kylema | | | Police Officer | 22699 | Feb 07,2008 1600 |

| RACE | SEX | DOB | DATE OF EMPLOYMENT | 4 DIGIT ID NO. | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|---|
| Black | Male | | 07-16-02 | 3584 | FOD | Zone 3 | Eve |

Investigator's Name

I am Sgt. C.W.Hewitt        of the Atlanta Police Department    You are being questioned as a

TYPE STATUS: Accused

in an official investigation by the Department. Also present is: REPRESENTATIVES NAME: Flo Cook (IBPO)

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in an internal investigation nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements may not be used against the employee in criminal proceedings involving the employee except in cases of perjury.

Q: On February 6, 2008, were you working as unit 3306, during evening watch hours.
A: Yes

Q: Were you raised by the Zone Three dispatcher, as she attempted to check on your status?
A: Yes, on the surveillance channel

Q: Did you hear the dispatcher on the main channel raise you?
A: No, because I was on the surveillance channel waiting for unit 3309 to advise if he had found a set of my handcuffs.

Q: Did you respond to her first attempt to raise you?
A: Yes, I did.

Q: In what tone did you respond to the dispatcher at this point.
A: I responded to her in my normal tone, after the dispatcher asked me in an irate manner if I was still out on my call.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_EMPLOYEE SIGNATURE_

Sworn and subscribed to me this  07  day of  February  in the year  2008

Jackson,Kylema
PRINT EMPLOYEE NAME                                    NOTARY PUBLIC

P - 6 [115] 1 - 3

Form APD826 revised 1/1/2000

EXHIBIT
"I"

EMPLOYEE: Officer Jackson, Kylema                                    OPS # C8-I-0067-CSTY

Q: Did you send the dispatcher any text messages via the mobile data terminal (MDT)?
A: Yes

Q: What did the message state?
A: Go to H@#l  B#@CH

Q: Why did you send this message to the dispatcher?
A: I don't have an explanation for it; I was frustrated after I had answered her several times, regarding my status. I have had problems with this dispatcher's attitude and tone of voice in the past.

Q: Is there anything else that you would like to add to your statement?
A: Yes, It is unfortunate that the situation rose to this level. I am hopeful that this does not happen again

Q: I am advising you that this investigation may require you to submit to a Computer Voice Stress Analysis Exam per APD SOP 3120. Do you acknowledge this notification?
A: Yes

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this  07   day of  February        in the year  2008

Jackson,Kylema
PRINT EMPLOYEE NAME                                                    NOTARY PUBLIC

P  -  6  -  2  -  3
[116]

Form APD826 revised 1/1/2000



# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

OPS # _____

EMPLOYEE: Officer Jackson, Kylema

| EMPLOYEE NAME (LAST, FIRST, MI) | | | | CLASSIFICATION | POSITION NUMBER | DATE & TIME OF STATEMENT | |
|---|---|---|---|---|---|---|---|
| Jackson, Kylema | | | | Police Officer | 22699 | Feb 17, 2008 1900 | |
| RACE | SEX | DOB | DATE OF EMPLOYMENT | 4 DIGIT ID NO. | DIVISION | SECTION | WATCH |
| Black | Male | ▨ | 07-16-02 | 3584 | FOD | Zone 3 | Eve |

Investigator's Name

I am Sgt. C.W. Hewitt of the Atlanta Police Department   You are being questioned as a   **TYPE STATUS: Accused**

REPRESENTATIVES NAME: N/A

in an official investigation by the Department. Also present is:

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in an internal investigation nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements may not be used against the employee in criminal proceedings involving the employee except in cases of perjury.

Questions prepared by Sgt. C.W. Hewitt on February 17, 2008

Q: Have you sent Dispatcher Ball any M.D.T. Messages similar to the message that you sent her on February 06, 2008?
A: Yes, just once before.

Q: What did the message state?
A: The same message.

Q: Do you have anything further to add to this statement?
A: No.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this   17   day of   February   in the year   2008

Jackson, Kylema
_____
PRINT EMPLOYEE NAME                                              NOTARY PUBLIC

P - 6 [117] 3 - 3

Form APD826 revised 1/1/2000

## ATLANTA POLICE DEPARTMENT
## INVESTIGATION DISPOSITION FORM

EMPLOYEE: Jackson, Kylema                     OPS CONTROL #: 08-I-0067-CSTY

**I. FINDING OF FACT:** *(LIST FACTS IN SIMPLE SENTENCES; DO NOT INCLUDE DISCIPLINARY ACTION RECOMMENDATIONS.*

1) That Officer Jackson was working as unit 3306 on the date in question.
2) That Officer Jackson did have correspondence with the Zone Three dispatcher via the Mobile Data Terminal.
3) That Officer Jackson did send the Zone Three dispatcher a message containing profane language on the date in question.
4) That Officer Jackson did send the Zone Three dispatcher the same message on a previous date.

**II. PROCEDURE, POLICY OR TRAINING RECOMMENDATIONS:** *(DO NOT RECOMMEND DISCIPLINARY ACTION)*

It would be wise to place Officer Jackson onto Early warning at this time and monitor any future incidents. In addition to this, possible sending Officer Jackson for a psychiatric evaluation would be beneficial to find out if there is anything that is troubling him and affecting his work performance. Lastly, with the increased number of complaints that Officer Jackson has received since August, 2007, a possible change in assignment to were Officer Jackson has minimum contact with the public would benefit the department and Officer Jackson until it can be determined if there is an underlying problem. (Property Section or Central Records are some suggestions.)

**III. INVESTIGATIVE DISPOSITION** *(INDICATE RECOMMENDED DISPOSITION FOR EACH WORK RULE)*

| RULE | | | | | |
|---|---|---|---|---|---|
| RULE 4.2.02 | SUSTAINED [X] | NOT SUSTAINED [ ] | EXONERATED [ ] | UNFOUNDED [ ] | EXCEPTIONALLY CLOSED [ ] |
| RULE ___ | SUSTAINED [ ] | NOT SUSTAINED [ ] | EXONERATED [ ] | UNFOUNDED [ ] | EXCEPTIONALLY CLOSED [ ] |
| RULE ___ | SUSTAINED [ ] | NOT SUSTAINED [ ] | EXONERATED [ ] | UNFOUNDED [ ] | EXCEPTIONALLY CLOSED [ ] |
| RULE ___ | SUSTAINED [ ] | NOT SUSTAINED [ ] | EXONERATED [ ] | UNFOUNDED [ ] | EXCEPTIONALLY CLOSED [ ] |

**IV. REVIEWING SIGNATURES** *(DOES NOT INDICATE AGREEMENT)*

| | | | |
|---|---|---|---|
| *(signature)* | 02-20-05 | LT *(signature)* | 02/21/08 |
| INVESTIGATING SUPERVISOR | DATE | UNIT COMMANDER | DATE |
| A. Scott *(signature)* | 2/27/08 | *(signature)* | 2-28-08 |
| ASSISTANT SECTION COMMANDER | DATE | SECTION COMMANDER | DATE |

[118]

Form APD-829 revised 1/1/2000

P- 11- 1-1

EXHIBIT

U

ALL-STATE LEGAL

MEMORANDUM

TO: Command Staff

FROM: Sgt. C.W. Hewitt

DATE: February 20, 2008

RE: OPS Complaint 08-I-0067-CSTY

      I have completed the OPS package pertaining to a complaint of Officer Jackson being discourteous to fellow employees. During this investigation, it was determined that Officer Jackson did write a profane message to the dispatcher. This was not just a one time occurrence but happened twice with in a week.

      Officer Jackson needs to be held accountable for his actions. The fact that Officer Jackson makes these blatant violations of Standard Operating Procedures is a sign of Officer Jackson's obvious unconcern with the position he holds. Based on the findings of this investigation, Officer Jackson's discipline worksheet, I have made a recommendation of a **Three day suspension**. This concludes my investigation. *

c:



EXHIBIT

V

# ATLANTA POLICE DEPARTMENT
## PRELIMINARY COMPLAINT FORM

| [X] OPS INVESTIGATION | [ ] COMMAND INVESTIGATION | COMPLAINT NUMBER 08-115-2064 | OPS CONTROL NUMBER 08-C-0359-UAF |
|---|---|---|---|

| DATE & TIME COMPLAINT RECEIVED | | | | DATE OF INCIDENT | | | | ADDRESS OF OCCURRENCE |
|---|---|---|---|---|---|---|---|---|
| MO | DAY | YR | TIME | MO | DAY | YR | TIME | 5 CHARLESTON AVENUE SE |
| 05 | 22 | 08 | | 04 | 24 | 08 | 2100 | ATLANTA, GA |

| | AUDIO AND VIDEO TAPES THAT ARE PART OF THIS FILE | | |
|---|---|---|---|
| **BRIEFLY DESCRIBE ALLEGATIONS** | VIDEO TAPES OF INTERVIEWS | AUDIO TAPES OF 911 RADIO [X] | OTHER TAPES |

THE DEPARTMENT REQUIRES AN INVESTIGATION INTO THE ALLEGATIONS THAT OFFICER KYLEMA JACKSON USED UNNECESSARY FORCE AGAINST THE COMPLAINTANT, KENNEDY CARROLL, AND DID NOT REPORT IT IN A TIMELY MANNER ON 04-24-08.
APD.SOP.2010/WR: 4.2.50, 2.51 & 2.33

## COMPLAINANT INFORMATION
USE "C" FOR COMPLAINANT, USE "P" FOR PARENT OR GUARDIAN, USE "W" FOR WITNESS, USE "S" FOR SUPERVISOR

| CODE | NAME (LAST, FIRST, MI) | | RACE | SEX | DOB |
|---|---|---|---|---|---|
| C | CARROLL, KENNEDY | | B | M | ▓▓▓ |

| RESIDENT ADDRESS | | HOME PHONE | BUSINESS PHONE |
|---|---|---|---|
| ▓▓▓▓▓ SE ATLANTA, GA 30315 | | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID # | SUSPECT WEAPON | WEAPON SERIAL # |
|---|---|---|---|---|
| INJURED RIBS | | | | |

| BIASED BASED INCIDENT DESCRIPTION | TYPE OF BIASED ALLEGATION | | | | |
|---|---|---|---|---|---|
| | AGE | RACE | SEXUAL ORIENTATION | GENDER | CLASS |
| N/A | | | | | |

| ACCUSED #1 NAME (LAST, FIRST, MI) | | RANK | RACE | SEX | DOB | DOE | 4 DIGIT ID |
|---|---|---|---|---|---|---|---|
| JACKSON, KYLEMA | | OFC | B | M | ▓▓▓ | 07-16-02 | 3584 |

| ASSIGNMENT | | | DUTY STATUS | | | | | FIREARMS DISCHARGE ONLY | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DIVISION | SECTION | WATCH | ON DUTY | OFF DUTY | TMP ASGN | XTRA JOB | WEAPON | | WEAPONS SERIAL # | # SHOTS |
| FOD | Z3 | EVE | X | | | | | | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID NO | TYPE OF DRUG TEST |
|---|---|---|---|
| | | | |

| ACCUSED #2 NAME (LAST, FIRST, MI) | | RANK | RACE | SEX | DOB | DOE | 4 DIGIT ID |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| ASSIGNMENT | | | DUTY STATUS | | | | | FIREARMS DISCHARGE ONLY | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DIVISION | SECTION | WATCH | ON DUTY | OFF DUTY | TMP ASGN | XTRA JOB | WEAPON | | WEAPONS SERIAL # | # SHOTS |
| | | | | | | | | | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID NO | TYPE OF DRUG TEST |
|---|---|---|---|
| | | | |

| ACCUSED #3 NAME (LAST, FIRST, MI) | | RANK | RACE | SEX | DOB | DOE | 4 DIGIT ID |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| ASSIGNMENT | | | DUTY STATUS | | | | | FIREARMS DISCHARGE ONLY | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DIVISION | SECTION | WATCH | ON DUTY | OFF DUTY | TMP ASGN | XTRA JOB | WEAPON | | WEAPONS SERIAL # | # SHOTS |
| | | | | | | | | | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID NO | TYPE OF DRUG TEST |
|---|---|---|---|
| | | | |

| SUPERVISOR RECEIVING COMPLAINT | INVESTIGATOR ASSIGNED | DATE ASSIGNED | DATE COMPLETE |
|---|---|---|---|
| LIEUTENANT K. IOSTY | INVESTIGATOR C. EHLBECK | 05-22-08 | |

P - 3 - 1 - 1

EXHIBIT
W
ALL-STATE LEGAL

# MAPQUEST

Location A: 5 Charleston Ave (arrest location)

Location B: 1683 Lakewood Ave (Marathon Gas Station)

Location C: 460 Sawtell Ave (roadblock location)

## A: 5 Charleston Ave SE, Atlanta, GA 30315-5201

**START** 1: Start out going NORTHWEST on CHARLESTON AVE SE toward LIVERMORE ST SE. — 0.0 mi

2: Turn LEFT onto LIVERMORE ST SE. — 0.0 mi

3: Turn RIGHT onto LAKEWOOD AVE SE. — 0.0 mi

**END** 4: End at 1683 Lakewood Ave SE Atlanta, GA 30315-5250

Estimated Time: 0.40 minutes    Estimated Distance: 0.08 miles

## B: 1683 Lakewood Ave SE, Atlanta, GA 30315-5250

**START** 1: Start out going SOUTH on LAKEWOOD AVE SE toward LIVERMORE ST SE. — 0.0 mi

2: Turn LEFT onto LIVERMORE ST SE. — 0.1 mi

3: Turn RIGHT onto RICHMOND AVE SE. — 0.2 mi

4: Turn LEFT onto SAWTELL AVE SE/GA-54 CONN. — 0.2 mi

**END** 5: End at 460 Sawtell Ave SE Atlanta, GA 30315-5218

Estimated Time: 1 minute    Estimated Distance: 0.51 miles

## C: 460 Sawtell Ave SE, Atlanta, GA 30315-5218

Total Time: 2 minutes    Total Distance: 0.58 miles



P-19-1-2 [121]



EXHIBIT "u"
ALL-STATE LEGAL®



MAPQUEST Margaret St

Dorothy St Se

Lathea St Se   Richmond Ave Se

Oak Knoll Cir Se

North Southern

Turman Ave Se

Oak Knoll Ter Se

Rhodesia Ave Se

Lakewood Ave Se

Whitney St Se

Gould St Se

Richmond Cir Se

Richmond Ave Se

Hopkins St Se

Sawtell Ave Se

Claire Dr Se

Jonesboro Rd Se

Southbend Ave Se

Charleston Ave Se

Schroen St Se

Owen St Se

Map Data © 2008 NAVTEQ or TeleAtlas

© 2008 MapQuest Inc.

100 m   300 ft

All rights reserved. Use subject to License/Copyright Map Legend
Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or
route usability or expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for
any loss or delay resulting from your use of MapQuest. Your use of MapQuest means you agree to our Terms of Use

P-19-$\frac{[122]}{2}$-2



# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

EMPLOYEE: JACKSON, KYLEMA                                    OPS #

| EMPLOYEE NAME (LAST, FIRST, MI) | CLASSIFICATION | POSITION NUMBER | DATE & TIME OF STATEMENT |
|---|---|---|---|
| HEWITT, Christopher | SERGEANT | 22625 | 05-04-08/1930 |

| RACE | SEX | DOB | DATE OF EMPLOYMENT | 1 DIGIT ID NO. | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|---|
| W | M | | 06-19-2002 | 3572 | FOD | ZONE3 | EVE |

Investigator's Name                                                                    TYPE STATUS
I am  SERGEANT R. KEENEY  of the Atlanta Police Department  You are being questioned as a  **WITNESS**
in an official investigation by the Department. Also present is: REPRESENTATIVES NAME:
N/A

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in an internal investigation nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements may not be used against the employee in criminal proceedings involving the employee except in cases of perjury.

Q: ON 04-24-2008 AT APPROXIMATELY 2029 HRS. WERE YOU ON-DUTY?
A: Yes.

Q: IN WHAT CAPACITY?
A: Zone Three "A" Sector Sergeant.

Q: PLEASE EXPLAIN WHEN YOU FIRST LEARNED OF OFFICER JACKSON DEPLOYING HIS CITY ISSUED OLEORESIN CAPSICUM (OC) SPRAY AGAINST MR. CARROLL.
A: I was conducting a roadblock at 460 Sawtell Ave. The zone prisoner transport van was stationed at this location and was requesting anyone who had prisoners to be transported to come to this location. During the roadblock Officer Jackson came to drop a prisoner off. The van driver was occupied with another prisoner and a call was dispatched on 306's beat. I went to Officer Jackson and told him I would take his prisoner from him so he could pick up the call on his beat. As I opened the rear of Officer Jackson's patrol car, the prisoner later identified as Mr. Carroll, started to complain that his eyes hurt. I asked Mr. Carroll why his eyes hurt. Carroll stated that the officer sprayed him. I asked Carroll what was sprayed and he responded "the officer's mace". This was the first that I had heard of that O.C. Gas was deployed. No, radio transmission was heard previous to this comment. I turned to Officer Jackson and asked him if he did use his O.C. gas. Officer Jackson stated that he sprayed a "light mist" at Mr. Carroll. I then asked Officer Jackson if he notified Lt. Iosty or the dispatcher of this incident, knowing that he had not notified me of it. Officer Jackson stated that he had not notified anyone yet. I then asked Officer Jackson if he had

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this  04  day of  MAY  in the year  2008

S₉T. C.W. HEWITT
PRINT EMPLOYEE NAME                                                      NOTARY PUBLIC

P  -  [123]  -

Form APD826 revised 1/1/2000

EXHIBIT
" Y "
ALL-STATE LEGAL®



given Mr. Carroll any medical attention yet. Again he stated "no", I then ordered Officer Jackson to call for an ambulance to respond and give medical attention to Mr. Carroll. Officer Jackson did finally request an ambulance, but failed to advice what it was needed for. At this time I notified the dispatcher of the situation. Officer Jackson had been sitting at the roadblock for about 5-10 minutes, prior to me coming to take the prisoner. During this time he did not let me know of the use of force incident.

Q: DID MR. CARROLL MAKE ANY STATEMENTS TO YOU AT THE TIME?
A: Mr. Carroll was in an intoxicated state and the only thing that I was able to understand was that, Mr. Carroll stated that the officer had stopped him and put him on the car. When he (Carroll) turned his head to talk to the officer that is when he was sprayed. Mr. Carroll also stated that after he was placed in the back of the patrol car, Officer Jackson sprayed him again and started to hit him several times with his fists.

Q: DID MR. CARROLL APPEAR TO BE UNDER THE INFLUENCE OF ANY ALCOHOLIC BEVERAGE OR UNKNOWN NARCOTIC? IF "YES", PLEASE EXPLAIN.
A: Yes, Mr. Carroll was irate in his behavior. He smelled of an alcoholic beverage, had very slurred speech, and an unsteady gait.

Q: DID MR. CARROLL HAVE ANY SIGNS OF BRUISING, SWELLING OR LACERATIONS THAT WOULD SUPPORT HIS ALLEGATION OF UNNECESSARY FORCE USED AGAINST HIM?
A: I did not note any swelling, bruising or lacerations to Mr. Carroll face or body.

Q: DID YOU INSPECT THE BACK OF THE PATROL VEHICLE WHERE MR. CARROLL WAS SITTING FOR ANY SIGNS OR SMELLS OF SPRAY?
A: Yes.

Q: WHAT DID YOU DISCOVER?
A: I did inspect the rear of the patrol vehicle and did not find any residue or signs that oc.gas was sprayed in the rear of the vehicle.

Q: DID OFFICER JACKSON MAKE ANY STATEMENTS TO YOU ABOUT WHY HE HAD TO "SPRAY" MR. CARROLL?
A: Officer Jackson stated that Mr. Carroll pulled away from him as he went to hand cuff Carroll.

---

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

EMPLOYEE SIGNATURE

Sworn and subscribed to me this __04__ day of __MAY__ in the year __2008__

Sgt. C.W. Hew.II
PRINT EMPLOYEE NAME

NOTARY PUBLIC

P - 7[124]2 - 7

EMPLOYEE: JACKSON, KYLEMA                                    OPS #

Q: DID OFFICER JACKSON SAY WHY HE DID NOT NOTIFY YOU ABOUT THE INCIDENT?
A: Officer Jackson stated that the incident had just occurred and he was going to wait till he brought Carroll down to the roadblock. Officer Jackson later stated during our conversation that he did not provide medical attention to Mr. Carroll, because he "wanted to teach Carroll a lesson".

Q: DID OFFICER JACKSON SAY WHY HE DID NOT START AN AMBULANCE FOR MR. CARROLL AFTER HE WAS EXPOSED TO THE OC SPRAY?
A: Officer Jackson later during our conversation that he did not provide medical attention to Mr. Carroll, because he wanted to teach Carroll a lesson.

Q: DID YOU NOTIFY LIEUTENANT IOSTY ABOUT THE INCIDENT? IF SO, HOW?
A: I did call Lieutenant Iosty shortly after I learned of the incident and I typed a memorandum to him.

Q: IN YOUR MEMORANDUM YOU STATED THAT YOU OBSERVED OFFICER JACKSON AND MR. CARROLL ARGUING, BUT YOU COULD NOT HEAR WHAT THEY WERE ARGUING ABOUT. THEN, AS YOU WALKED OVER TOWARDS THEM THE ARGUMENT STOPPED. DID OFFICER JACKSON TELL YOU WHAT THEY WERE ARGUING ABOUT?
A: No he did not tell me what the argument was about.

Q: DID MR.CARROLL TELL YOU WHAT THEY WERE ARGUING ABOUT?
A: No.

Q: HOW LONG AFTER OFFICER JACKSON ARRIVED AT 460 SAWTELL AVENUE DID THEIR ARGUMENT OCCUR?
A: This was about 15 to 20 minutes after they arrived.

Q: DO YOU HAVE ANYTHING ELSE TO ADD TO YOUR STATEMENT?
A: Just that Officer Jackson had plenty of time to notify a supervisor of this incident.

---

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this  04  day of  MAY  in the year  2008

Sgt. C. W. Hewitt
PRINT EMPLOYEE NAME                                    NOTARY PUBLIC

P - 7[125]³ - 7

# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

OPS # _____

EMPLOYEE: JACKSON, KYLEMA

Q: I AM ADVISING YOU THAT THIS INVESTIGATION MAY REQUIRE YOU TO SUBMIT TO A COMPUTER VOICE STRESS ANALYSIS (CVSA) EXAM PER APD SOP 3120. DO YOU ACKNOWLEDGE THIS NOTIFICATION?

A: Yes.

I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this __04__ day of __MAY__ in the year __2008__

_Sgt. C.W. Hew. III_
PRINT EMPLOYEE NAME

_____
NOTARY PUBLIC

P - 7[126]4 - 7

Form APD826 revised 1/1/2000



City of Atlanta                                     **Internal Correspondence**

Atlanta Police Department

## MEMORANDUM

TO:       Major L. A. Hagin

FROM:   Lieutenant S. D. Sheffield

DATE:    September 4, 2008

RE:       Investigation and Disposition of
             OPS File #08-C-0359-UAF

An investigation of the allegations of this complaint and any other allegations, which arose during the investigation, has been completed.

The following represents the findings of this investigation:

### I.   INVESTIGATIVE DISPOSITION

   a.  Of the Complaint against         **Officer Kylema Jackson**

      **[X] Not Sustained**          **4.2.50 Maltreatment or Unnecessary**
                                        **Force**

      **[X] Sustained**               **4.2.51 Reporting Required When**
                                          **Force Used**

      **[X] Sustained**               **4.2.33 Conformance to Directives**
                                          **(APD.SOP.3040 Weapons)**

      **[X] Sustained**               **4.1.04 Conduct**

EXHIBIT
"Z"
ALL-STATE LEGAL®

# MEMORANDUM

TO: Major E. B. Dancy

FROM: Lieutenant D. Ferguson

DATE: March 20, 2013

RE: Investigation and Disposition
OPS File # 12-C-0811-UAF

An investigation of the allegations of this complaint and any other allegations, which arose during the investigation, has been completed.

The following represents the findings of this investigation:

## I. INVESTIGATIVE DISPOSITION

Of the Complaint against:      Officer Kylema Jackson

[X] **Sustained**      **4.1.01 Appropriate Action Required**

[X] **Sustained**      **4.2.38 Outside Employment**

[X] **Sustained**      **4.2.50 Maltreatment or Unnecessary Force**

[X] **Sustained**      **4.2.51 Reporting Required When Force Used**

[128]

EXHIBIT
" AA "
ALL-STATE LEGAL



## II.  POLICY OR PROCEDURAL CHANGES, TRAINING, RECOMMENDATIONS, AND/OR COMMENTS

The Department requires an investigation into the allegation that Officer Jackson used unnecessary force against the daughter of Mrs. Anita Butts, ▆▆▆▆▆▆, while working as a Courtesy Officer. Officer Jackson also did not notify a supervisor about the use of force he used.

A review of the complaint file indicates the following:

Officer Ashley Gibson responded to a 911 call from Mrs. Anita Butts referencing an off-duty officer who injured her daughter. Mrs. Butts stated that Officer Jackson forcibly removed her daughter from the complex located at 12 Melden Ave., the Columbia Blacksheer Apartments. The daughter, Athirat Butts, was visiting her grandmother apartment #▆▆.

At the Time Mrs. Butts and her daughter completed witness statements for Officer Gibson. ▆▆▆▆▆▆ stated that she was in the apartment complex's shared computer room when Officer Jackson got her attention and told her she had to leave. Officer Jackson was not in uniform but introduced himself as the Courtesy Officer. She stated he then followed her to her grandmother's apartment where she said under her breath, "bitch". As she attempted to close the apartment door Officer Jackson stuck his foot in the threshold preventing it from closing. She then stated he grabbed her arm, and pulled her, which caused bruising to her arm. She stated Officer Jackson told her, "she would be leaving out of the apartment burning with the tear gas in her face" if she did not leave. Officer Jackson then escorted her from the apartment complex outside, and into the rain. Photos of her bruised arm are included in the investigation package.

When Mrs. Butts arrived at the complex she discovered her daughter outside standing in the rain. Later the two went to Officer Jackson's apartment to inquire as to what happened during the incident.

Mrs. Butts stated when Officer Jackson came to the door he had a handgun in his hand and was wearing a T-shirt and boxer shorts. She stated that Officer Jackson told her, "He should have to lock her ass up for trust pass." She continued to state that he told her he would have to banned her from the property.

Officer Jackson stated he was working as the Courtesy Officer at the apartment complex when he observed ▆▆▆▆▆▆▆ in the computer room. He recognized that she was not a resident and he told her she had to leave. He stated that she told him she was visiting her grandmother, who is a resident of the apartments. Officer Jackson stated that she became belligerent and used profanity when she called him, "bitch" and "nigger". This is when he grabbed her arm and she pulled away. He told her she was being disorderly and needed to leave the property. This is when he removed her from the property.

Officer Jackson stated that Mrs. Butts and her daughter went to his apartment later that night, to inquire about the incident. He stated he was in his boxer shorts and did have his handgun in his hand. First he stated, he does not recall Mrs. Butts telling him about the injury to her daughter. Later in his statement he admits to being made aware of the mark on her arm when Mrs. Butts and her daughter came to his door. The statement contradicts his previous statement that he did

not recall if she was injured. He did not call for a supervisor or for an ambulance to treat her daughter.

Officer Jackson stated that the property management has instructed him to remove unauthorized persons from the property, and he admits it is his practice to enforce the rules and regulations of the apartment complex. He believed that Athirat Butts had violated the law and he had the right to remove her from the property.

Officer Jackson stated he did not say, "Hell yes, I am the police, you came to my door" nor did he call ▇▇▇▇▇▇▇ a "lifeless bum".

Officer Gibson investigated the incident and advised Sergeant James Hoos of her findings. Sergeant Hoos responded to the scene and completed a Use of Force report.

Based upon my review of this file, I recommend that the allegation against Officer Jackson for the Work Rule of **4.1.01 Appropriate Action Required**, be **sustained**. The Work Rule reads:

4.1.1    Appropriate Action Required

1. Employees shall respond in an appropriate manner to all situations by:

2. Being considerate of the rights, feelings, and interests of all persons.

3. Taking action in each situation to provide the necessary and appropriate service and insuring the proper notification of supervisors when appropriate.

4. Requesting the assistance of supervisors when the appropriate action required is unclear, not possible given circumstances, or not within the scope of authority of the employee of whom such action was requested.

5. Performing official acts in a lawful, restrained, dignified, impartial, and reasonable manner.

He had no right to remove ▇▇▇▇▇▇s from the apartment complex. No member of management had given her a Criminal Trespass warning, and she was visiting her blind grandmother who is in need of her granddaughter's assistance. Officer Jackson was enforcing apartment policy and never once had Probable Cause to physically touch and remove Athirat Butts. During all his interactions with the apartment residents and visitors he never once wore an Atlanta Police uniform, presented any Atlanta Police identification, and did not have authorization from the City of Atlanta to work as a Courtesy Officer at the complex.

I recommend that the allegation against Officer Jackson for the Work Rule of **4.2.38 Outside Employment**, be **sustained**. The Work Rule reads:

4.2.38    Outside Employment

1. Employees shall not engage in any employment outside the Department without the prior written permission of the Chief of Police or his or her designee.

[130]

Officer Jackson stated he "faxed" a copy of his application to be a Courtesy Officer for the apartment complex to the Personnel Unit. He felt this was sufficient notification to work in an off-duty capacity.

Per APD.SOP.2060 (Extra Jobs)

4.1.1    No employee will work an extra job without an approved or temporary extra job permit. Employees must have the approved or temporary permit (or a copy thereof) readily available while working the respective extra job and produce it to any supervisor or SIU employee upon request.

He also violated Work Rule **4.2.38 Outside Employment** by openly enforcing private policy and procedures of the apartment complex.
Per APD.SOP.2060 (Extra Jobs)

4.1.3.    Employees working extra jobs will not rely on any authority vested in a Department employee by the City of Atlanta or the State of Georgia to enforce civil contracts or the rules and regulations of a private enterprise.

Additionally, by not wearing his Atlanta Police uniform he was in further violation.
Per APD.SOP.2060 (Extra Jobs)

4.1.7    Employees working Type II, III, or V extra jobs will wear the Class B or Class C uniform. Lieutenants and below authorized to wear the Class C uniform in the performance of their regular duties may wear it while working extra jobs. Any uniform or clothing other than the Class B or Class C uniform must be requested and approved by a section commander in advance of the extra job permit (Form APD 727).

I recommend that the allegation against Officer Jackson for the Work Rule of **4.2.50 Maltreatment or Unnecessary Force,** be **sustained**.
The Work Rule reads:

4.2.50    Maltreatment or Unnecessary Force

1. Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property

2. Employees shall only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself or another from physical assault, or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989).

When Officer Jackson placed his hands on ▆▆▆▆▆▆ and she pulled away, visible marks were left on her arm. If Officer Jackson had Probable Cause to arrest ▆▆▆▆▆▆ he would have

[131]

been authorized to use a reasonable amount of force to affect the arrest, but in this instance he used unnecessary force without authority.

I recommend that the allegation against Officer Jackson for the Work Rule of **4.2.51 Reporting Required When Force Used**, be <u>sustained</u>. The Work Rule reads:

4.2.51    Reporting Required When Force Used

1.  Employees who use force against any person or the property of any person shall make a report of the incident and report it to their supervisor as soon as practicable.

Officer Jackson did not notify supervisor of his use of force. The mother of ▮▮▮▮▮▮▮ had to call 911 to have an on-duty officer come to the scene and only then was a supervisor notified. Officer Jackson had already returned to his apartment and plenty of time had passed without him notifying his supervisor.

Lieutenant D. Ferguson
Commander, Internal Affairs Unit

This Investigation is:    [✓] Approved        [  ] Disapproved

By: _____
        Major E. B. Dancy
        OPS Commander

_03/27/013_
Date

Comments: _____

# ATLANTA POLICE DEPARTMENT
## NOTICE OF FINAL ADVERSE ACTION (NFAA)
### OPS CONTROL #: 12-C-0811-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|
| JACKSON, KYLEMA | 3584 | | OFFICER | FOD | Z-3 | DAY |

| EMPLOYEE STATUS | | | PERSONNEL ORDER # | DISTRIBUTION | EMERGENCY ACTION? | |
|---|---|---|---|---|---|---|
| PERMANENT [X] | PROBATION [ ] | OTHER [ ] | APD.PO.13.104 | 7 | YES [ ] | NO [X] |

## NOTICE OF PROPOSED ADVERSE ACTION (N.P.A.A.) ISSUED ON:

Did employee respond to NPAA? [X] YES  [ ] NO  If yes [ ] WRITTEN RESPONSE  [X] PERSONAL RESPONSE   DATE RESPONDED 5/8/13

Summary of Employee Response: Did not feel a grab was use of force. Understands he cannot enforce the building policy.

## FINAL ADVERSE ACTION: *If an emergency action state the nature of the emergency below in the Narrative.*

[X] Suspension without pay for __5__ working days.

[ ] Suspension without pay pending adjudication of criminal charges.

Was the Notice of Proposed Adverse Action Modified? [X] YES [ ] NO

Date NPAA Issued 5/3/13

[ ] Demotion from _____ to _____

[ ] Dismissal.

Effective Date of Action 5/20/13

[ ] Other _____

## NARRATIVE (Reasons for Adverse/Emergency Action)

The specific disciplinary decision for each Departmental work rule or other violation you were charged with follows below:

| RULE VIOLATION | DISCIPLINARY ACTION* |
|---|---|
| 4.2.50 Maltreatment or Unnecessary Force | 2 day suspension |
| 4.1.1 Appropriate Action Required | 2 day suspension |
| 4.2.38 Outside Employment | 1 day suspension |

*See attached page(s) for the specifics of the violation(s).*

TO EMPLOYEE: Pursuant to Labor Management Relations Ordinance Section 114-547, you may appeal any adverse action taken in this matter to the City of Atlanta Civil Service Board by completing the Civil Service Appeal form and submitting it to the Bureau of Labor Relations.

Deputy Chief E. R. Propes                                          04/08/13

TITLE AND NAME OF DISCIPLINARY AUTHORITY (PRINT OR TYPE NAME)    DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE

_____ 5-8-13                   Sgt _____ 5/8/13

EMPLOYEE SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)    WITNESS SIGNATURE AND DATE

P - 18 - [133] - 1 - 4

**EXHIBIT**
**BB**
ALL-STATE LEGAL®

## ATLANTA POLICE DEPARTMENT
### ADVERSE ACTION CONTINUATION
**NOTICE OF FINAL ADVERSE ACTION**   **OPS CONTROL #: 12-C-0811-UAF**

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| JACKSON, KYLEMA | 3584 | | OFFICER |

---

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:** You are charged with violating Rule 4.2.50 of the Employee Work Rules of this Department. Said Rule states:

### Maltreatment or Unnecessary Force

    **A.** Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property.

    **B.** Employees will only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself or another from physical assault or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989) pp. 396-397).

**SPECIFICALLY:**" On November 12, 2012, while working an unapproved extra job as a courtesy officer at ▓▓▓ ▓▓▓▓n Avenue S.W. Atlanta GA., you approached Ms. A▓▓▓▓▓s as she sat in the shared computer room for residents. You initiated a citizen encounter and asked Ms. ▓▓s to leave the computer room because she was not a resident of the apartment complex. Ms.▓▓▓ left the computer room and went to her grandmother's apartment as you followed. Ms.▓▓▓ entered her grandmother's apartment. After a brief discussion, you attempted to remove Ms.▓▓▓ from the residence by grabbing her right arm. You then escorted Ms. ▓▓▓ from the property. As a result of your actions, Ms.▓▓▓ sustained minor injuries to her right arm. Ms. ▓▓▓ was not charged with a crime nor did you ascertain if she had received any previous criminal trespass warnings from the apartment complex.

Your actions were contrary to APD.SOP.3010 (Use of Force), which states, "Employees will only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend him/herself or another from physical assault or to accomplish other lawful objectives."

**YOUR ACTIONS AS DESCRIBED ABOVE ARE IN VIOLATION OF THE LISTED RULE (S).**

---

Deputy Chief E. L. Propes
TITLE AND NAME OF DISCIPLINARY AUTHORITY

_(signature)_ 5-8-13
EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)

Form APD-834 revised 1/1/2000

_(signature)_ 05/08/13
DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE

Sgt _(signature)_ 5/8/13
WITNESS SIGNATURE AND DATE

Original to OPS; photocopy: to employee; to employee's supervisor; to Personnel and Human Resources; to Personnel Section (2) & to Chief of Police

## NOTICE OF FINAL ADVERSE ACTION    OPS CONTROL #: 12-C-0811-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| JACKSON, KYLEMA | 3584 | | OFC. |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:**   You are charged with violating Rule 4.1.01 of the Employee Work Rules of this Department. Said Rule states;

### Appropriate Action Required

1. Employees shall respond in an appropriate manner to all situations by:

2. Being considerate of the rights, feelings, and interest of all persons.

3. Taking action in each situation to provide the necessary and appropriate service and insuring the proper notification of supervisors when appropriate.

4. Requesting the assistance of supervisors when the appropriate action required is unclear, not possible given circumstance, or not within the scope of authority of the employee of whom such action was requested.

5. Performing official acts in a lawful, restrained, dignified, impartial and reasonable manner.

**SPECIFICALLY:** On November 12, 2012, while working an unapproved extra job as a courtesy officer at ▇▇▇▇▇▇▇▇▇▇ S.W. Atlanta GA., you approached Ms. ▇▇▇▇▇▇▇ts as she sat in the shared computer room for residents. You initiated a citizen encounter and asked Ms. ▇▇▇▇s to leave the computer room because she was not a resident of the apartment complex. Ms. ▇▇▇▇s left the computer room and went to her grandmother's apartment as you followed. Ms. ▇▇▇s entered her grandmother's apartment. After a brief discussion, you attempted to remove Ms. ▇▇▇s from the residence by grabbing her right arm. You then escorted Ms. ▇▇▇ts from the property. As a result of your actions, Ms. ▇▇▇s sustained minor injuries to her right arm. Ms. ▇▇▇s was not charged with a crime nor did you ascertain if she had received any previous criminal trespass warnings from the apartment complex. However, you forced Ms. ▇▇▇s to leave the property against her will and wait in the rain. Additionally, during your initial encounter with Ms. ▇▇▇s, you failed to wear or display any visible identification, which readily identified you as an Atlanta Police Officer.

Your actions in the aforementioned instance were not considerate of the rights, feelings and interest of all persons, nor were they performed in a lawful, restrained, dignified, impartial and reasonable manner.

## YOUR ACTIONS AS DESCRIBED ABOVE ARE IN VIOLATION OF THE LISTED RULE (S).

Deputy Chief  E.R. Propes
TITLE AND NAME OF DISCIPLINARY AUTHORITY

_____ 5-8-13
EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)

Form APD-834 revised 1/1/2000

DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE    05/00/13

Sgt  ___  5/8/13
WITNESS SIGNATURE AND DATE

## ATLANTA POLICE DEPARTMENT
## ADVERSE ACTION CONTINUATION
### NOTICE OF FINAL ADVERSE ACTION          OPS CONTROL #: 12-C-0811-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| JACKSON, KYLEMA | 3584 | | OFFICER |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:** You are charged with violating Rule 4.2.38 of the Employee Work Rules of this Department. Said Rule states:

### Outside Employment

A. Employees will not engage in any employment outside the Department without the prior written permission of the Chief or his or designee.

**SPECIFICALLY:** On November 12, 2012, you were involved in an incident at ▪▪▪▪▪▪▪ Avenue, while acting as a courtesy officer for the Villages of Carver Apartments. Your courtesy officer position at the Villages of Carver apartments requires a valid extra job permit signed by a supervisor, which you did not have. You indicated that you faxed a copy of your application to be a Courtesy Officer to the Personnel Unit.

## YOUR ACTIONS AS DESCRIBED ABOVE ARE IN VIOLATION OF THE LISTED RULE (S).

Deputy Chief E. R. Propes
TITLE AND NAME OF DISCIPLINARY AUTHORITY

_Kylema Jackson_ 5-8-13
EMPLOYEE'S SIGNATURE & DATE (indicates receipt ONLY not agreement with action)

Form APD-834 revised 1/1/2000

_(signature)_ 05/08/13
DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE

_Sgt_ _(signature)_ 5/8/13
WITNESS SIGNATURE AND DATE

P- 18 [136] 4 - 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WILL O. KING, | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:15-CV-0583-TWT** |
| **KYLEMA JACKSON,** | : | |
| **Individually and in his Official** | : | |
| **Capacity as a City of Atlanta** | : | |
| **Police Officer, and** | : | |
| **THE CITY OF ATLANTA** | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2015, I electronically filed a copy of the

FIRST AMENDED COMPLAINT FOR DAMAGES, with Exhibits with the Clerk

of Court using CM/ECF system with service on all attorneys of record for the City

of Atlanta electronically. I also hereby certify that since Defendant Kylema Jackson

has not provided a method to serve him electronically, I have this day placed a copy

in the U.S. Mail, first class, with adequate postage thereon to his address of 1650

Anderson Mill Road, #7103, Austell, GA 30106.

/s/ *Richard B. Crohan*
**Richard B. Crohan**
Georgia Bar No. 197120
rcrohan@mcklaw.org