IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WILL O. KING, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Plaintiff, | : | |
| | : | **CIVIL ACTION FILE NO.** |
| v. | : | **1:15-CV-0583-TWT** |
| KYLEMA JACKSON, | : | |
| Individually and in his Official | : | |
| Capacity as a City of Atlanta | : | |
| Police Officer, and THE CITY | : | |
| OF ATLANTA, Defendants. | : | |

## PLAINTIFF'S RESPONSES TO INITIAL DISCLOSURES

Comes now the Plaintiff, WILL O. KING and submits his Responses to

Initial Disclosures pursuant to Rule 26.1 of the Local Rules of the United States

District Court for the Northern District of Georgia.

**Disclosure 1:**

State precisely the classification of the cause of action being filed, a brief

factual outline of the case including plaintiff's contentions as to what defendant

did or failed to do, and a succinct statement of the legal issues in the case.

**Response:**

**A. Cause of Action.**

This action is based on violation of the plaintiff's civil rights pursuant to

[1]

42 U.S.C. Sections 1983 and 1988 and under the First, Fourth and Fourteenth Amendments of the Constitution, along with pendent state claims for the excessive battery, force and wrongful shooting of Will King April 4, 2013. Mr. King was unarmed when unjustifiably shot from outside of his car while parked at a CITGO station on Jonesboro Road. Kylema Jackson, who while acting under color of law as a City of Atlanta Police Officer, without articulable suspicion or probable cause pulled behind the vehicle, activated his blue lights and exited his vehicle with his service weapon drawn and pointed at Will King. Without any probably cause to believe that anyone in the vehicle had committed a felony, posed an immediate threat to himself or the public, Defendant Jackson used unnecessary and excessive force, in violation of Mr. King's aforementioned civil and constitutional rights, when he shot Mr. King. Defendant Jackson had no reasonable belief that the use of deadly force was necessary to prevent death or great bodily harm to himself or a third person, or to prevent the commission of a forcible felony. The history of unlawful and unconstitutional behavior exhibited by Defendant Jackson and known by the City of Atlanta, established a custom of known unconstitutional behavior which became the driving force and cause of Mr. King's constitutional deprivation.

[2]

## B. <u>Brief Factual Outline.</u>

On the afternoon of April 4, 2013, Will King and three passengers were traveling in Atlanta. They stopped at a CITGO. One passenger exited to make a purchase from the store. Mr. King and two others stayed in the vehicle. Defendant Jackson pulled his APD patrol car into the CITGO and stopped beside Mr. King's car. Jackson backed up behind King's car, and activated his blue lights. Jackson then exited his vehicle with his service weapon drawn and pointed it at Mr. King.

Jackson approached the driver's side with his weapon continually pointed at King's head. Jackson yelled for the occupants to raise their hands; they all complied, including King. Despite compliance, Jackson used unjustified and excessive deadly force by firing a bullet through the driver's side window, striking an unarmed Mr. King in the side of the face. King, after suffering a massive head injury and fearing for his life, managed to drive to where he was taken to the hospital with life threatening injuries.

Defendant Jackson did not know the identity of anyone in Mr. King's car at the time he: (1) backed his patrol car behind it and activated his blue lights; (2) exited his vehicle with his service weapon drawn; or (3) fired though the

[3]

window, striking King in the face. Neither Mr. King, nor anyone in the vehicle, did anything to cause Jackson to reasonably believe they posed an immediate threat of physical violence to Jackson or others, or possessed a weapon. Prior to exiting his vehicle with his gun drawn, Jackson had no articulable suspicion or probable cause to believe that King or the occupants had committed any felonies; nor did he witness King commit any felonies.

Because Jackson had no reason to believe anyone in the vehicle posed an immediate threat, or possessed a weapon, Jackson violated the U.S. Constitution when he improperly used excessive deadly force by shooting King. Prior to shooting King, Jackson was charged with the knowledge that the use of excessive deadly force by a peace officer is an unlawful seizure of a person under the U.S. Constitution and Supreme Court case law.

During his employment with the APD, Jackson received no less than twelve (12) citizen complaints alleging maltreatment, unnecessary use of force, or lack of courtesy. About 15 days before Jackson shot Mr. King, the APD had sustained an unnecessary use of force complaint leveled against him 5 months earlier; yet, he was armed and on patrol without restrictions when he shot King.

[4]

Despite Jackson's history of unnecessary force complaints, the City continued to employ him as a police officer. Through its actions, and inactions, the City established a process or custom that allowed and encouraged Jackson to continue to illegally use excessive force. The City was aware, as early as 2004, that Jackson was willing to use unnecessary force by using his service weapon, as a citizen complained that he gestured threateningly to use his weapon during a traffic stop. The citizen and two witnesses provided statements to the APD regarding Jackson's actions. APD investigated and sustained a "lack of courtesy" complaint against Jackson and merely gave him an oral admonition. The failure to condemn or deter Jackson's acts of violence and aggression through meaningful discipline or to train about use of force continued up to the time he shot King.

In 2005, Jackson was instructed by a supervisor to walk a beat. APD records show Jackson refused saying: "[I] don't walk foot beats, it goes against [my] principles and [my] manhood." During the investigation of the charge of job abandonment, a Sergeant and front line supervisor for a dozen years, interviewed Jackson with another Sergeant. The interviewing Sergeant opined that Jackson was mentally unstable. He expressed concern that if Jackson was

as unstable as he appeared, should he [the Sergeant] be worried about his personal safety and the safety of others. He stated he had never encountered an employee who behaved like Jackson and that he made him, an armed supervisor, **fear for his life**. The Sergeant said Jackson refused to look him in the eye, and instead stared off into space as though talking with someone above him.

When asked if he was going to continue to refuse the assignment and disobey orders, Jackson said nothing, and continued to gaze into space. He was told to clock out.

After Jackson had left the building, *both* Sergeants discussed Jackson's "bizarre" behavior and expressed concern to one another **that he might reach for his weapon and use it**. One Sergeant was so concerned when he became aware that he was not wearing his bulletproof vest, he "subconsciously" placed his hand on his own weapon. The interviewing Sergeant opined that Jackson "clearly exhibited behavior indicative of psychological and/or emotional impairment." He requested Jackson be relieved of duty and scheduled a psychiatric evaluation. Jackson was relieved from duty on 5/25/2005 and was reinstated shortly thereafter by APD for full duty on 7/14/2005.

[6]

In November 2005, Defendant Jackson, without any complaint, approached a group of motorcycle riders at a BP station in Atlanta. The social riding group gathered briefly to coordinate taking photos at a near-by park. Unbeknownst to Jackson, one of them was a female off duty police officer. Jackson pulled in and began cursing and demanding they exit the premises. Though they were trying to leave, Jackson **pulled his service weapon in a hostile and intimidating manner**. Eight (8) people, *including the off duty officer*, complained to APD.

In her statement to APD, the off duty officer opined that Jackson used unnecessary and excessive force and recommended counseling on use of force. Several other complainants urged more training or counseling. Despite complaints and statements provided by the victim/witnesses, the APD initially deemed it only another "courtesy violation", later changed to **"exonerated."** The City again refused to train Jackson on use of force or counsel him on his violence toward the public; it refused to discipline him proportionate to his offense.    Instead, through its inaction, the City taught Jackson that pulling his weapon unarmed citizens, including a fellow officer, carried no consequences and was not even considered "discourteous."

[7]

On August 28, 2007, Defendant Jackson was working near Lakewood Amphitheater. Another APD officer was working off duty security at the amphitheater. Two State Troopers were also working security there.    According to the complaining APD officer, Jackson became "irate" due to the location of cars before the gates opened. The officer asked Jackson to calm down, as he was raising his voice to her and the crowd. The State Troopers also saw Jackson's aggressive behavior.    Once the gates opened, Jackson entered in his patrol vehicle with blue lights flashing, and blocked traffic. One Trooper asked Jackson when he was going to move for traffic. Jackson argued with the Trooper and said he would move "when he got ready to move".    The Trooper walked away to deescalate the confrontation.

For the second time, an off duty officer filed a complaint with APD against Jackson.    The   APD   Investigative   Procedure,   Policy   or   Training Recommendations stated as follows:

"The attendance of a sensitivity course by Officer Jackson might assist him, when dealing with citizens and other law enforcement. This has not been the first instance in which a complaint has been received about Office Jackson's attitude and courtesy toward others. ***Without some form of***

*training, this type of situation will continue, and cause unforeseen problems for the department and Officer Jackson."* (Emphasis Added)

On February 6, 2008, Jackson was charged with, and later admitted, sending "profane messages" to an APD co-employee. The investigating Sergeant stated: **"the fact that Officer Jackson makes these blatant violations of Standard Operating Procedures is a sign of Officer Jackson's obvious unconcern with the position he holds."**

Later in 2008, Jackson arrested a man for drinking in public. The man complained to APD that **Jackson had sprayed him with pepper spray and punched him**. Jackson took the man to a road-block for transportation to jail. The road-block was about a half mile from the arrest and should have taken less than 2 minutes to transport. Jackson took 40 minutes to get the man there and additional 10 minutes before telling the officer at the road-block that he had pepper sprayed him.

Jackson told the officer at the road-block that he did not call for medical assistance because he **"wanted to teach [the victim] a lesson."** The APD investigation noted that Jackson had done this same type of thing in the past, and recommended counseling.

[9]

In November of 2008, Jackson took an unauthorized job as a "courtesy officer" at an apartment complex. He was accused of using unnecessary force when he grabbed a blind tenant's granddaughter to remove her from the property; she was there to assist her grandmother. The report said Jackson bruised the girl's arm when he forced her from the complex, on foot, in the rain.

When the girl's mother arrived at the complex, she found her daughter outside in the rain. The girl and her mother went to Jackson's apartment to discuss the event. **Jackson came to the door with a handgun in his hand,** wearing only a T-shirt and boxer shorts. The girl's mother call 911 for assistance.

The report stated that **Defendant Jackson did not understand that grabbing a person was use of force**. It took the APD over four (4) years to sustain an unnecessary force claim against Defendant Jackson, after this event and did so just fifteen (15) days prior to him shooting Will King. Yet, nothing happened to Jackson in the interim or after the finding. No discipline and no use of force training. He was armed with an APD issued weapon, driving an APD patrol car and working, without restrictions, the day he shot King.   Once again, the failure to meaningfully discipline, train or counsel Jackson established the City's custom that effectively gave him the green light to continue his

[10]

unconstitutional use of force.

See also the Amended Complaint with Exhibits, and Response to City of Atlanta's Motion to Dismiss, each are incorporated herein by reference.

## C. Legal Issues.

1. Whether Kylema Jackson, while acting under color of law, as a City of Atlanta Police Officer, used excessive and deadly force in shooting Will King.

2. Whether the Defendants violated Will King's civil rights under USC Section 1983 when, while acting under color of law authorized and used excessive deadly force in shooting Will King.

3. Whether the Defendants violated the Fourth Amendment through the use of excessive force by unlawfully and unreasonably seizing Will King through the use of excessive deadly force by shooting and permanently injuring him.

4. Whether the City of Atlanta's inactions, customs and ratification of Kylema Jackson's known prior unconstitutional treatment of citizens, established a custom or policy on which *Monell* liability can be based.

5. Whether the Defendants' conduct were the factual and proximate cause of Mr. King's constitutional and statutory loss.

6. Whether the Defendant Jackson violated clearly established constitutional or

[11]

.

statutory rights which a reasonable person in his positions would have known.

7. Whether Defendant Jackson acted objectionably reasonably in light of clearly established law and based upon all information available to him at the time.

8. Whether the Defendants acted reasonably in light of clearly established law and based upon all information available to them at the time.

9. Whether the City of Atlanta violated law by failing to adequately train and instruct officers regarding policies and procedures for use of deadly force.

10. Whether Defendant Jackson violated O.C.G.A. Sections 16-5-24, 16-5-21, 16-3-21 and /or 17-4-20.

11. Whether Defendant Jackson's actions were with such reckless or callous indifference to Mr. King's civil rights as to impose an award of punitive damages.

12. Whether the Defendants are liable to Plaintiff for damages for violations of civil rights resulting in serious and permanent personal injuries of Will King under federal and state law, to include but not limited to the past, present and future medical expenses, pain and suffering, loss and enjoyment of life, permanency and other claims associated with personal injury claims as recognized under Georgia law.

[12]

13. Whether the Plaintiff is entitled to reasonable attorneys' fees under 42 U.S.C. 1983.

**Disclosure 2:**

Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.

**Response:**

**FEDERAL LAW**

**42USC § 1983 Civil action for deprivation of rights**

SUBCHAPTER I - GENERALLY

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

[13]

declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

### 42 USC § 1988 Proceedings in vindication of civil rights

SUBCHAPTER I - GENERALLY

(a) Applicability of statutory and common law

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and

[14]

disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

(b) Attorney's fees

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 (20 U.S.C. 1681 et seq.), the Religious Freedom Restoration Act of 1993 (42 U.S.C. 2000bb et seq.), the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. 2000cc et seq.), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

c) Expert fees

In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

[15]

(R.S. Sec. 722; Pub. L. 94-559, Sec. 2, Oct. 19, 1976, 90 Stat. 2641; Pub. L. 96-481, title II, Sec. 205(c), Oct. 21, 1980, 94 Stat. 2330; Pub. L. 102-166, title I, Sec. 103, 113(a), Nov. 21, 1991, 105 Stat. 1074, 1079; Pub. L. 103-141, Sec. 4(a), Nov. 16, 1993, 107 Stat. 1489; Pub. L. 103-322, title IV, Sec. 40303, Sept. 13, 1994, 108 Stat. 1942; Pub. L. 104-317, title III, Sec. 309(b), Oct. 19, 1996, 110 Stat. 3853; Pub. L. 106-274, Sec. 4(d), Sept. 22, 2000, 114 Stat. 804.)

**Amendment IV To the United States Constitution. Search and Seizure**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**Amendment XIV To The United States Constitution. Rights Guaranteed: Privileges and Immunities of Citizenship, Due Process, and Equal Protection**

SECTION. 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

[16]

any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## CASE LAW

*Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694 (1985) (Apprehension by the use of deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement.

An officer's use of excessive force, deadly or not, in the course of an arrest, investigatory stop, or other seizure of a free citizen are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388, 394, 395, 109 S.Ct. 1865 (1989).

The Constitutional procedure in excessive force cases set forth in *Saucier v. Katz,* 533 U.S. 194 (2001), mandated that a two step analysis required for qualified immunity was: (1) whether the facts alleged or shown by the plaintiff make out a violation of an constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier,* 533 U.S. at 201. The two step sequence procedure, while often appropriate, is no longer an inflexible requirement. *Pearson v. Callahan,* 129

[17]

S.Ct. 808, 172, 227, L.Ed.2d 565 (2009).

"Fourth Amendment analysis of intentional physical control by police officers in § 1983 cases alleging excessive force, '[a]s in other Fourth Amendment contexts,' is subject to an objective reasonableness inquiry: 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."(fn17) *Carr v. Tatangelo,* No. 01-14621 (11th Cir. 07/23/2003), citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872 (1989).

*Vaughan v. Cox,* 264 F.3d 1027, 1033 (11th Cir. 2001) ("Because [§ 1983 plaintiff] was hit by a bullet that was meant to stop him, he was subject to a Fourth Amendment seizure."), cert. granted, opinion vacated, and remanded, 536 U.S. 953, 122 S.Ct. 2653 (2002), opinion reinstated, 316 F.3d 1210, 1214 (11th Cir.), cert. denied, 123 S.Ct. 2252 (2003)

A police officer may use deadly force to seize a fleeing felony suspect when the officer: (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious

[18]

physical harm;" (2) reasonably believes that the use of deadly force was

necessary to prevent escape; and (3) has given some warning about the possible

use of deadly force, if feasible. *Garner,* 471 U.S. at 11-12, 105 S. Ct. at 1701;

*Acoff v. Abston,* 762 F.2d 1543, 1547 (11th Cir. 1985), See also, *Pruitt v. City of*

*Montgomery,* 771 F.2d 1475 (11th Cir. 1985).

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658,

(1978) (Local governments, and officials in their official capacities, can be sued

directly under Section 1983.)

*Canton v. Harris*, 489 U.S. 378 (1989)

*Gold v. Miami,* 151 F.3d 1346 (11th Cir. 1998)

*Marriott v. County of Montgomery*, 426 F. Supp. 2d 1 (N.D.N.Y. 2006)

*Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)

*Hill v. White,* 321 F.3d 1334 (11th Cir. 2003)

*Harper v. Blockbuster Ent. Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998)

*Conley v. Gibson,* 355 U.S. 41(1957)

*Wilcombe v. TeeVee Toons,* 555 F.3d 949, 959 (11th Cir. 2009)

*Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865 (1989)

*Vinyard v. Wilson*, 311 F.3d 1340, 1349-1355 (11th Cir. 2002)

[19]

*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)

*Am. United Life Ins. Co. v. Martinez,* 480 F3d. 1043, 1057 (11th Cir. 2007)

*McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004)

*Bd of Cty Comm. of Bryan Co, Okla. v. Brown*, 520 U.S. 397 (1997)

*Cannon v. Taylor,* 782 F.2d 947, 951 (11th Cir.1986)

*Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir. 1986)

*Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002)

*Estelle v. Gamble,* 429 U.S. 97 (1976)

*Snow v. City of Citronelle, Ala*, 420 F 3d 1262, 1268, (11th Cir. 2005)

*Grech v. Clayton County, Ga.,* 335 F.3d 1326, 1329 (11th Cir. 2003)

*A. Fed'n of Labor v. City of Miami,* 637 F. 3d 1178 (11th Cir., 2011)

*Dekalb County v. Bailey,* 319 Ga. App 278 (2012)

Discovery may reveal additional facts that will make additional case law

applicable to this case, in additional to the authority set forth herein.

## ADDITIONAL CASE LAW

"[T]he substantive due process guarantee protects against government

power arbitrarily and oppressively exercised."   County of Sacramento v.

[20]

Lewis, 523 U.S. 833, 846, 118 S.Ct.1708, 1716 (1998) (citing Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 664 (1986)). The Supreme Court has explained that "the cognizable level of executive abuse of power [i]s that which shocks the conscience." Lewis at 846, 118 S.Ct. at 1717 (referencing Rochin v. California, 342 U.S. 165, 172-73, 72 S.Ct. 205, 209-10 (1952))

The due process clause of the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by police." City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983).

## STATE LAW

### O.C.G.A. Section 16-3-21.

(a) A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force

[21]

is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

O.C.G.A. Section 16-5-24 - Aggravated battery

(a) A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.

O.C.G.A. Section 16-5-21 - Aggravated assault

(a) A person commits the offense of aggravated assault when he or she assaults:

(1) With intent to murder, to rape, or to rob;

(2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

O.C.G.A. Section 16-5-20 - Simple assault

(a) A person commits the offense of simple assault when he or she either:

(1) Attempts to commit a violent injury to the person of another; or

(2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

[22]

O.C.G.A. Section 16-5-23.1 - Battery

(a) A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another.

(b) As used in this Code section, the term "visible bodily harm" means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts.

O.C.G.A. 16-5-23 16-5-23 - Simple battery

(a) A person commits the offense of simple battery when he or she either:

(1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or

(2) Intentionally causes physical harm to another.

**O.C.G. A. Section 17-4-20.**

(b) Sheriffs and peace officers who are appointed or employed in conformity with Chapter 8 of Title 35 may use deadly force to apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury;

[23]

when the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. Nothing in this Code section shall be construed so as to restrict such sheriffs or peace officers from the use of such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant.

(e) Each peace officer shall be provided with a copy of this Code section. Training regarding elder abuse, abuse of vulnerable adults, and the requirements of this Code section should be offered as part of at least one in-service training program each year conducted by or on behalf of each law enforcement department and agency in this state.

### 51-12-5.1. Punitive Damages

(a) As used in this Code section, the term 'punitive damages' is synonymous with the terms 'vindictive damages,' 'exemplary damages,' and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant.

(b) Punitive damages may be awarded only in such tort actions in which it is

[24]

proven by clear and convincing evidence that the defendant's actions showed

willful misconduct, malice, fraud, wantonness, oppression, or that entire want

of care which would raise the presumption of conscious indifference to

consequences.

(c) Punitive damages shall be awarded not as compensation to a plaintiff but

solely to punish, penalize, or deter a defendant.

## Disclosure 3:

Provide the name and, if known, the address and telephone number of

each individual likely to have discoverable information relevant to the disputed

facts alleged with particularity in the pleadings, identifying the subjects of

information.    (Attach witness list to Answers to Initial Disclosures as

Attachment A.)

**Response:    See Attachment "A"**

## Disclosure 4:

Provide the name of any person who may be used at trial to present

evidence under the Rules 702, 703, or 705 of the Federal Rules of Evidence.

For all experts described in F.R.Civ.P. 26(a)(2)(B), provide a separate written

report satisfying the provision of that rule. (Attach expert witness list and

[25]

written reports to Responses to Mandatary Disclosures as Attachment B.)

**Response:** **See Attachment "B"**

**Disclosure 5:**

Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody or control that are relevant to disputed facts alleged with particularity in the pleadings. (Attach document list and descriptions to Responses to Initial Disclosures as Attachment C).

**Response:** **See Attachment "C"**

**Disclosure 6:**

In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under /F.R.Civ.P. 34. (Attach any copies and descriptions to Responses to Initial Disclosures as Exhibit D.)

[26]

**Response:   See Attachment "D"**

Special damages to be presented at the trial of the case in an amount of no less than $510,843.38 (Plaintiff's medical treatment is continuing.) General damages matters including but not limited to for pain and suffering, permanent impairment, loss of enjoyment of life, worry, fright and other damages to be determined by the jury.

Punitive damages to be determined by the enlightened conscience of the jury, in an amount sufficient to punish the Defendant for these actions and to deter him from committing other like actions.

Attorney's fees to be determined by the jury.

**Disclosure 7:**

Attach for inspection and copying as under F.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.   (Attach copy of insurance agreement to Responses of Initial Disclosures as Attachment E.)

**Response:**   Plaintiff has none.

[27]

## Disclosure 8:

Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of action and state the basis and extent of such interest.

**Response:** Not applicable.

## ATTACHMENT "A"

Kylema Jackson, former APD officer, 1650 Anderson Mill Road, #7103, Austell, GA 30106 (Anticipated subject matter includes: training, background, policy and facts of the incident and prior unlawful conduct.)

Will O. King, address to be provided by supplement (Anticipated subject matter includes: facts of the incident, injuries and damages.)

Gary Griffin, address to be provided by supplement (Anticipated subject matter includes: facts of the incident, injuries, pre and post injury condition of Will King.)

Kenneth Wilcox, address to be provided by supplement (Anticipated subject matter includes: facts of the incident, injuries, pre and post injury condition of Will King.)

Owner/management of Citgo Station 3819 Jonesboro Road, Atlanta, GA (Anticipated subject matter includes: facts of the incident and video of incident.)

Officer J. Sebastian #5343, Atlanta Police Department (Anticipated subject matter include facts of the incident and investigation.)

Officer M. Johns, Atlanta Police Department, (Anticipated subject matter include facts of the incident and investigation.)

Officer Calhoun #0042, Atlanta Police Department, (Anticipated subject matter include facts of the incident and investigation.)

Officer Lacoss #0241, Atlanta Police Department, (Anticipated subject matter include facts of the incident and investigation.)

CST S McMillan, Atlanta Police Department, (Anticipated subject matter include facts of the incident and investigation.)

[29]

Officer Henniger #2906, Atlanta Police Department, (Anticipated subject matter include facts of the incident and investigation.)

Det. Kevin Leonpacher, Atlanta Police Department, (Anticipated subject matter include facts of the incident and investigation.)

Investigator Benji Fennell, Fulton County District Attorney's Office, (Anticipated subject matter include facts of the incident and investigation.)

ADA Jay Hughes, Fulton County District Attorney's Office, (Anticipated subject matter include facts of the incident, investigation and plea negotiation.)

ADA Melissa Redmon, Fulton County District Attorney's Office, (Anticipated subject matter include facts of the incident, investigation and plea negotiation.)

James Latonya, Fulton County Probation Office, (Anticipated subject matter include facts of the incident, investigation, plea negotiation and probation terms and compliance.)

South Fulton Hospital personnel, 1170 Cleveland Ave., Atlanta, GA, (Anticipated subject matter include injuries and initial emergency treatment.)

South Fulton Emergency Physicians, 1170 Cleveland Ave., Atlanta, GA, (Anticipated subject matter include injuries and emergency treatment.)

Radisphere personnel, (Anticipated subject matter include Radiological findings)

EMS Ventures personnel, (Anticipated subject matter includes emergency transport to Atlanta Medical Center)

Amanda Turner, Rural Metro Ambulance/South Fulton EMS, 250 Hembree Park Drive, Suite 112, Roswell, GA 30076. (Anticipated subject matter includes injuries, treatment and transport.)

Bobbie Boswell, Rural Metro Ambulance/South Fulton EMS, 250 Hembree

[30]

Park Drive, Suite 112, Roswell, GA 30076. (Anticipated subject matter includes injuries, treatment and transport.)

Dr. Vernon Henderson, Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes injuries, surgery and treatment.)

Dr. Earl Stephenson, Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes injuries, surgery and treatment.)

Dr. Stephen McBride, Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes injuries, surgery and treatment.)

Dr. J.M. Moore, Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes injuries, surgery and treatment.)

Dr. Hugo Falcon, Diagnostic Imaging Specialists, P.O. Box 591 Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Howard Zaleznak, AMC Emergency Physicians, Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Steven Bondell, Atlanta Pathology Hospital Services, P.O. Box 767877 Roswell, GA 30076 (Anticipated subject matter includes pathology findings, injuries and treatment.)
Dr. Daniel Marshburn, Northlake Anesthesia Professionals, P.O. Box 932925, Atlanta, GA 31193 (Anticipated subject matter includes anesthesia.)

Dr. Phillip Baptiste, Diagnostic Imaging Specialists, P.O. Box 591 Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Kimberly Spencer, Diagnostic Imaging Specialists, P.O. Box 591

[31]

Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Kristin Lewis, Diagnostic Imaging Specialists, P.O. Box 591 Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Michael Chaliff, Diagnostic Imaging Specialists, P.O. Box 591 Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Bradley Fricke, Diagnostic Imaging Specialists, P.O. Box 591 Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Eric Udoff, Diagnostic Imaging Specialists, P.O. Box 591 Columbus, GA 31902 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Philip Ramsay, Atlanta Medical Center South Campus, 1170 Cleveland Ave. Atlanta, GA 30344 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Thomas Wood, Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. James Clark, Diagnostic Radiology / Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. William Wright, Diagnostic Radiology / Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Richisa Hamilton, Atlanta Medical Center South Campus, 1170 Cleveland

[32]

Ave., Atlanta, GA 30344 (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Fredrick Work, Atlanta Center for Breast and Aesthetic Surgery, One Baltimore Place, Suite 400, Atlanta, GA 30308. (Anticipated subject matter includes radiological findings, injuries, surgery, treatment, infections, prognosis and permanency.)

Dr. Sanjeev Kaila, Atlanta Center for Breast and Aesthetic Surgery, One Baltimore Place, Suite 400, Atlanta, GA 30308. (Anticipated subject matter includes radiological findings, injuries, surgery, treatment, prognosis and permanency.)

First Assistant to Dr. Work, Tu Oai Pham, Atlanta Center for Breast and Aesthetic Surgery, One Baltimore Place, Suite 400, Atlanta, GA 30308. (Anticipated subject matter includes radiological findings, injuries, surgery, and treatment.)

Dr. Timothy T. Ramsey, Southern Regional Medical Center, 11 Upper Riverdale Road, SW Riverdale, GA 30271. (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Walter H. Smith, Southern Regional Medical Center, 11 Upper Riverdale Road, SW Riverdale, GA 30271. (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Dipti Anand, SkinPath Solutions, 2000 Lake Park Drive, SE, Smyrna, GA 30080. (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Dr. Anitha Mathew, Grady Health System, P.O. Box 930704, Atlanta, GA 31193 (Anticipated subject matter includes injuries, surgery and treatment.)

Dr. Gary Bouloux, Grady Health System, P.O. Box 930704, Atlanta, GA 31193 (Anticipated subject matter includes injuries, surgery and treatment.)

[33]

Doctors, nurses and other personnel with Atlanta Medical Center, 303 Parkway Drive, NE, Atlanta, GA 30312 (Anticipated subject matter includes injuries, surgery and treatment.)

Dr. Matthew Lim, Southern Regional Medical Center, 11 SW Upper Riverdale Road, Riverdale, GA 30274 (Anticipated subject matter includes radiological findings, injuries, surgery, treatment and pathology.)

Dr. Tyler Crickette, Southern Regional Medical Center, 11 Upper Riverdale Road, Riverdale, GA 30274. (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Doctors, nurses and other personnel at Southern Regional Medical Center, 11 SW Upper Riverdale Road, Riverdale, GA 30274 (Anticipated subject matter includes radiological findings, injuries, surgery, treatment and bacteria growth.)

Doctors, nurses and other personnel at Atlanta Center for Breast and Aesthetic Surgery, One Baltimore Place, Suite 400, Atlanta, GA 30308. (Anticipated subject matter includes radiological findings, injuries, surgery and treatment.)

Ms. Tamekia Lindley, l/k/a 1028 Allene Ave, Atlanta, GA 30310. (Anticipated subject matter includes encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Mr. Frank Tillman, l/k/a 1028 Allene Ave, Atlanta, GA 30310. (Anticipated subject matter includes encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Ms. Marquetta Slaughter, l/k/a 1028 Allene Ave, Atlanta, GA 30310. (Anticipated subject matter includes encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Major W. Harris, Jr. Commander, OPS, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

[34]

Deputy Chief H.R. Dunovant, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Lt. V. Bowser, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Major E. Finley, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Sgt. Mark Cotter, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Lt. J. R. Carline, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Sgt. J.V. Snowden, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Inv. R. Turner, City of Atlanta Police Department (Anticipated subject matter includes investigation and findings regarding citizen's encounter with Defendant Jackson during routine traffic stop, where he used profanity and unfastened holster.)

Officer Elizabeth Butler #2523, City of Atlanta Police Department (Anticipated subject matter includes encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Corporal R.M. Calvert #572, GSP, 1901 McCollum Pky, Kennesaw, GA 30144. (Anticipated subject matter includes encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Senior Trooper Larry Schnall #252, GSP, P.O. Box 1456 Atlanta, AG 30371. (Anticipated subject matter includes encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Lt. Iosty #1921, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Major C.J. Davis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Lt. J. Cummings, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Dept. Chief P.N. Andresen, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Sgt. C.W. Hewitt, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter

[36]

with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Mjr. C.J. Davis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Sgt. S. Purvis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding the officers' encounter with Defendant Jackson at Lakewood Amphitheater when he was irate at citizens and APD officer and GSP troopers.)

Ms. Autumn McCollum, l/k/a 417 Greenleaf Road, Conyers, GA. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station, where Jackson pulled weapon on citizens.)

Ms. Jacqueline Gee, l/k/a 3640 Hansberry Drive, Atlanta, GA 30349. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Ms. Erica Blakely, l/k/a 3856 E. Saddle Ridge Drive, Lithonia, GA 30038. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Mr. Lerone Cook, address unknown, (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Ms. Nicole Brown, 4064 Castle Way, Fairburn, GA 30213. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Ms. Sandra Sellers, 1279 McLendon Ave., Atlanta, GA 30307. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

[37]

Mr. Charles Myrle, 4691 Red Branch Road, Decatur, GA. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Mr. William P. Crawford, 4077 Oak Ferry Drive, Kennesaw, GA 30144. (Anticipated subject matter includes encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Major C.J. Davis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Lt. V. Brown, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Chf. H.R. Dunovant, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Lt, J.R. Carline, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Lt. Yabuku, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Mgr. E.N. Finley, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

Lt. M.K. Fuller, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding encounter with Defendant Jackson at BP Station where Jackson pulled weapon on citizens.)

[38]

Mr. Kennedy Carroll, 1461 Jonesboro Rd., Atlanta, GA 30315. (Anticipated subject matter includes encounter with Defendant Jackson when Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Sgt. Christopher Hewitt, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Lt. Kevin Iosty #1921, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Inv. C. Ehlbeck, OPS, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Sgt. Redmond Keeney, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Mgr. L.A. Hagin, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Lt. S.D. Sheffield, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

[39]

Mgr. L.A. Hagin, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Dept. Chief P.N. Andresen, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Sgt. A.L. Lewis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Lt. William Charles, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Investigator Prince, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Lt. Scott Lyle, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

Mgr. C.J. Davis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson punched and used pepper spray on Mr. Carroll, and delayed medical treatment to "teach him a lesson.")

APD Dispatcher Kedria Bell (Anticipated subject matter includes investigation

[40]

and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Dept. Chief Andresen, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Mgr. L.A. Hagin, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Sgt. J. Durant, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Sgt. A. Lewis, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Lt. J. Cummings, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Major C.J. Davis, City of Atlanta Police Department, (Anticipated subject

[41]

matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Sgt. C.W. Hewitt, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Senior Supervisor Richard Faina, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Director M. Butler, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Lt. J. Flagler, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

Lt. Scott Lyles, City of Atlanta Police Department, (Anticipated subject matter includes investigation and findings regarding incident when Defendant Jackson sent profane messages to a co-employee and findings were made that he had no concern for his position, need for another psychiatric evaluation and need for change of assignment, but he only received couple days suspension.)

[42]

Ms. Anita Butts, l/k/a 986 Dunning Street, Atlanta, GA 30315. (Anticipated subject matter includes investigation regarding incident when Defendant Jackson used unjustified force against her daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Ms. Anita Butts' daughter, l/k/a 986 Dunning Street, Atlanta, GA 30315. (Anticipated subject matter includes investigation regarding incident when Defendant Jackson used unjustified force against her, appeared at door in underwear, with gun in hand, and did not know he had used force.)

Officer Ashley Gibson #5745, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Sgt. James Hoos #3277, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Major E.B. Dancy, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Dept. Chief E.R. Propes, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Major B.G. Cavender, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door

in underwear with gun in hand, and did not know he had used force.)

Chief G.N. Turner, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Sgt. M. Fuller, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Sgt. J.T. Childers, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Sgt. Robert Albertini, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Lt. J. Webb, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Lt. Maurice Bates, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Cpt. Byron Martin, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Officer Rudy Gomez, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

Officer Anthony Stewart, City of Atlanta Police Department, (Anticipated subject matter includes investigation regarding incident and findings when Defendant Jackson used unjustified force against Anita Butts' daughter, appeared at door in underwear with gun in hand, and did not know he had used force.)

All of Will King's medical providers not listed above. (Anticipated subject matter includes: injuries, treatment, therapy, complications, diagnoses, prognoses, permanency.)

All officers and witnesses listed in Defendant Jackson's personnel file. (Anticipated subject matter includes Defendant Jackson's conduct and APD's responses thereto.)

Other APD Officers and personnel whose names will be supplemented as discovery begins. (Anticipated subject matter includes: use of force reports, internal affairs reports, policies and procedures regarding the use of force, use of excessive force reports, internal affairs reports, complaints and investigations, customs and procedures.)

## ATTACHMENT "B"

Plaintiff reserves the right to call any witness, including those in Exhibit

"A" to the extent they are qualified as "experts", this response will be

supplemented.

## ATTACHMENT "C"

Plaintiff is in possession of the incident report, medical reports, medical expenses and documents produced by the City of Atlanta pursuant to Open Records Requests, all of which will be made available to the Defendants for inspection and copying at a mutually agreed upon time.

## ATTACHMENT "D"

The past medical expenses are not less than $510, 843.00, as follows:

| | | | |
|---|---|---|---|
| S. Fulton Hospital | Initial ER Treatment | 4/04/13 | $ T.B.D. |
| S. Fulton ER Physicians | ER doctors | 4/04/13 | $1,702.00 $726.00 |
| Radisphere | Radiology | 4/04/13 | $82.00 |
| EMS Ventures | Transport AMC | 4/04/13 | $2,084.00 |
| Atlanta Medical Center | Surgeries | 4/4-5/01/13 5/22-5/24/13 | $373,411.98 $23,164.80 |
| Dr. Work | Surgeon | 7/02/13-5/02/14 | $79,625.00 |
| AMC ER Physicians | ER doctors | 4/04/13 | $1,491.00 |
| Atlanta Pathology | Pathology | 4/04-4/17/13 | $90.00 $895.00 |
| N. Lake Anesthesiology | Anesthesiology | 4/04/13 4/13/13 4/18/13 | $1,472.00 $6,164.00 $1,012.00 |
| Diagnostic Imaging | Radiology | 4/04-5/23/13 | $1,747.00 |
| Dr. Stephenson | Surgeon | 4/5-4/14/13 | $13,177.00 |
| Grady Healthcare | Medical Care | 5/16/13 5/20/13 | $3,615.60 $384.00 |
| **Past Medical Expenses from Shooting** | | | **$510,843.38** |

Plaintiff's medical treatment is continuing and additional medical expenses will be provided by supplement.

## CERTIFICATION OF FONT

This certifies that pursuant to LR 5.1, ND., GA, the above and foregoing

has been prepared using Times New Roman font, 14 point.

> */s/ James D. McGuire*
> James D. McGuire
> Georgia Bar No. 493325


McGuire, Crohan & Klinger
Not A Partnership
1800 Peachtree Street, Suite 514
Atlanta, Georgia 30309
404-351-8500 main line
404-351-8805 fax
jmcguire@mcklaw.org

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WILL O. KING, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Plaintiff, | : | |
| | : | **CIVIL ACTION FILE NO.** |
| v. | : | **1:15-CV-0583-TWT** |
| KYLEMA JACKSON, | : | |
| Individually and in his Official | : | |
| Capacity as a City of Atlanta | : | |
| Police Officer, and | : | |
| THE CITY OF ATLANTA | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2015, I electronically filed a copy of Plaintiff's Responses to Initial Disclosures with the Clerk of Court using CM/ECF system with service on all attorneys of record for the City of Atlanta electronically. I also hereby certify that since I cannot serve Defendant Kylema Jackson electronically, I have this day placed a copy in the U.S. Mail, first class, with adequate postage thereon to his address of 1650 Anderson Mill Road, #7103, Austell, GA 30106.

/s/ *Richard B. Crohan*
**Richard B. Crohan**
Georgia Bar No. 197120
rcrohan@mcklaw.org

[50]