IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILL O. KING,

    Plaintiff,

      v.

KYLEMA JACKSON
Individually and in his Official
Capacity as a City of Atlanta Police
Officer, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:15-CV-583-TWT

**OPINION AND ORDER**

This is a civil rights action against a police officer alleging the use of excessive force. It is before the Court on the Defendant City of Atlanta's Motion to Dismiss [Doc. 10]. For the reasons set forth below, the Defendant City of Atlanta's Motion to Dismiss [Doc. 10] is GRANTED in part and DENIED in part.

## I. Background

On April 4, 2013, the Plaintiff Will King was driving on Jonesboro Road in Atlanta, Georgia.[1] He was accompanied by three passengers.[2] The Plaintiff parked his vehicle at a CITGO station while one of his passengers exited the vehicle to make a purchase.[3] Meanwhile, the Defendant Kylema Jackson – at the time a City of Atlanta police officer – entered the CITGO parking lot and eventually pulled up behind the Plaintiff's car and activated his blue lights.[4] Jackson then exited his vehicle with his weapon drawn, and pointed it at the Plaintiff.[5] Jackson instructed the Plaintiff and the Plaintiff's passengers to raise their hands, and they complied.[6] Jackson then allegedly fired a shot through the driver's side window, which struck the Plaintiff – who was unarmed[7] – in the side of the head.[8] As a result, the Plaintiff suffered "multiple

---

[1] Am. Compl. ¶ 11.

[2] Id. ¶ 12.

[3] Id. ¶¶ 13-14.

[4] Id. ¶¶ 15-16.

[5] Id. ¶ 17.

[6] Id. ¶ 19.

[7] Id. ¶ 35.

[8] Id. ¶ 20.

displaced fractures of [his] jaw."[9] The Plaintiff suggests that the "only potential reason . . . Jackson would have had to pull over the [Plaintiff's vehicle] . . . was that the car had a dealer drive out tag."[10]

The Fulton County District Attorney's Office investigated the incident.[11] Eventually, Jackson pleaded guilty to Simple Battery (O.C.G.A. § 16-5-23) and Reckless Conduct (O.C.G.A. § 16-5-60).[12] The Plaintiff then brought suit, asserting a section 1983 claim for excessive force and multiple state law claims. In addition to Jackson, the Plaintiff also named the City of Atlanta (the "City") as a Defendant. The Plaintiff claims that the City showed a reckless disregard for his constitutional rights by failing to adequately train and supervise Jackson despite multiple prior incidents in which Jackson displayed a tendency to use excessive force. In particular, the Plaintiff alleges that "[d]uring his employment with The City of Atlanta Police Department . . . Jackson . . . received no less than twelve (12) formal citizen complaints, alleging maltreatment and unnecessary use of force."[13] These complaints

---

[9] Id. ¶ 37.

[10] Id. ¶ 26.

[11] Id. ¶ 48.

[12] Id. ¶ 53.

[13] Id. ¶ 58.

were allegedly "supported by no less than twenty-five (25) witnesses including seven (7) [Atlanta Police Department] Supervisors, one (1) APD officer, one (1) off duty police officer and one (1) other APD co-employee."[14] According to the Plaintiff, the Defendant "had been investigated, and minimally, if at all, 'punished' by the City of Atlanta Police Department for unnecessary use of force."[15] The City now moves to dismiss.

## II. Legal Standard

A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[16] For a claim to be plausible, the supporting factual matter must establish more than a mere possibility that the plaintiff is entitled to relief.[17] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint

---

[14] Id. ¶ 59.

[15] Id. ¶ 60.

[16] See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

[17] See Iqbal, 556 U.S. at 678.

to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[18]

### III. Discussion

**A. Section 1983**

A city "can be sued directly under § 1983 for monetary . . . relief."[19] To establish liability against a city, the Plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury."[20] A municipality may be liable based upon a "failure to train or supervise" theory "only where [1] the municipality inadequately trains or supervises its employees, [2] this failure to train or supervise is a city policy, and [3] that city policy causes the employees to violate a citizen's constitutional rights."[21] A plaintiff "may prove a city policy by showing that the municipality's

---

[18] See id.; Twombly, 550 U.S. at 555 (A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

[19] Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978).

[20] Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal quotation marks omitted).

[21] Id.

failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants."[22] To "establish . . . such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."[23] A plaintiff may accomplish this by submitting "evidence of a history of widespread prior abuse by . . . personnel that would have put the [defendant] on notice of the need for improved training or supervision."[24]

In moving to dismiss the Plaintiff's section 1983 claim against the City, the City does not argue that the Plaintiff has failed to adequately allege an underlying excessive force claim. The City does not deny that the Plaintiff has cited to multiple prior incidents in which Jackson used excessive force,[25] and that these incidents did,

---

[22] Id.; see also City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (Where "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [may] be properly thought of as a city 'policy or custom' that is actionable under § 1983."); Cannon v. Taylor, 782 F.2d 947, 951 (11th Cir. 1986) ("[F]ederal courts may impose section 1983 municipal liability for a 'policy' of failure to take remedial steps to correct constitutionally offensive acts by municipal employees . . . [when] the failure to take remedial steps . . . amount[s] to deliberate indifference or tacit authorization of the offensive acts.").

[23] Gold, 151 F.3d at 1350.

[24] Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990).

[25] In its Reply Brief, the City argues, for the first time, that the prior incidents referenced by the Plaintiff did not adequately put the City on notice of the

or should have, put the City on notice of a need to train, supervise, or discipline Jackson. The City argues only that, based on the allegations in the Amended Complaint, it *did* investigate and discipline Jackson after each prior instance of misconduct.[26] To be sure, according to the Amended Complaint, Jackson did not receive any further training on the proper use of force,[27] nor was he given a new job assignment that would possibly constrain his ability to further violate citizens' constitutional rights. He was also not subject to any greater supervision. However, the Amended Complaint does state that after some of these incidents, Jackson received oral and written "admonitions"[28] or was given a very brief suspension, lasting as little

---

need to further train or supervise the Plaintiff in regards to his use of excessive force. The City's Reply Br., at 2-3. However, "[p]arties cannot raise new issues in reply briefs." United States v. Krasnow, 484 Fed. Appx. 427, 429 (11th Cir. 2012); see also International Telecommunications Exch. Corp. v. MCI Telecommunications Corp., 892 F. Supp. 1520, 1531 (N.D. Ga. 1995) (stating that when a party raises new arguments in a reply brief, "the Court may either strike the new grounds or permit the non-moving party additional time to respond to the new argument."). In its Motion to Dismiss, the City simply argued that the Plaintiff failed "to provide evidence of prior notice by the City of an alleged incident *which the City failed to investigate*." The City's Mot. to Dismiss, at 9 (emphasis added). Accordingly, the Court will not consider this argument at this stage.

[26] The City's Br. in Supp. of Mot. to Dismiss, at 8-9.

[27] Am. Compl. ¶¶ 156, 168.

[28] Id. ¶¶ 73, 117, 135.

as one day.[29] And because it took *some* action, the City argues that the Plaintiff has failed to state a plausible section 1983 claim against it. In essence, the City is arguing that, in order to prevail on his claim, the Plaintiff must show that the City's remedial measures were not just inadequate, but effectively *non-existent*. The City cites to no authority for this assertion, and it is inconsistent with relevant Eleventh Circuit case law. For example, in Depew v. City of St. Marys, Georgia,[30] the plaintiffs filed suit against a city and certain police officers based upon "the use of excessive or unreasonable force by the city's police officers."[31] The plaintiffs asserted a claim against the city based upon its failure "to train, supervise, and discipline its police officers as required."[32] To support this claim, they introduced "evidence reveal[ing] several prior incidents of police misconduct."[33] They also introduced evidence indicating that one officer "was never disciplined other than by verbal reprimand

---

[29] Id. ¶ 156. The City points out that, according to the Amended Complaint, Jackson was at one point suspended for close to two months. Id. ¶¶ 90, 93. But this was not because of Jackson's excessive use of force. This was because he resisted an order to work with a particular officer, and was subject to a charge of "job abandonment." Id. ¶ 78. Consequently, this suspension may not count as supervision or discipline for Jackson's use of excessive force.

[30] 787 F.2d 1496 (11th Cir. 1986).

[31] Id. at 1497.

[32] Id.

[33] Id.

although he had been cited for poor and improper work on many occasions."[34] In addition, a police chief had testified that "he had disciplinary problems with his officers" and that he nevertheless "did little to rectify the problem."[35] Nevertheless, the city believed it was entitled to judgment as a matter of law on the plaintiffs' section 1983 claim. The Eleventh Circuit disagreed, concluding that the "evidence revealed several incidents involving the use of unreasonable and excessive force by police officers," and so "the city had knowledge of improper police conduct, but failed to take *proper* remedial action."[36] The Eleventh Circuit did not conclude that the city was entitled to judgment as a matter of law simply because it took *some* action, no matter how inadequate. Here, similarly, it is not enough that the City took some remedial action. According to the Plaintiff, the penalties imposed on Jackson were insufficient and thus unlikely to deter further use of excessive force. Moreover, Jackson was subject to no further training or supervision, and no other remedial steps were taken. Based on these allegations, a trier of fact could conclude that the City's response was so grossly inadequate that it evinced a deliberate indifference to the

---

[34] Id. at 1498.

[35] Id.

[36] Id. at 1499 (emphasis added).

rights of its inhabitants. Accordingly, the City's Motion to Dismiss the Plaintiff's section 1983 claim against the City should be denied.

**B. State Law Claims**

The City argues that the Plaintiff's state law claims against the City are barred by the doctrine of sovereign immunity. Sovereign immunity "applies to municipalities, unless the General Assembly waives it by law."[37] Waiver "of a municipality's sovereign immunity in tort law is narrow, and only the General Assembly has the authority to enact a law that specifically provides for such a waiver."[38] A "waiver must be by express legislative act."[39] To be clear, "[s]overeign immunity is not an affirmative defense that the governmental defendants must establish."[40] Rather, the Plaintiff has the burden of establishing that sovereign immunity does not bar his claim.[41]

---

[37] Godfrey v. Georgia Interlocal Risk Mgmt. Agency, 290 Ga. 211, 214 (2011) (citing Ga. Const. of 1983, Art. IX, Sec. II, Par. IX).

[38] Id.

[39] City of Atlanta v. Heard, 252 Ga. App. 179, 181 (2001).

[40] Scott v. City of Valdosta, 280 Ga. App. 481, 484 (2006).

[41] See id. ("[Sovereign Immunity] is a privilege, subject to waiver by the State, and which the party seeking to benefit from the waiver must show.").

Here, the Plaintiff simply argues, citing to <u>Monell</u>, that sovereign immunity does not bar his section 1983 claim against the City.[42] However, the Plaintiff makes no argument for why sovereign immunity does not bar his *state law* claims against the City. Accordingly, the Plaintiff's state law claims against the City should be dismissed.

### IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Defendant City of Atlanta's Motion to Dismiss [Doc. 10].

SO ORDERED, this 31 day of July, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[42] Pl.'s Resp. Br., at 24-25.